KIRK M. HALLAM (SBN 108975)
kirkmhallam@gmail.com
Law Offices of Kirk M. Hallam
201 Santa Monica Boulevard, Suite 300
Santa Monica, California 90401
Tel: (310) 393-4006
Fax: (310) 564-7623

Attorneys for Plaintiff
*Manufacturing Automation & Software Systems, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

MANUFACTURING AUTOMATION & SOFTWARE SYSTEMS, INC.,

Plaintiff,

vs.

KRISTOPHER HUGHES; JAMES HUYSENTRUYT; INFORMATRAC, INC.; PCVUE, INC., EDWARD NUGENT, and DOES 1-10, inclusive,

Defendants.

**Case No. 2:16-cv-8962**

**COMPLAINT FOR:**

**(1-8) Copyright Infringement (17 U.S.C. §101, et seq.);**
**(9) Unfair Competition (15 U.S.C. §1125(a))**
**(10) Computer Fraud and Abuse (18 U.S.C. §1030, et seq.);**
**(11) Computer Access and Fraud Act (California Penal Code §502);**
**(12) Defend Trade Secrets Act (18 U.S.C. §1836);**
**(13) Breach of Contract;**
**(14) Interference With Business Relations;**
**(15) Fraud and Deceit;**
**(16) Conversion;**
**(17) Accounting**

**DEMAND FOR JURY TRIAL**

Plaintiff Manufacturing Automation & Software Systems, Inc. ("Plaintiff" or "MASS Group" or the "Company"), by and through its counsel, Kirk M. Hallam, for its complaint against defendants Kristopher Hughes ("Hughes"), James Huysentruyt ("Huysentruyt"), InformaTrac, Inc. ("InformaTrac"), PcVue, Inc. ("PcVue"), Edward R. Nugent ("Nugent") and DOES 1-10 (collectively "Defendants"), alleges:

**NATURE OF THE ACTION**

1. Plaintiff and its Founder and CEO, Gamal Balady, at a cost of some $8 million, have developed, programmed, produced, marketed and licensed to customers throughout the United States and abroad, a series of internet based proprietary software programs, products which uniquely allow the customer to track or trace quantities and precise locations of inventories, equipment, materials, documents, even people. Many of Plaintiff's programs are tailored to the customer's or industry's specific needs, all of them are original to Plaintiff and fully protected by Copyright, including those seven works of art specifically pled herein (the "MASS Software").

2. The MASS Software provides tracking and tracing and the whereabouts of equipment, components, inventory and people, throughout the manufacturing process of a product. Some common applications of the MASS Software include: (i) police departments and correctional facilities which use it to track all their valuable assets including weapons, keys, gear, inmates, evidence, among other things; (ii) food companies which use it to better manage a recall of tampered food (iii) entertainment companies which track the location of movie reels (iv) defense contractors who use it to track the status and compliance component of parts in their manufacturing process.

3. MASS Group markets and licenses the MASS Software, Software exclusively developed by MASS Group by and through and its employees, to a wide range of private and public sector customers, including U.S. Government agencies and contractors requiring e top secret facility clearance for MASS Group and certain of its employees.

4. Plaintiff is informed and believes and on that basis alleges that beginning at least as early as February of 2016 (while still employed at MASS Group), Defendants Hughes and Huysentruyt began stealing the MASS Software, along with the source and object codes from which that Software exclusively is derived, for exploitation by InformaTrac, Defendants' new competing business.

5. Specifically, Defendants stole and copied MASS Software in order to produce and market that Software as their own, counterfeit software which is identical, or virtually identical, to Plaintiff's Software (hereafter "InformaTrac Software"), primarily selling or licensing such counterfeit products to MASS Group's existing or prospective customers.

6. The claims asserted herein arise out of Defendants' willful theft of Plaintiff's copyrighted Software, and their use of Plaintiff's trade secrets and other intellectual property rights, to sell their counterfeit software to MASS Group customers and potential customers, while at the same time unlawfully accessing MASS Group's computer system to implement that plan and destroy or delete the digital footprint of their illegal conduct and conspiracy.

7. Plaintiff is informed and believes and on that basis alleges that beginning in at least March of 2016 defendants PcVue, Inc. and its Corporate Officer and Director, defendant Edward R. Nugent (also a former employee of Plaintiff), agreed to and has in fact knowingly conspired with Defendants jointly to sell, license, and integrate with the software products of PcVue, the counterfeit, infringing software of InformaTrac.

8. Defendants deliberately sought to induce the existing and potential customers of Plaintiff to discontinue their use of MASS Software and terminate or fail to renew their licenses with Plaintiff. On information and belief, Defendants did so by fraudulently representing to such existing and potential customers and licensees of MASS Group that InformaTrac owned the rights to the MASS Software, and that MASS Group was in dire financial straits, soon to be out of business.

9. Accordingly, Plaintiff brings claims against Defendants for, *inter alia*, copyright infringement under the U.S. Copyright Act of 1976, 17 U.S.C. §101 et seq. (the "Copyright Act"), Federal Unfair Competition (Lanham Act §43(a), 15 U.S.C. §1125(a)), unauthorized computer access, data theft and destruction, in violation of the Computer Fraud and Abuse Act (18 U.S.C. §1030), theft of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §1836, and California state law claims for, *inter alia*, violation of the California Computer Data and Fraud Act (Penal Code §502), conversion, fraud and deceit. Plaintiff seeks both injunctive and monetary relief, and reimbursement for any accounting, attorney, and third party consulting fees and costs reasonably incurred in filing and prosecuting this action.

## JURISDICTION AND VENUE

10. This action arises under, *inter alia*, the Copyright Act of 1976, 17 U.S.C. §101 et seq., the Computer Fraud and Abuse Act, 18 U.S.C. §1030, the Defend Trade Secrets Act, 18 U.S.C. §1836 ("Trade Secrets Act"), and the Lanham Act for false designation of origin), 15 U.S.C. §1125(a).

11. This Court has federal question and supplemental jurisdiction over all of the claims in this action pursuant to 28 U.S.C. §1331, §1332, §1338 and §1367(a), as this case arises under the Copyright Act, the Federal Computer Fraud Act, the Defend Trade Secrets Act, and the Lanham Act.

12. The Court has personal jurisdiction over Defendants because, *inter alia*, Defendant InformaTrac is incorporated in California and maintains its principal place of business in Ventura County, California, Defendants PcVue and Nugent regularly do business in, and have more than minimal contacts with, this judicial district, because Defendant Nugent previously resided in this district and was employed by Plaintiff in this district, and because at all times relevant hereto, Defendants Hughes and Huysentruyt have resided and continue to reside in this judicial district.

13. Venue is proper under Section 1391(b) of the Judicial Code, 28 U.S.C. §1391(b), in that Defendants Hughes and Huysentruyt reside in this District, InformaTrac is officed in this District, and a substantial part of the events giving rise to the claims occurred in and were and are directed from this District.

## THE PARTIES

14. Plaintiff Manufacturing Automation & Software Systems, Inc. is a California corporation with its principal place of business at 21601 Devonshire St., Chatsworth, California 91311.

15. Defendant Kristopher Hughes is, and at all relevant times was, an individual residing in the County of Ventura, State of California. From in or around November 1999 until March 4, 2016, Hughes was an employee of Plaintiff, with access to *inter alia,* MASS Group trade secrets, the MASS Software, and the source and object codes for the MASS Software. In addition to Hughes's access to the MASS Software, and the source and object codes for the MASS Software, Hughes was the employee primarily responsible for oversight of MASS Group's Information Technology and Cybersecurity infrastructure, with administrative rights no other employee possessed.

16. Defendant James Huysentruyt is, and at all relevant times was, an individual residing in the County of Ventura, State of California. From April 1998 until March 3, 2016, Huysentruyt was an employee of MASS Group with full access to all MASS Group Software. In addition, Huysentruyt had administrative rights and access to MASS Group's Software and other trade secret information broader than any other MASS Group employee except for Hughes.

17. Plaintiff is informed and believes and on that basis alleges that Defendant InformaTrac, Inc. is a California corporation with its principal place of business in the County of Ventura, State of California, incorporated on March 21, 2016, and owned and controlled by Hughes and Huysentruyt.

18. Plaintiff also is informed and believes and on that basis alleges that Defendants Hughes and Huysentruyt have not properly maintained InformaTrac as a separate legal entity, have commingled their personal funds with the funds of InformaTrac, and generally have conducted the business of InformaTrac as their own personal property, and as such, Hughes and Huysentruyt are the alter egos of InformaTrac, personally liable for its debts, liabilities and obligations.

19. Defendant Edward R. Nugent is a former employee of Plaintiff (from 2004-2007) who previously resided in Los Angeles, and who currently resides and works in Massachusetts, where he is an officer and director of Defendant PcVue, Inc., a Massachusetts corporation headquartered in Woburn, Massachusetts.

20. Plaintiff is ignorant of the true names and capacities of Defendants named in this complaint as DOES 1 through 10, and sues said Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when they have been ascertained. Plaintiff is informed and believes and on that basis alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences alleged in this complaint, and that Plaintiff's damages as alleged in this complaint were proximately caused by their conduct, or that such Defendants ratified or participated in the conduct causing such damages.

21. Plaintiff is informed and believes, and on that basis alleges, that at all relevant times, Defendants were acting as the agent, employee, independent contractor, representing partner, or joint-venturer of the remaining Defendants and were acting within the course and scope of that relationship. Plaintiff is further informed and believes, and on that basis alleges, that each of the Defendants in this action gave consent to, ratified, and authorized the acts of the remaining defendants.

22. Each Defendant has willfully aided and abetted each of the other Defendants in the wrongful concerted action described herein, or acted with or in furtherance of that action, or assisted in carrying out its purposes alleged herein.

23. Defendants, and each of them, are individually sued as participants and aiders and abettors in the wrongful conduct complained of herein, and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions complained of herein.

## FACTS COMMON TO ALL CLAIMS

24. Defendant Hughes was hired in 1999 by Plaintiff and its founder and owner, Gamal Balady, and was an employee of the Company until he resigned effective March 4, 2016. For most of those more than 17 years that Hughes was employed by Plaintiff, he acted in the role of a software developer, and most recently as a senior manager overseeing administration, information technology, cybersecurity, daily operations, and financial accounting of the Company. Among other duties, he oversaw human resources, including maintaining company personnel records, developing consistent employment policies, assuring compliance with state and federal laws and regulations, and approving employee expense reports.

25. In 1998, Defendant Huysentruyt became the first employee hired by Plaintiff and its owner, Gamal Balady, and was employed by Plaintiff until he resigned on March 3, 2016. At the time of his resignation, Huysentruyt was Vice President of Sales for MASS Group, primarily responsible for the marketing efforts of the Company, promoting the MASS Software, dealing directly with existing and potential new customers, and cultivating strategic, technical, and commercial partnerships and alliances, such as the business alliance InformaTrac previously established and enjoyed with Defendant PcVue.

26. Defendant Edward R. Nugent was hired by Plaintiff in 2004 and was terminated in 2007. While at MASS Group, Nugent served as the sales lead for the western United States in marketing, promoting, and selling MASS Software. Nugent is now an employee of PcVue and the C.O.O. of its U.S. subsidiary, and on

information and belief, the individual who conspired with Defendants Hughes and Huysentruyt to divert the business of PcVue and terminate its alliance with Plaintiff.

27. On February 18 and 22, 2016, respectively, Hughes and Huysentruyt informed Gamal Balady, through emails, they were resigning as employees of the Company, effective March 3 and 4, 2016, respectively, and each telling Gamal Balady they were resigning for personal reasons, had not begun to look for work elsewhere, and did not know where they would work next.

28. In truth, Defendants Hughes and Huysentruyt, prior to giving their resignations as employees of MASS Group, already had launched their clandestine and illegal business plan, i.e. to steal Plaintiff's Software and its source and object codes, copy that Software and sell it as their own, through their new company, InformaTrac. Hughes and Huysentruyt registered the domain name for InformaTrac on February 12, 2016 (just before giving notice of their resignations), and only a few weeks later, formally incorporated InformaTrac.

29. Plaintiff is informed and believes, and on that basis alleges, that Hughes and Huysentruyt are the sole shareholders of InformaTrac, and are selling counterfeit copies of MASS Software to customers and potential customers of MASS Group, under their new corporate identity "InformaTrac."

30. As employees of MASS Group for more than 16 years, Hughes and Huysentruyt assisted in developing for Plaintiff the MASS Software, working with other employees hired and paid exclusively by MASS Group and its founder and owner, Gamal Balady, and marketing and supporting the MASS Software licensed by its customers, all while exclusively employed by Plaintiff. Thus, Hughes and Huysentruyt, as full time employees, were involved in the development of the MASS Software and had full access to that Software and its underlying source codes.

31. Plaintiff is informed and believes, and on that basis alleges, that Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1 through 10, currently are selling or assisting in selling counterfeit copies of the MASS Software claiming it to

be InformaTrac Software, software products which are based on the same source codes as MASS Software and perform the same functions as, and are substantially similar or virtually identical to, the MASS Software.

32. Plaintiff also is informed and believes, and alleges based thereon, that Defendants and each of them are selling and attempting to sell the counterfeit InformaTrac Software using false and misleading statements to the effect that Defendants acquired ownership of the MASS Software and the legal rights therein, and are authorized to sell or license the MASS Software as their own, i.e. falsely representing that Defendant Hughes was a "principal" in MASS Group who legally acquired the exclusive right to sell or license MASS Software under his InformaTrac corporate banner.

33. Neither Hughes, Huysentruyt nor Nugent ever was a principal in MASS Group, only employees, and none ever contributed any capital to the Company or acquired any copyright or other legal interest in the MASS Software or other assets, either by operation of law, through agreement with Plaintiff, or otherwise.

34. In the 12 months prior to their resignations, a major responsibility of both Hughes and Huysentruyt as employees of Plaintiff was to promote, license, and service the MASS Software on behalf of the MASS Group. They were senior managers of the Company, with Huysentruyt having the most constant and direct contact with its current and potential customers.

35. During the last six months of their employment, Hughes and Huysentruyt brought in virtually no new customers for MASS Group and its Software, a failure which Plaintiff is informed and believes, and on that basis alleges, was intentional and purposeful, as part of Defendants' plan and conspiracy to steal the MASS Software and eliminate MASS Group as an effective "competitor" in the sale of its own Software, fraudulently sold by Defendants under the name InformaTrac.

36. Plaintiff is informed and believes, and on that basis alleges, that some of Plaintiff's actual as well as potential new customers have been dissuaded from

licensing, renewing or entering into new licenses with Plaintiff by the illegal acts of Defendants Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, i.e. their copyright infringement and their conspiracy illegally to put Plaintiff out of business, so as to permit Defendants and each of them to continue to copy, infringe and distribute to the public Plaintiff's copyrighted Software under the InformaTrac label.

37. Plaintiff is further informed and believes, and on that basis further alleges, that Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1 through 10, caused customers and potential customers of Plaintiff to be diverted to InformaTrac's infringing software products, and to discontinue their use or not initiate their contemplated, probably new use Plaintiff's Software.

38. Plaintiff is informed and believes, and on that basis alleges, that Hughes, Huysentruyt and DOES 1 through 10, prior to their resignations from MASS Group and continuing to the present, contacted by telephone, email and personal approach numerous customers and/or prospective customers of MASS Group, offering to replace the MASS Software with the infringing, substantially similar or identical software of InformaTrac, as well as licensing additional applications of its software, new licenses otherwise ear-marked for Plaintiff and the MASS Software.

39. Plaintiff is further informed and believes, and on that basis further alleges, that Hughes, Huysentruyt and DOES 1 through 10, truthfully told Plaintiff's customers that InformaTrac's Software performs the same tasks and functions as the MASS Software, but falsely represented that Defendants were the lawful owners of that Software, with the right to sell, license and support it.

40. Defendants also unlawfully accessed and exploited, and on information and belief, continue to unlawfully access and exploit, MASS Group's confidential customer contact information, using it to identify and contact MASS Group customers and potential customers, and to make fraudulent representations and solicitations as alleged hereinabove.

41. When Hughes and Huysentruyt resigned from MASS Group in February of 2016, they were specifically requested by the Company and its owner, Gamal Balady, to return to Plaintiff all Company records, proprietary or trade secret information, MASS Software, source and object codes, and any servers or storage disks containing such intellectual property of the Company still in their custody, possession or control, whether at their homes or the office, on their Company laptops or personal computers. Defendants Hughes and Huysentruyt also were expressly instructed (and agreed) to delete all MASS Software source and object code information from any computers, servers or disks in their possession.

## CONSPIRACY ALLEGATIONS

42. Plaintiff is informed and believes, and on that basis alleges, that in doing the acts alleged in this Complaint, Defendants conspired among themselves to, among other things, improperly and unlawfully (a) misappropriate the source and object codes for the MASS Software and other proprietary items and information related thereto; (b) copy and convert to themselves the intellectual property of Plaintiff including, without limitation, Plaintiff's business and marketing plans, marketing materials, trade secrets, customer contact information, financial information and personnel documents (the "MASS Assets"); (c) utilize the MASS Assets to launch and operate InformaTrac, (d) misrepresent and conceal material facts from Plaintiff and its owner, Gamal Balady (e) market the InformaTrac counterfeit software independently and in combination with the products of PcVue, and (f) represent to potential licensees of the InformaTrac Software that Defendants are the lawful owners of the MASS Software legally authorized to sell it as their own.

43. Plaintiff is informed and believes, and on that basis alleges, that the objectives of the conspiracy included, without limitation, wrongfully: (a) allowing Defendants to exploit the MASS Assets, including, without limitation, the MASS Software and other proprietary information of Plaintiff; (b) defrauding Plaintiff; and

(c) interfering with and disrupting the contractual and other business relations of Plaintiff, all for Defendants' own profit.

**FIRST CAUSE OF ACTION**

**(Copyright Infringement of Work-1)**

**(U.S. Copyright No. TX 8-233-219)**

**(Against All Defendants)**

44. Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth therein.

45. Plaintiff has duly complied with all statutory formalities of the Copyright Act with respect to the registration of protectible elements of its Software and the underlying work which is the subject of U.S. Registration No. TX 8-233-219 ("Work-1").

46. The foregoing acts by Defendants and each of them constitute unauthorized copying, reproduction, distribution, display, licensing, sale and commercial exploitation of Plaintiff's Copyrighted work, as reflected in U.S. registration no. TX 8-233-219 ("Copyrighted Work-1"), which acts infringe Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §101 *et seq*.

47. Defendants' infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's Copyrighted Work-1.

48. Such infringement of Plaintiff's Copyrighted Work-1 includes Defendants' copying of the literal elements of Plaintiff’s Work-1, including the source and object codes, as well as the non-literal elements of Plaintiff's Work-1, including but not limited to the documentation related to the design, build, implementation, and support of the Software, development framework, build tools, testing infrastructure, and operational support tools for hosted systems.

49. Defendants and each of them did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's Copyrighted Work-1, and did so willfully, maliciously and intentionally.

50. Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights.

51. As a proximate cause of Defendants' wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendants and each of them are enjoined.

52. The inclusion of signature elements of Plaintiff's Copyrighted Work-1 greatly enhances the financial value of Defendants' infringing products.

53. Plaintiff is entitled to its actual damages and profits, alternatively statutory damages, pursuant to 17 U.S.C. §504.

54. From the date of first production of Defendants' infringing works, the Defendant has infringed Plaintiff's copyright interests in its Copyrighted Work-1, including by: (a) authorizing the reproduction, distribution and sale of the infringing works through the execution of licenses, and/or actually selling, manufacturing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c) participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial illegal use of Plaintiff's Copyrighted Work-1.

55. With knowledge of the infringement, each Defendant has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

56. Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

57. The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed Work-1 of Plaintiff.

58. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of Defendants' infringing products, irreparable injury that cannot fully be compensated for or measured in monetary terms; Plaintiff has no adequate remedy at law.

59. As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's Copyrighted Work-1. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount in excess of $2,000,000, in an exact amount to be proven at trial.

## SECOND CAUSE OF ACTION
## (Copyright Infringement of Work-2)
## (U.S. Copyright App. No. 1-4192462946)
## (Against All Defendants)

60. Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth therein.

61. Plaintiff has duly complied with all statutory formalities of the Copyright Act with respect to the registration of protectible elements of its Software, and the underlying work which is the subject of Copyright application for U.S. registration no. 1-4192462946, Title "TME Toolkit 5.9.28.7" ("Work-2").

62. The foregoing acts by Defendants and each of them constitute unauthorized copying, reproduction, distribution, display, licensing, sale and

commercial exploitation of Plaintiff's "Copyrighted Work-2," which acts infringe Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §101 *et seq*.

63. Defendants' infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's Copyrighted Work-2.

64. Such infringement of Plaintiff's Copyrighted Work-2 includes Defendants' copying of the literal elements of Plaintiff's Work-2, including the source and object codes, as well as the non-literal elements of Plaintiff's Work-2, including but not limited to the documentation related to the design, build, implementation, and support of the Software, development framework, build tools, testing infrastructure, and operational support tools for hosted systems.

65. Defendants and each of them did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's Copyrighted Work-2, and did so willfully and intentionally.

66. Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights.

67. As a proximate cause of Defendants' wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendants and each of them are enjoined.

68. The inclusion of the signature elements of Plaintiff's Copyrighted Work-2 greatly enhances the financial value of Defendants' infringing products.

69. Plaintiff is entitled to its actual damages and profits, alternatively statutory damages, pursuant to 17 U.S.C. §504.

70. From the date of the creation of Defendants' infringing works, the Defendant has infringed Plaintiff's copyright interests in its Copyrighted Work-2, including by: (a) authorizing the reproduction, distribution and sale of the infringing works through the execution of licenses, and/or actually selling, manufacturing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials

for the sale of the infringing works; and (c) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of Plaintiff's Copyrighted Work-2.

71. With knowledge of the infringement, each of Defendants has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

72. Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

73. The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed Work-2 of Plaintiff.

74. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of Defendants' infringing products, irreparable injury that cannot fully be compensated for or measured in monetary terms; Plaintiff has no adequate remedy at law.

75. As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's Copyrighted Work-2. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount in excess of $2,000,000, in an exact amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**(Copyright Infringement of Work-3)**

**(U.S. Copyright App. No. 1-4192462853)**

**(Against All Defendants)**

76. Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth therein.

77. Plaintiff has duly complied with all statutory formalities of the Copyright Act with respect to the registration of protectible elements of its Software and the underlying work which is the subject of Copyright application for U.S. registration No. 1-4192462853, Title "TME Runtime Engine 5.9.28.7" ("Work-3").

78. The foregoing acts by Defendants and each of them constitute unauthorized copying, reproduction, distribution, display, licensing, sale and commercial exploitation of Plaintiff's "Copyrighted Work-3," which acts infringe Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §101 *et seq*.

79. Defendants' infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's Copyrighted Work-3.

80. Such infringement of Plaintiff's Copyrighted Work-3 includes Defendants' copying of the literal elements of Plaintiff's Work-3, including the source and object codes, as well as the non-literal elements of Plaintiff's Work-3, including but not limited to the documentation related to the design, build, implementation, and support of the Software, development framework, build tools, testing infrastructure, and operational support tools for hosted systems.

81. Defendants and each of them did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's Copyrighted Work-3, and did so willfully and intentionally.

82. Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights.

83. As a proximate cause of Defendants' wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendants and each of them are enjoined.

84. The inclusion of the signature elements of Plaintiff's Copyrighted Work-3 greatly enhances the financial value of Defendants' infringing products.

85. Plaintiff is entitled to its actual damages and profits, alternatively statutory damages, pursuant to 17 U.S.C. §504.

86. From the date of the creation of Defendants' infringing works, the Defendant has infringed Plaintiff's copyright interests in its Copyrighted Work-3, including by: (a) authorizing the reproduction, distribution and sale of the infringing works through the execution of licenses, and/or actually selling, manufacturing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of Plaintiff's Copyrighted Work-3.

87. With knowledge of the infringement, each of Defendants has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

88. Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

89. The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed Work-3 of Plaintiff.

90. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of

Defendants' infringing products, irreparable injury that cannot fully be compensated or measured in monetary terms; Plaintiff has no adequate remedy at law.

91. As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's Copyrighted Work-3. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount in excess of $2,000,000, in an exact amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**(Copyright Infringement of Work-4)**

**(U.S. Copyright App. No. 1-4192462795)**

**(Against All Defendants)**

92. Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth therein.

93. Plaintiff has duly complied with all statutory formalities of the Copyright Act with respect to the registration of protectible elements of its Software and the underlying work which is the subject of Copyright application for U.S. registration No. 1-4192462795, Title "TME License 5.9.28.7" ("Work-4").

94. The foregoing acts by Defendants and each of them constitute unauthorized copying, reproduction, distribution, display, licensing, sale and commercial exploitation of Plaintiff's Copyrighted Work-4, which acts infringe Plaintiff's rights in violation of the Copyright Act, 17 U.S.C. §101 *et seq*.

95. Defendants' infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's Copyrighted Work-4.

96. Such infringement of Plaintiff's Copyrighted Work-4 includes Defendants' copying of the literal elements of Plaintiff's Work-4, including the source and object codes, as well as the non-literal elements of Plaintiff's Work-4, including but not limited to the documentation related to the design, build, implementation, and support of the Software, development framework, build tools, testing infrastructure, and operational support tools for hosted systems.

97. Defendants and each of them did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's Copyrighted Work-4, and did so willfully and intentionally.

98. Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights.

99. As a proximate cause of Defendants' wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendants and each of them are enjoined.

100. The inclusion of the signature elements of Plaintiff's Copyrighted Work-4 greatly enhances the financial value of Defendants' infringing products.

101. Plaintiff is entitled to its actual damages and profits, alternatively statutory damages, pursuant to 17 U.S.C. §504.

102. From the date of the creation of Defendants' infringing works, the Defendant has infringed Plaintiff's copyright interests in its Copyrighted Work-4, including by: (a) authorizing the reproduction, distribution and sale of the infringing works through the execution of licenses, and/or actually selling, manufacturing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of Plaintiff's Copyrighted Work-4.

103. With knowledge of the infringement, each of Defendants has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

104. Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

105. The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed Work-4 of Plaintiff.

106. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of Defendants' infringing products, irreparable injury that cannot fully be compensated or measured in monetary terms; Plaintiff has no adequate remedy at law.

107. As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's Copyrighted Work-4. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount in excess of $2,000,000, in an exact amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

**(Copyright Infringement of Work-5)**

**(U.S. Copyright App. No. 1-4192462747)**

**(Against All Defendants)**

108. Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth therein.

109. Plaintiff has duly complied with all statutory formalities of the Copyright Act with respect to the registration of protectible elements of its Software and the underlying work which is the subject of Copyright application for U.S. registration No. 1-4192462747, Title "TME Library 3.11.28.7" ("Work-5").

110. The foregoing acts by Defendants and each of them constitute unauthorized copying, reproduction, distribution, display, licensing, sale and commercial exploitation of Plaintiff's "Copyrighted Work-5," which acts infringe Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §101 *et seq*.

111. Defendants' infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's Copyrighted Work-5.

112. Such infringement of Plaintiff's Copyrighted Work-5 includes Defendants' copying of the literal elements of Plaintiff’s Work-5, including the source and object codes, as well as the non-literal elements of Plaintiff's Work-5, including but not limited to the documentation related to the design, build, implementation, and support of the Software, development framework, build tools, testing infrastructure, and operational support tools for hosted systems.

113. Defendants and each of them did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's Copyrighted Work-5, and did so willfully and intentionally.

114. Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights.

115. As a proximate cause of Defendants' wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendants and each of them are enjoined.

116. The inclusion of the signature elements of Plaintiff's Copyrighted Work-5 greatly enhances the financial value of Defendants' infringing products.

117. Plaintiff is entitled to its actual damages and profits, alternatively statutory damages, pursuant to 17 U.S.C. §504.

118. From the date of the creation of Defendants' infringing works, the Defendant has infringed Plaintiff's copyright interests in its Copyrighted Work-5, including by: (a) authorizing the reproduction, distribution and sale of the infringing works through the execution of licenses, and/or actually selling, manufacturing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of Plaintiff's Copyrighted Work-5.

119. With knowledge of the infringement, each of Defendants has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

120. Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

121. The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed Work-5 of Plaintiff.

122. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of Defendants' infringing products, irreparable injury that cannot fully be compensated for or measured in monetary terms; Plaintiff has no adequate remedy at law.

123. As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's Copyrighted Work-5. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered actual damages including lost

profits, lost opportunities, and loss of goodwill, in an amount in excess of $2,000,000, in an exact amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**(Copyright Infringement of Work-6)**

**(U.S. Copyright App. No. 1-4192462679)**

**(Against All Defendants)**

124. Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth therein.

125. Plaintiff has duly complied with all statutory formalities of the Copyright Act with respect to the registration of protectible elements of its Software and the underlying work which is the subject of Copyright application for U.S. registration No. 1-4192462679, Title "TME Installer 5.9.28.7" ("Work-6").

126. The foregoing acts by Defendants and each of them constitute unauthorized copying, reproduction, distribution, display, licensing, sale and commercial exploitation of Plaintiff's "Copyrighted Work-6," which acts infringe Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §101 *et seq*.

127. Defendants' infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's Copyrighted Work-6.

128. Such infringement of Plaintiff's Copyrighted Work-6 includes Defendants' copying of the literal elements of Plaintiff’s Work-6, including the source and object codes, as well as the non-literal elements of Plaintiff's Work-6, including but not limited to the documentation related to the design, build, implementation, and support of the Software, development framework, build tools, testing infrastructure, operational support tools for hosted systems.

129. Defendants and each of them did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's Copyrighted Work-6, and did so willfully and intentionally.

130. Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights.

131. As a proximate cause of Defendants' wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendants and each of them are enjoined.

132. The inclusion of the signature elements of Plaintiff's Copyrighted Work-6 greatly enhances the financial value of Defendants' infringing products.

133. Plaintiff is entitled to its actual damages and profits, alternatively statutory damages, pursuant to 17 U.S.C. §504.

134. From the date of the creation of Defendants' infringing works, the Defendant has infringed Plaintiff's copyright interests in its Copyrighted Work-6, including by: (a) authorizing the reproduction, distribution and sale of the infringing works through the execution of licenses, and/or actually selling, manufacturing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of Plaintiff's Copyrighted Work-6.

135. With knowledge of the infringement, each of Defendants has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

136. Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

137. The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed Work-6 of Plaintiff.

138. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff, as well as the innocent buyers or licensees of Defendants' infringing products, irreparable injury that cannot fully be compensated for or measured in monetary terms. Thus, Plaintiff has no adequate remedy at law.

139. As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's Copyrighted Work-6. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount in excess of $2,000,000, in an exact amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**(Copyright Infringement of Work-7)**
**(U.S. Copyright App. No. 1-4192462581)**
**(Against All Defendants)**

140. Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth therein.

141. Plaintiff has duly complied with all statutory formalities of the Copyright Act with respect to the registration of protective elements of its Software and the underlying work of art which is the subject of Copyright application for U.S. registration No. 1-4192462581, Title "TME Web 5.9.28.7" ("Work-7").

142. The foregoing acts by Defendants and each of them constitute unauthorized copying, reproduction, distribution, display, licensing, sale and commercial exploitation of Plaintiff's "Copyrighted Work-7," which acts infringe Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §101 *et seq*.

143. Defendants' infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's Copyrighted Work-7.

144. Such infringement of Plaintiff's Copyrighted Work-7 includes Defendants' copying of the literal elements of Plaintiff's Work-7, including the source and object codes, as well as the non-literal elements of Plaintiff's Work-7, including but not limited to the documentation related to the design, build, implementation, and support of the Software, development framework, build tools, testing infrastructure, and operational support tools for hosted systems.

145. Defendants and each of them did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's Copyrighted Work-7, and did so willfully and intentionally.

146. Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights.

147. As a proximate cause of Defendants' wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendants and each of them are enjoined.

148. The inclusion of the signature elements of Plaintiff's Copyrighted Work-7 greatly enhances the financial value of Defendants' infringing products.

149. Plaintiff is entitled to its actual damages and profits, alternatively statutory damages, pursuant to 17 U.S.C. §504.

150. From the date of the creation of Defendants' infringing works, the Defendant has infringed Plaintiff's copyright interests in its Copyrighted Work-7, including by: (a) authorizing the reproduction, distribution and sale of the infringing works through the execution of licenses, and/or actually selling, manufacturing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c) by participating in and furthering the

aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of Plaintiff's Copyrighted Work-7.

151. With knowledge of the infringement, each of Defendants has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

152. Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

153. The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed Work-7 of Plaintiff.

154. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of Defendants' infringing products, irreparable injury that cannot fully be compensated or measured in monetary terms. Thus, Plaintiff has no adequate remedy at law.

155. As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's Copyrighted Work-7. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount in excess of $2,000,000, in an exact amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**

**(Copyright Infringement of Work-8)**

**(U.S. Copyright App. No. 1-4189662157)**

**(Against All Defendants)**

156. Plaintiff realleges and incorporates by reference the above paragraphs as if fully set forth therein.

157. Plaintiff has duly complied with all statutory formalities of the Copyright Act with respect to the registration of protective elements of its Software and the underlying work of art which is the subject of Copyright application for U.S. registration No. 1-4189662157, Title "TME Framework 2.11.28.7" ("Work-8").

158. The foregoing acts by Defendants and each of them constitute unauthorized copying, reproduction, distribution, display, licensing, sale and commercial exploitation of Plaintiff's "Copyrighted Work-8," which acts infringe Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §101 *et seq*.

159. Defendants' infringing works copy quantitatively and qualitatively distinct, important, and recognizable portions of Plaintiff's Copyrighted Work-8.

160. Such infringement of Plaintiff's Copyrighted Work-8 includes Defendants' copying of the literal elements of Plaintiff’s Work-8, including the source and object codes, as well as the non-literal elements of Plaintiff's Work-8, including but not limited to the documentation related to the design, build, implementation, and support of the Software, development framework, build tools, testing infrastructure, and operational support tools for hosted systems.

161. Defendants and each of them did not seek or receive permission or consent from Plaintiff to copy any portion of Plaintiff's Copyrighted Work-8, and did so willfully and intentionally.

162. Defendants' conduct has at all times been knowing, willful, and with complete disregard for Plaintiff's rights.

163. As a proximate cause of Defendants' wrongful conduct, Plaintiff has been irreparably harmed and will continue to sustain injury and damage unless Defendants and each of them are enjoined.

164. The inclusion of the signature elements of Plaintiff's Copyrighted Work-8 greatly enhances the financial value of Defendants' infringing products.

165. Plaintiff is entitled to its actual damages and profits, alternatively statutory damages, pursuant to 17 U.S.C. §504.

166. From the date of the creation of Defendants' infringing works, the Defendant has infringed Plaintiff's copyright interests in its Copyrighted Work-8, including by: (a) authorizing the reproduction, distribution and sale of the infringing works through the execution of licenses, and/or actually selling, manufacturing and/or distributing Defendants' infringing works through various sources; (b) copying and displaying the infringing works in related marketing and promotional materials for the sale of the infringing works; and (c) by participating in and furthering the aforementioned infringing acts, and/or sharing in the proceeds therefrom, all through substantial use of Plaintiff's Copyrighted Work-8.

167. With knowledge of the infringement, each of Defendants has induced, caused or materially contributed to the infringing conduct of each other, such that each and all should be found to be contributorily liable for the acts of the others.

168. Defendants and each of them had the right and ability to control other infringers and have derived a direct financial benefit from that infringement such that Defendants and each of them also should be found to be vicariously liable.

169. The infringement is continuing as the infringing products continue to be produced and sold or licensed by Defendants, while unwitting customers continue to purchase or license from Defendants the stolen and infringed Work-8 of Plaintiff.

170. Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause to Plaintiff, as well as the innocent buyers or licensees of

Defendants' infringing products, irreparable injury that cannot fully be compensated or measured in monetary terms. Thus, Plaintiff has no adequate remedy at law.

171. As a result of the aforesaid infringement, Plaintiff has suffered and will continue to suffer substantial injury, loss and damages to its ownership rights in Plaintiff's Copyrighted Work-8. Defendants have unlawfully derived and will continue to derive income and profits from the infringing acts thereby unjustly enriching themselves to the detriment of Plaintiff. As a direct and proximate result of the conduct of Defendants, Plaintiff has suffered actual damages including lost profits, lost opportunities, and loss of goodwill, in an amount in excess of $2,000,000, in an exact amount to be proven at trial.

## NINTH CAUSE OF ACTION

**(Federal Unfair Competition)**

**(Lanham Act §43(a), 15 U.S.C. §1125(a))**

**(Against all Defendants and DOES 1-10)**

172. Plaintiff realleges and incorporates by reference, as if fully set forth therein, the allegations in all the preceding paragraphs.

173. Plaintiff is informed and believes, and alleges based thereon, that Defendants and each of them are selling and attempting to sell the counterfeit InformaTrac Software using false and misleading statements to the effect that Defendants are the owners of the MASS Software and the legal rights therein and are authorized to sell or license the MASS Software as their own, i.e. falsely representing that Defendant Hughes was a "principal" in MASS Group who legally acquired for himself and Defendants the right to sell or license MASS Software under the InformaTrac corporate banner, after the "principals" of MASS Group "parted ways."

174. Neither Hughes nor Huysentruyt was a principal in MASS Group, neither ever contributed any capital to the Company, and neither ever acquired any

legal interest in the copyrighted Software of MASS Group or any of its other intellectual property rights, through agreement with MASS Group or otherwise.

175. Defendants' unauthorized use of the MASS Software in connection with InformaTrac's software licensing business, and its false assertion of ownership rights in the MASS Software, is a false designation of origin, false or misleading description of fact, and a false or misleading representation of fact with respect to the association with Plaintiff and its inherently distinctive and widely known brand.

176. Defendants unauthorized marketing, sale and licensing of the MASS Software and its false assertions of ownership rights in the MASS Software are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with MASS Group and its inherently distinctive and widely known name and brand, or as to the origin, sponsorship, or approval by Plaintiff of Defendants' software products and services.

177. Defendants' unlawful actions have caused and will continue to cause MASS Group irreparable harm unless enjoined.

178. Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Plaintiff. Defendants' unlawful actions have caused Plaintiff monetary damage in excess of $1,000,000, in a precise amount to be determined in accordance with proof at trial.

**TENTH CAUSE OF ACTION**

**(Computer Fraud and Abuse)**

**(18 U.S.C. §1030, et seq.)**

**(Against Defendants Hughes and Huysentruyt)**

179. Plaintiff realleges and incorporates by reference, as if fully set forth therein, the allegations in all the preceding paragraphs.

180. Plaintiff's computers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. §1030(e)(2).

181. On information and belief, Defendants knowingly and intentionally accessed Plaintiff's computers without authorization or in excess of any authorization as defined by Plaintiff's clear written and oral policies.

182. On information and belief, after gaining unauthorized access to Plaintiff servers, Defendant obtained and used valuable information from Plaintiff's protected computers and servers relating to transactions involving interstate communications.

183. On information and belief, both before and after Hughes and Huysentruyt resigned from MASS Group, Hughes and Huysentruyt without authorization or consent from Plaintiff, and well beyond any authorized access ever granted by Plaintiff, accessed Plaintiff's computer system and downloaded for themselves, or removed or deleted from Plaintiff's computers and servers, numerous electronic files, files containing, *inter alia*, Defendant's personnel records, travel and expense reports and other pertinent data, as well as confidential customer information, all as a part of their conspiracy to steal the Software, customers, business partners and Trade Secrets of Plaintiff, and to conceal or destroy the electronic footprint of their conspiracy.

184. Defendants knowingly, willfully, and with an intent to defraud, accessed Plaintiff's computers and servers, without authorization and in excess of any authorization from Plaintiff, and obtained valuable information from Plaintiff's computers and servers, data that Defendants used to obtain something else of value, data which includes the Trade Secrets of Plaintiff, and otherwise incriminating evidence of Defendants' conspiracy.

185. Defendants' conduct has caused losses to Plaintiff in the past several months, losses well in excess of the statutory minimum of $5,000, *inter alia*, for the out-of-pocket cost of investigating Defendants' unauthorized access and abuse of its computer network.

186. Plaintiff has suffered irreparable and incalculable harm resulting from Defendants' conduct, harm which will continue unless Defendant is enjoined from

further unauthorized use of Plaintiff's protected computers. Plaintiff has no adequate remedy at law.

187. Plaintiff seeks compensatory and other equitable relief under 18 U.S.C. §1030(g) in an amount to be proven at trial.

**ELEVENTH CAUSE OF ACTION**

**(California Computer Data Access and Fraud Act)**

**(California Penal Code §502)**

**(Against Defendants Hughes and Huysentruyt)**

188. Plaintiff realleges and incorporates by reference, as if fully set forth therein, the allegations in all the preceding paragraphs.

189. On information and belief, both before and after Hughes and Huysentruyt resigned from MASS Group, Hughes and Huysentruyt without authorization or consent from Plaintiff, and well beyond any authorized computer access ever granted to Defendants by Plaintiff, accessed Plaintiff's computer system and downloaded for themselves, or removed and deleted from Plaintiff's computers and servers, numerous electronic files, files containing, *inter alia,* Defendant's personnel records, travel and expense reports and other pertinent data, as well as confidential customer information, as a part of their conspiracy to steal the Software, customers, business partners and Trade Secrets of Plaintiff, and to conceal or destroy the electronic evidence of their crimes.

190. In so doing, Defendants knowingly accessed without permission Plaintiff's data, computers, computer systems and/or computer network in order to devise and/or execute a scheme to defraud and deceive in violation of California Penal Code §502(c)(l). Under the Act, Plaintiffs are authorized to bring a civil action for compensatory damages, injunctive relief or other equitable relief. [Penal Code §502(e)(1)].

191. Defendant knowingly accessed and without permission took, copied, and/or used data from Plaintiff's computers, computer systems and/or computer network in violation of California Penal Code §502(c)(2).

192. Defendant knowingly and without permission used or caused to be used Plaintiff's computer services in violation of California Penal Code §502(c)(3).

193. Defendant knowingly and without permission accessed and deleted data from Plaintiff's computers, computer systems and/or computer network in violation of California Penal Code §502(c)(4).

194. Defendant knowingly and without permission accessed or caused to be accessed Plaintiff's computers, computer systems, and/or computer network in violation of California Penal Code §502(c)(7).

195. Plaintiff suffered and continues to suffer substantial damage as a result of Defendant's violations of the California Penal Code §502.

196. Defendant's conduct also caused irreparable and incalculable harm and injury to Plaintiff (including, but not limited to, Plaintiff's reputation and goodwill), and, unless enjoined, will cause further irreparable and incalculable injury, for which Plaintiff has no adequate remedy at law.

197. Defendant willfully violated California Penal Code §502 in disregard and derogation of Plaintiff's rights, and Defendant's actions as alleged above were carried out with oppression, fraud and malice. Hence, Plaintiffs are entitled to attorneys' fees under the Act. [California Penal Code §502(e)(2)].

**TWELFTH CAUSE OF ACTION**

**(Misappropriation of Trade Secrets)**

**(Defend Trade Secrets Act 18 U.S.C. §1836)**

**(Against All Defendants)**

198. Plaintiff repeats and realleges each and every foregoing allegation contained in the complaint as if fully set forth therein.

199. As a result of their working with Plaintiff, Hughes and Huysentruyt became intimately familiar with Plaintiff's operations and were granted access to Plaintiff's confidential and proprietary information, including, without limitation, the source and object codes of the MASS Software, confidential customer identifications, email addresses and product specifications, market studies, special business practices and private bank account information (collectively the "Trade Secrets").

200. Plaintiff enjoys an advantage over its existing and would-be competitors based, in part, on the Trade Secrets it has developed and implemented in its effort to become and remain a market leader in the sale or license of internet based manufacturing execution systems and computerized maintenance management and enterprise asset management software and support services.

201. Plaintiff has made reasonable efforts under the circumstances to preserve the confidentiality of its Trade Secrets, e.g. Plaintiff requires its employees (specifically including but not limited to Defendants) periodically to sign "non-disclosure" agreements with Plaintiff, agreements designed to protect the confidentiality of its Trade Secrets, and also uses physical and technological security measures to prevent unauthorized disclosure of its Trade Secrets.

202. Plaintiff's confidential information derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use. Accordingly, the above-described information, i.e. Plaintiff's Trade Secrets, constitute "trade secrets" within the meaning of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1839.

203. Defendant was and remains under a duty both to keep Plaintiff's Trade Secrets confidential and private, and not to copy, use, or disclose such information other than for the benefit of Plaintiff and with Plaintiff's authorization. By taking this information from Plaintiff without its authorization, Defendants knew or should have known that they acquired such information under circumstances giving rise to a breach of a duty to maintain its secrecy and limit its use.

204. Defendants misappropriated Plaintiff's Trade Secrets through the unauthorized taking and retention of Plaintiff's Trade Secrets, including through Defendants' actions in the final weeks of their employment, downloading, copying, and deleting digital files containing Plaintiff's Trade Secrets, and, on information and belief, providing those files to InformaTrac, Nugent and PcVue.

205. Defendants' actual and threatened misappropriation was and is being carried out without the express or implied consent of Plaintiff.

206. Plaintiff is informed and believes that Defendants obtained the Trade Secret information described above directly or indirectly from Plaintiff and not from generally available information or their own independent research and efforts.

207. Defendants' actions constitute willful misappropriation and/or threatened misappropriation of Plaintiff's Trade Secrets under the DTSA. On information and belief, Defendants deliberately copied Plaintiff Trade Secrets in the days and weeks before they resigned for the specific purpose of exploiting them to launch Defendants' competing business, InformaTrac.

208. After Defendants gave notice of their resignations, Plaintiff reminded Defendants of their obligation not to misappropriate Plaintiff Trade Secrets and instructed them to return all documents, disks, hard drives and computers containing any Trade Secrets to Plaintiff. Defendants fraudulently confirmed they had returned all Trade Secrets to Plaintiff, but on information and belief, Defendants' confirmation was knowingly false. Defendants' misappropriation of Plaintiff's Trade Secrets was not accidental; it was willful.

209. Defendants' actual misappropriation of Plaintiff's Trade Secrets, unless and until enjoined and restrained by order of this Court, is causing and will continue to cause great and irreparable harm to Plaintiff.

210. Plaintiff has no adequate remedy at law for the injuries currently being suffered, and the additional injuries threatened, because it would be impossible to quantify in dollars the losses described above when this matter is finally adjudicated.

Defendants will continue to engage in their wrongful conduct and Plaintiff will continue to suffer irreparable injury that cannot adequately be remedied at law, unless Defendants are enjoined from engaging in any further acts of misappropriation.

211. As a direct and proximate cause of Defendants' misappropriation of Plaintiff's Trade Secrets, Defendants have been unjustly enriched in an amount to be ascertained at trial, and Plaintiff has sustained, and will continue to sustain, actual damages in an amount to be proven at trial.

212. Each of the acts of misappropriation of Plaintiff's Trade Secrets was done willfully and maliciously by Defendants with the deliberate intent to injure Plaintiff's business and improve their own business for financial gain, thereby entitling Plaintiff to exemplary damages and/or attorneys' fees to be proven at trial.

213. Plaintiff is informed and believes, and on that basis alleges, that by their unjustified and unprivileged conduct, Defendants Hughes and Huysentruyt wrongfully acquired, and are actively exploiting, the Trade Secrets of Plaintiff.

214. Plaintiff is informed and believes, and on that basis alleges, that Hughes and Huysentruyt disclosed the Trade Secrets to Defendants Nugent and PcVue who/which then misappropriated and exploited those Trade Secrets in the process of selling PcVue's software in conjunction with the counterfeit InformaTrac software.

215. Plaintiff is informed and believes, and on that basis alleges, that Defendants wrongful acquisition of the Trade Secrets, including, without limitation, the source and object codes of the MASS Software, confidential customer information, and other confidential information proprietary to Plaintiff, has given Hughes, Huysentruyt, InformaTrac, Nugent and PcVue a substantial and wrongful advantage in competing with Plaintiff, and has caused Plaintiff substantial harm.

216. Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1 through 10, knew or had reason to know that the Trade Secrets they acquired as alleged in this Complaint constituted or contained protectable Trade Secrets in that the information had independent economic value, was not generally known to the

public or any others who could have obtained economic value from the use of the information, and was the subject of reasonable efforts by Plaintiff to ensure the secrecy of such information, including Non-Disclosure Agreements with employees.

217. Plaintiff is informed and believes, and on that basis alleges, that Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1 through 10, misappropriated and will continue to misappropriate the Trade Secrets to their own economic benefit by the wrongful disclosure and use of such information, without Plaintiff's consent, while knowing or having reason to know they had (a) wrongfully acquired the Trade Secrets; and (b) acquired the Trade Secrets under circumstances giving rise to a duty to maintain secrecy.

218. As a direct and proximate result of the acts of misappropriation and use of the Trade Secrets by Hughes, Huysentruyt, InformaTrac and DOES 1 through 10, Plaintiff has suffered damages to date for actual losses caused by such misappropriation based on, among other things, loss of goodwill, damage to its business reputation, and expenses incurred in its efforts to remedy the effects of the unlawful conduct of Hughes, Huysentruyt, InformaTrac and DOES 1 through 10, in an amount not now known, but Plaintiff is informed and believes, and on that basis alleges, that the damages far exceed the jurisdictional thresholds. And unless Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1 through 10, are enjoined, such damages will increase exponentially.

219. Additionally, (a) Plaintiff is entitled to recover for the unjust enrichment caused by misappropriation of the Trade Secrets not taken into account in computing damages for actual loss; and (b) to the extent that neither damages nor unjust enrichment caused by the misappropriation by Defendants are provable, Plaintiff is entitled to an order for payment of a reasonable royalty.

220. Plaintiff is informed and believes, and on that basis alleges, that Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1 through 10, have wrongfully, among other things, (a) been using the Trade Secrets (or something

which uses, embodies, and/or is substantially similar) in connection with the production, marketing and sale of their counterfeit software products; (b) failed to compensate Plaintiff for the use of its Trade Secrets.

221. The threatened and actual wrongful conduct of Defendants described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff. This is because the actions and conduct of Defendants jeopardize Plaintiff's ability to (a) market the MASS Software and services; and (b) reach agreement with potential customers for the use of the MASS Software, while also causing injury to Plaintiff's business reputation and goodwill. The losses which will result from the continued conduct of Defendants are not readily susceptible to monetary valuation.

222. Plaintiff is informed and believes, and on that basis alleges, that the wrongful conduct of Defendants alleged in this complaint, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff for which pecuniary compensation would not afford adequate relief, in that, for among other reasons, money damages will not completely compensate Plaintiff for the injury to Plaintiff's business reputation and goodwill.

223. Plaintiff requests that the court issue a temporary restraining order, preliminary injunction, and at the close of the case, a permanent injunction enjoining Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1 through 10, and their agents, servants, and employees, and all persons acting in concert with them, from taking the following actions:

a. Using Plaintiff's Trade Secrets without authorization from Plaintiff; and

b. Disclosing or divulging Plaintiff's Trade Secrets to anyone.

**THIRTEENTH CAUSE OF ACTION**

**(Breach of Contract)**

**(Against Hughes and Huysentruyt)**

224. Plaintiff repeats and realleges each and every foregoing allegation contained in the complaint as if fully set forth therein.

225. Hughes and Huysentruyt, as a condition of their continued employment, each signed on March 21, 2011, a Non-Disclosure and Non-Solicitation Agreement with Plaintiff (the "Agreement"), which Agreement provides in pertinent part:

> 2. **Non-disclosure of Confidential Information**. Employee understands that information constitutes a valuable asset and a legitimate business interest of MASS Group Inc., and that the unauthorized disclosure of such confidential information would be detrimental to MASS Group Inc.'s business. The term "confidential information" includes but is not limited to commercial, personal or technical information that Employee may obtain or create in the course of and by virtue of his or her employment (other than information generally published or available to the public), client lists, market studies, special and general business practices, trade secrets, software programs, sensitive payroll information, bank accounts, and all other similar matters regarding the business of MASS Group, Inc., its affiliates, or its clients. Employee agrees that all confidential information made known to Employee during or after the employment is subject to this agreement and will be received and held in confidence. Employee will take all necessary steps to prevent disclosure of confidential information to others and will not use or disclose confidential information set forth in this agreement. Employee

shall immediately notify MASS Group, Inc. of any actual or suspected unauthorized use or disclosure of confidential information, and shall cooperate with MASS Group, Inc. in obtaining injunctive or other equitable relief and in any suit for damages…Employee therefore agrees that, except as required for MASS Group, Inc. business, he or she will never, directly or indirectly, during or after termination of employment, use, publish or disclose in any manner, nor authorize others to use, publish or disclose, any such confidential information.

3. **Non-Solicitation of MASS Group Inc.'s Clients**. Employee acknowledges that MASS Group Inc.'s business is not geographically limited to the area of its current operations. Therefore, Employee will not unless specifically authorized in writing by MASS Group, Inc., directly or indirectly, on behalf of his or herself or any other person or persons other than MASS Group Inc., solicit, sell, serve, or divert any client of MASS Group, Inc. during his or her term of employment.

226. Defendants each materially breached both of these provisions of the Agreement when, prior to their departure from MASS Group, they, *inter alia*, solicited Plaintiff's customers and potential customers on behalf of themselves and InfomaTrac, transferred large quantities of Trade Secrets from Plaintiff's computers and databases to their own External Hard Drives, and then removed such External Hard Drives from the Plaintiff's premises, exploited such Trade Secrets to launch InformaTrac, producing and marketing its counterfeit software products, and on information and belief, also disseminating such Trade Secrets to PcVue, Ed Nugent and other third parties, for their exploitation thereof.

227. Such removal and subsequent dissemination of Plaintiff's Trade Secrets was for Defendants' own personal benefit and for the benefit of their co-conspirators, including but not limited to Defendants InformaTrac, PcVue and Ed Nugent.

228. The Agreements constitute valid binding and enforceable contracts requiring Defendants Hughes and Huysentruyt to maintain the secrecy of Plaintiff's confidential, proprietary, and Trade Secret information, and to return all such documents, and property of Plaintiff upon termination of their employment.

229. Plaintiff has performed (or was excused from performing) all of its obligations under the Agreement.

230. As a proximate result of Defendants' breaches of the Agreement, Plaintiff has suffered, and will continue to suffer, general and special damages in an amount to be proven at trial. Plaintiff seeks compensation for all damages and losses proximately caused by Defendants' breaches, and pursuant to the Agreement, reimbursement of its attorney's fees costs incurred in connection with this action.

231. Plaintiff has suffered and continues to suffer substantial monetary damage as a proximate result of Defendants' breaches of the Agreement, in an amount to be proven at trial, including but not limited to the profits diverted from Plaintiff by Defendants' exploitation of Plaintiffs' Trade Secret information.

232. Plaintiff also has suffered and continues to suffer substantial and irreparable harm as a proximate result of Defendants' material breaches of the Agreement, entitling Plaintiff to the immediate imposition of both preliminary and permanent injunctions prohibiting and enjoining all Defendants from marketing or selling the InformaTrac computer software products, from soliciting Plaintiff's customers, and from otherwise exploiting or disseminating Plaintiff's Trade Secrets.

**FOURTEENTH CAUSE OF ACTION**

**(Interference with Contractual Relations and**

**Prospective Economic Advantage)**

**(Against All Defendants)**

233. Plaintiff repeats and realleges each and every foregoing allegation contained in the complaint as if fully set forth therein.

234. Plaintiff has entered into contractual relationships with a number of customers in connection with the sale or licensing of the MASS Software and support services related to that Software. In addition, Plaintiff is informed and believes, and thereon alleges, that in the past 12 months new customers have sought to contact MASS Group to enter into additional licenses for the MASS Software.

235. Defendants knew of the above described contracts, business relationships and potential business relationships between Plaintiff and its existing and potential customers.

236. As long term employees of Plaintiff, Hughes and Huysentruyt had supervised the customer accounts and otherwise were responsible for maintaining and expanding existing client relationships and developing new ones.

237. Plaintiff is informed and believes, and on that basis alleges, that prior to and following the resignation of Hughes and Huysentruyt from the Company, Hughes, Huysentruyt, InformaTrac, PcVue and Nugent, and Does 1-10, approached existing and likely customers of Plaintiff seeking to induce them to move their business from Plaintiff to InformaTrac. Hughes also intercepted calls from Plaintiff's customers and potential customers and sought to move their business relationships to InformaTrac.

238. Plaintiff is further informed and believes, and on that basis further alleges, that Hughes, Huysentruyt, InformaTrac, PcVue and Nugent made, and continue to make, false and misleading statements to customers (contracting parties) and potential customers of Plaintiff with the intent to harm MASS Group financially

and to induce customers and potential customers of MASS Group to sever their relationships, or not enter into contemplated new business relationships with Plaintiff.

239. As a direct and proximate result of the conduct of Hughes, Huysentruyt, InformaTrac, PcVue and Nugent, Plaintiff has suffered damages, including lost profits of at least $1,000,000, in a precise amount in accordance with proof at trial, plus interest at the legal rate. Plaintiff reserves the right to amend this complaint to insert the amount of additional special, consequential and general damages Plaintiff has suffered once that amount is ascertained.

240. Hughes, Huysentruyt, PcVue and Nugent engaged in the acts alleged above with a willful, conscious and/or reckless disregard for Plaintiff's rights and with willful, conscious or reckless disregard for the consequences of such conduct to Plaintiff. These acts were committed with the intent to vex, injure or annoy Plaintiff and, as such, constitute oppression, fraud and malice under California Civil Code §3294. Accordingly, Plaintiff is entitled to punitive damages in a sum to be proven at trial, in order to deter Defendants, and each of them, from so acting in the future.

241. The threatened and actual wrongful conduct of Hughes, Huysentruyt, InformaTrac, PcVue and Nugent, described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff, since the actions and conduct of such Defendants jeopardize and destroy Plaintiff's ability to (a) market the MASS Software and services; and (b) reach agreement with potential customers in connection with the use the MASS Software, while also causing injury to Plaintiff's business reputation and goodwill.

242. Plaintiff is informed and believes, and on that basis alleges, that the wrongful conduct of Defendants in this regard, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff for which pecuniary compensation would not afford adequate relief, in that, for among other reasons, money damages will not completely compensate Plaintiff for the injury to Plaintiff's business reputation and goodwill.

243. Plaintiff has no plain, speedy, or adequate remedy at law, and injunctive relief is necessary. Accordingly, Plaintiff requests that the court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants and their agents, servants, and employees, and all persons acting under or in concert with them, from taking any of the following actions:

a. Using the source or object codes of the MASS Software without authorization from Plaintiff;

b. Using Plaintiff's proprietary information and Trade Secrets without authorization from Plaintiff;

c. Approaching existing customers of Plaintiff to seek their business or induce them to discontinue their business with Plaintiff;

d. Approaching known potential customers of Plaintiff in an effort to induce such customers to initiate their business with InformaTrac rather than MASS Group; and

e. Making false and misleading statements to customers and potential customers of Plaintiff, including but not limited to statements to the effect that Defendants are authorized to sell MASS Software, or any software product which is adapted from or substantially similar to the MASS Software.

## FIFTEENTH CAUSE OF ACTION

**(Fraud and Deceit - Intentional Misrepresentation and Concealment)**

**(California Civ. Code §§1572, 1710)**

**(Against Defendants Hughes and Huysentruyt)**

244. Plaintiff repeats and realleges each and every foregoing allegation contained in the complaint as if fully set forth therein.

245. In connection with their employment with and resignation from Plaintiff, Hughes and Huysentruyt made to Plaintiff false representations of fact, and Hughes

and Huysentruyt concealed from Plaintiff material facts. Among other things, Defendants Hughes and Huysentruyt directly, through one another or others, made numerous false representations to Plaintiff including, without limitation:

246. Huysentruyt represented that he was leaving the Company for personal reasons, and specifically, that he wished MASS Group continued success;

247. Hughes represented in his resignation letter that he did not have a place to go after his departure from MASS Group, had not even contemplated yet where he would work after leaving MASS Group, and verbally stated to Gamal Balady that for the foreseeable future, he was planning to stay home to take care of his family.

248. Hughes also represented in his resignation letter that he was willing to do part-time work for MASS Group after his resignation, in order to help MASS Group through his transition, even though unbeknownst to Plaintiff he already had initiated his competing, counterfeiting company InformaTrac, registering the domain name for InformaTrac on February 12, 2016, prior to his resignation.

249. On information and belief, Hughes sought to continue working for MASS Group part-time because he and Huysentruyt wanted continued access to MASS Group's protected intellectual property and Trade Secrets, including but not limited to newer versions of MASS Software that Defendants wanted to copy and exploit for themselves.

250. Hughes and Huysentruyt falsely represented to Plaintiff and its owner that they no longer would be working in the same business as Plaintiff.

251. Hughes and Huysentruyt falsely represented when they left MASS Group they did not have any Trade Secret or other intellectual property of MASS Group in their possession, custody or control, including but not limited to the source and object codes for MASS Group's Software and confidential customer data;

252. Plaintiff is informed and believes, and on that basis alleges, that these representations by Defendants Hughes and Huysentruyt were in fact false and that the true material facts include, without limitation, the following:

a. Huysentruyt never had any desire or intent for MASS Group to continue to succeed since he already had launched a competing business utilizing MASS Software and soliciting MASS customers;

b. Contrary to their express representations, Hughes and Huysentruyt would be directly competing in the same business as Plaintiff;

c. Hughes did have another work opportunity following his departure from the Company, and already had launched InformaTrac;

d. Hughes's offer to do part-time work for the Company following his departure was not motivated by his desire to help MASS Group with his transition, but was intended to provide to him and his co-conspirators the ongoing ability to access and steal the Trade Secrets and copyrighted Software of MASS Group;

e. Hughes and Huysentruyt had no intention of deleting all MASS Software, source or object codes from the hard drives and computers in their possession, but instead directly copied and incorporated Plaintiff's source code into their own software products to be sold as that of InformaTrac; and

f. Hughes and Huysentruyt retained Plaintiff's Trade Secrets.

253. Plaintiff is informed and believes, and on that basis alleges, that Defendants Hughes and Huysentruyt also knowingly concealed material facts from Plaintiff, including, without limitation, the following:

a. That Hughes and Huysentruyt planned to open a competing business;

b. That Hughes and Huysentruyt planned to use the source and object codes for the MASS Software to produce the InformaTrac Software to sell for the competing business they already launched;

c. That Hughes and Huysentruyt, while Hughes and Huysentruyt were still employees of Plaintiff, already had begun to solicit existing customers of Plaintiff, as well as resellers (such as Nugent and PcVue) and prospective customers of Plaintiff;

d. That Hughes, Huysentruyt, InformaTrac, Nugent and PcVue actually did solicit for themselves existing customers and/or prospective customers of Plaintiff, after Hughes and Huysentruyt ended their employment with Plaintiff;

e. That Hughes, Huysentruyt and InformaTrac planned to and did steal, copy and exploit the source and object codes for the MASS Software in connection with their solicitation of existing customers and/or prospective customers of Plaintiff;

f. That Hughes and Huysentruyt intended to (and did) take and copy the source code and object codes for the MASS Software both before and after their voluntary departure from Plaintiff.

254. Plaintiff is informed and believes, and on that basis alleges, that these representations Huysentruyt and Hughes made to Plaintiff were in fact false. Plaintiff is further informed and believes, and on that basis further alleges, that the true facts were intentionally withheld from Plaintiff by Huysentruyt and Hughes.

255. Plaintiff is informed and believes, and on that basis alleges, that in making the above-referenced representations to Plaintiff, Huysentruyt and Hughes knew those representations were false. Plaintiff is further informed and believes, and on that basis further alleges, that Huysentruyt and/or Hughes made the referenced representations with the intent to deceive and to induce Plaintiff in reliance to:

a. Not actively pursue retrieval of company documents and MASS Assets in Defendants' possession at the time of termination;

b. Not obtain Defendants' signatures on the Company's Resignation-Exit Check List Agreements (including Nondisclosure Provisions) before the Defendants' departure from the Company, and

c. Not pursue legal action against the Defendants immediately after Defendants' departure from MASS Group and establishment of its infringing and unlawfully competing entity, InformaTrac, to prevent Defendants from soliciting or doing business with Plaintiff's customers, resellers and partners, including PcVue.

256. At the time these representations were made by Huysentruyt and Hughes, and at the time the Plaintiff took or didn't take actions as alleged herein, Plaintiff was ignorant of the falsity of such representations, believing them to be true.

257. Plaintiff reasonably and justifiably relied upon the intentional misrepresentations by Huysentruyt and Hughes. This reliance was reasonable and justifiable since at the time Plaintiff acted on (and/or failed to act based on) the representations, Plaintiff had no access to the truth underlying the misrepresentations.

258. The concealment and suppression from Plaintiff by Hughes and Huysentruyt of those materials facts set out above was fraudulent and misleading.

259. Plaintiff is informed and believes, and on that basis alleges, that rather than concealing material facts, including without limitation those set forth above, Hughes and Huysentruyt had a duty to speak the whole truth to the end that (a) no material facts concerning the matters alleged were concealed; and/or (b) no facts were concealed that would qualify previous statements and/or materially affect the actions of Plaintiff.

260. The concealment of material facts the involved was likely to mislead, and actually did mislead Plaintiff in a material and injurious manner.

261. Plaintiff is informed and believes, and on that basis alleges, that when Hughes and Huysentruyt caused the facts as alleged to be concealed, they knew that the facts omitted were material to Plaintiff. Plaintiff is further informed and believes,

and on that basis further alleges, that Hughes and Huysentruyt concealed such material facts with the intent that Plaintiff would rely on said omissions of fact with the intent to induce such reliance.

262. Plaintiff reasonably relied upon the concealment of material facts by Hughes and Huysentruyt, and this reliance was reasonable in that Plaintiff had no access to the truth of the underlying matters.

263. The concealment and suppression from Plaintiff of material information by Hughes and Huysentruyt as alleged in this complaint, was done by Hughes and Huysentruyt with the intent to induce Plaintiff to (a) believe that Hughes and Huysentruyt would not take the MASS Assets, including the source and object codes for the MASS Software to directly compete with Plaintiff in the sale of its own Software, and (b) not take action to more assertively stop Hughes and Huysentruyt from taking and using the MASS Assets, including the source code for the MASS Software, to improperly compete with Plaintiff.

264. At the time Hughes and Huysentruyt failed to disclose (and suppressed) facts, and at the time Plaintiff trusted that Hughes and Huysentruyt would not take and use proprietary information, including, without limitation, the source code for the MASS Software, and/or did not act more quickly to stop Hughes and Huysentruyt from taking and using the MASS Assets, including the source code for the MASS Software, Plaintiff was ignorant of the existence of the facts that Hughes and Huysentruyt failed to disclose. If Plaintiff had been aware of the existence of the facts not disclosed by Hughes and Huysentruyt, Plaintiff would not have taken the actions (and/or failed to take the actions) alleged herein.

265. In reliance upon the representations made by Hughes and Huysentruyt, and without knowledge of the true facts Hughes and Huysentruyt had concealed, as alleged in this complaint, Plaintiff was induced to and did, among other things, trust that Hughes and Huysentruyt would not take and use proprietary information, including, without limitation, the source code for the MASS Software, and/or not

more assertively seek to stop Hughes and Huysentruyt from taking and using the MASS Assets, including the source code for the MASS Software.

266. As a direct and proximate result of the conduct of Hughes and Huysentruyt as alleged above, Plaintiff has suffered damages in an amount which has not yet been ascertained plus interest at the legal rate. Plaintiff reserves the right to amend this complaint to insert the amount of additional special, consequential and general damages Plaintiff has suffered after that amount is ascertained.

267. Hughes and Huysentruyt engaged in the acts alleged above with a willful, conscious and/or reckless disregard of Plaintiff's rights and with willful, conscious or reckless disregard for the consequences of such conduct to Plaintiff. These acts were committed with the intent to vex, injure or annoy Plaintiff and, as such, constitute oppression, fraud and malice under California Civil Code §3294. Accordingly, Plaintiff is entitled to and hereby requests punitive damages in a sum sufficient to deter Hughes and Huysentruyt from so acting in the future.

**SIXTEENTH CAUSE OF ACTION**

**(Conversion)**

**(Against Hughes, Huysentruyt and DOES 1-10)**

268. Plaintiff repeats and realleges each and every foregoing allegation contained in the complaint as if fully set forth herein.

269. Plaintiff is informed and believes, and on that basis alleges, that Hughes and Huysentruyt took from Plaintiff's premises without authorization or consent prior to and following their resignations from Plaintiff, the MASS Assets, which included, without limitation, documents and other tangible items that are the property of the Company, including but not limited to, the source and object codes of MASS Software, personnel files, confidential customer information and other proprietary documents that have monetary value to the Plaintiff. After Hughes resigned, Plaintiff

requested several times that Hughes return all company documents, intellectual property, computers and disc drives in his possession. Hughes has failed to do so.

270. As a result of this misconduct, Hughes and Huysentruyt and DOES 1 through 10 have converted Plaintiff's property for their own use thereby causing damage to Plaintiff in an amount to be proven at trial.

271. Hughes, Huysentruyt and DOES 1 through 10 engaged in the acts alleged above with a willful, conscious and/or reckless disregard of Plaintiff's rights and with willful, conscious or reckless disregard for the consequences of such conduct to Plaintiff. These acts were committed with the intent to vex, injure or annoy Plaintiff and, as such, constitute oppression, fraud and malice under California Civil Code §3294. Accordingly, Plaintiff is entitled to and requests punitive damages in a sum sufficient to deter Hughes and Huysentruyt from so acting in the future.

**SEVENTEENTH CAUSE OF ACTION**

**(Accounting)**

**(Against All Defendants)**

272. Plaintiff repeats and realleges each and every foregoing allegation contained in the complaint as if fully set forth herein.

273. The amount of expenses, monies, profits, and other things of value, arising on account of the use by Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1-10, of the source code of the MASS Software, Plaintiff's proprietary customer information and Trade Secrets, is relevant to a determination of damages in connection with the claims alleged in this complaint. For this reason, and for other reasons set forth in this complaint, Plaintiff is entitled to obtain an accounting as relates to the conduct of Hughes, Huysentruyt, InformaTrac, Nugent and PcVue and DOES 1-10, in connection with the Software and Trade Secrets.

274. The amount of expenses, monies, profits, and other things of value arising on account of the use by Hughes, Huysentruyt, InformaTrac, Nugent, PcVue

and DOES 1-10 of the Plaintiffs' Software and source and object codes, Plaintiff's proprietary customer information and Trade Secrets, is unknown to Plaintiff, and cannot be ascertained without an accounting of the expenses, monies, profits, and other things of value so obtained.

275. By this complaint, Plaintiff demands an accounting from Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1-10, of expenses, monies, profits, and other things of value arising on account of the use by Hughes, Huysentruyt, InformaTrac, Nugent and PcVue and DOES 1-10, of the source and object codes for the MASS Software, customer information and Trade Secrets.

## PRAYER

WHEREFORE, Plaintiff prays for relief and judgment as follows:

**ON THE FIRST THROUGH EIGHTH CAUSES OF ACTION**

**[Copyright Infringement of Works 1-8]:**

Plaintiff demands judgment against Defendants and each of them:

1. Permanently enjoining Defendants, their officers, agents, employees, and those persons in active concert or participation with each or any of them from directly or indirectly infringing Plaintiff's Copyrights and Copyrighted Software;

2. Ordering Defendants to deliver for impoundment during the pendency of this action all copies of the InformaTrac or MASS Software in its custody, possession or control (in any form or medium) and to deliver for destruction all infringing copies and all devices or other matter for making such infringing copies;

3. Awarding Plaintiff its actual damages in an amount not less than $2,000,000 for losses suffered as a result of Defendants' infringement of its Copyrights in Works 1-8, or, in the alternative, awarding statutory damages for willful infringement in the amount of $150,000 per work and per violation;

4. Directing Defendants and each of them to account for all revenue derived by them from their infringement of Plaintiff's Copyrights and directing that Defendants pay over to Plaintiff the total amount of such revenues; and

5. Awarding Plaintiffs reasonable attorneys' fees incurred as a result of Defendants' willful and intentional misconduct, together with the costs of this action and such other and further relief as this Court may deem just and proper.

**ON THE NINTH CAUSE OF ACTION [Federal Unfair Competition]:**

1. A preliminary and permanent injunction enjoining Defendants, its officers, employees, agents, successors and assigns, and all others in active concert or participation with Defendants or otherwise, from directly or indirectly:

(a) manufacturing, producing, distributing, circulating, selling, offering for sale, moving, or otherwise disposing of, advertising, promoting or displaying any product bearing any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiff's products, and seeking to pass such products off as originating from, authorized by, affiliated with or endorsed by Plaintiff;

(b) using any simulation, reproduction, counterfeit, copy, or colorable imitation of Plaintiff's mark or products in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of Defendants' products;

(c) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a)-(c);

2. An accounting by Defendants of all gross revenues derived from the sale of Defendant's infringing products;

3. Defendants to file with this Court and serve on Plaintiff within thirty (30) days from the date of entry of any restraining order and/or injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants

have complied with the terms of the injunction in accordance with 15 U.S.C. §1116 and otherwise;

4. Defendants to pay Plaintiff:

(a) all profits, gains and advantages derived by Defendants from Defendants' unlawful conduct, as provided under 15 U.S.C. §1117(a)(1);

(b) monetary damages for injury, loss and damage incurred by Plaintiff as a result of Defendants' unlawful conduct, including lost profits and costs of corrective advertising, as provided under 15 U.S.C. §1117(a)(2), 17, and

(c) Plaintiff's costs and disbursements of this action and reasonable attorneys' fees, under 15 U.S.C. §1117(a)(3), and otherwise;

5. As Defendants' actions having been willful, payment of enhanced damages under 15 U.S.C. §1117(a)(3), and otherwise;

6. Payment of interest;

7. Payment of Court costs; and

8. Such other and further relief as this court shall deem just and equitable.

**ON THE TENTH CAUSE OF ACTION [Federal Computer Fraud and Abuse]:**

1. Plaintiff has been damaged by Defendants' actions, including being forced to expend substantial resources, well in excess of $5,000, to investigate the unauthorized access and abuse of its computer network. Plaintiff therefore seeks compensatory damages under 18 U.S.C. 8 1030(g) in an amount to be proven at trial.

2. Plaintiff has suffered irreparable and incalculable harm and injuries resulting from Defendants' conduct, harm which will continue unless Defendants are enjoined from further unauthorized use of Plaintiff's protected computers.

**ON THE ELEVENTH CAUSE OF ACTION**

**[State Computer Access and Fraud Act]:**

1. For injunctive relief, specifically for Defendants to refrain permanently from using or disclosing any of Plaintiff's company data, passwords, computer systems, computer servers, source and object codes and Software, and any and all other qualified property of Plaintiffs held by Defendants,

2. For general and special compensatory damages, including pain and suffering, according to proof at trial;

3. For attorney's fees pursuant to Penal Code §502(e)(2) or Civil Code §3426.4;

4. For such damages as are determined in accordance with proof at trial.

**ON THE TWELFTH CAUSE OF ACTION [Federal Theft of Trade Secrets]:**

1. For damages (including exemplary damages up to two times the compensatory damage award) and costs according to proof;

2. For a temporary restraining order, preliminary injunction and a permanent injunction enjoining and restraining Hughes, Huysentruyt, InformaTrac, Nugent, PcVue, and DOES 1 through 10, and their agents, servants, and employees, and all persons acting in concert with them, from any of the following:

   a. Using Plaintiff's Trade Secrets without authorization from Plaintiff; and

   b. Disclosing or divulging to anyone Plaintiff's Trade Secrets, including the source or object codes of the MASS Software.

3. For an order commanding Hughes, Huysentruyt, InformaTrac, Nugent and PcVue, and DOES 1 through 10, immediately to turn over possession to Plaintiff of any copies of or versions of any software substantially similar to or derived from the MASS Software, and the source and object codes for such Software;

5. For an order commanding Hughes, Huysentruyt, InformaTrac, and DOES 1 through 10 to turn over any proprietary information of Plaintiff in their possession, custody or control; and

6. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Hughes, Huysentruyt, InformaTrac and DOES 1 through 10, and their agents, servants, and employees, and all persons acting under or in concert with them, from:

a. Using the source or object codes of the MASS Software without authorization from Plaintiff;

b. Using Plaintiff's proprietary information and Trade Secrets without authorization from Plaintiff; and

c. Disclosing or divulging to anyone Plaintiff's Trade Secrets or the source or object codes of the MASS Software.

**ON THE THIRTEENTH CAUSE OF ACTION [Breach of Contract]:**

1. General and special damages proximately caused by Defendants' material breaches of the Agreement, including lost profits of at least $1,000,000, in a precise amount in accordance with proof at trial, plus interest at the legal rate.

2. In accordance with the attorney's fees provision in the Agreement, all reasonable fees and costs incurred in the filing and prosecution of this action.

**ON THE FOURTEENTH CAUSE [Interference with Business Relations]:**

1. For general and special damages according to proof at trial;

2. For exemplary damages according to proof; and

3. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Hughes, Huysentruyt, InformaTrac and DOES 1-10, and their agents, servants, and employees, and all persons acting under or in concert with them, from:

a. Using the source code of the MASS Software without authorization from Plaintiff;

b. Using Plaintiff's Trade Secrets without Plaintiff's authorization;

c. Approaching existing customers of Plaintiff in an attempt to induce them to move their business from Plaintiff to Defendants;

d. Approaching potential customers of Plaintiff in an attempt to induce them to move their business from Plaintiff to Defendants; and

e. Making false and misleading statements to customers and potential customers of Plaintiff.

**ON THE FIFTEENTH CAUSE OF ACTION [Fraud and Deceit]:**

1. For general and special damages according to proof at trial; and

2. For exemplary damages according to proof.

**ON THE SIXTEENTH CAUSE OF ACTION [Conversion]:**

1. For general and special damages according to proof, in an amount to be proven at trial; and

2. For exemplary damages according to proof.

**ON THE SEVENTEENTH CAUSE OF ACTION [Accounting]:**

For an accounting of all revenues received by Defendants and each of them.

**ON ALL CAUSES OF ACTION:**

1. Interest on the damages according to law;

2. Prejudgment interest;

3. Attorneys' fees as provided by contract and/or law;

///

///

4. Costs of suit; and

5. For such further relief as the Court may award in the interest of justice.

DATED: December 2, 2016 LAW OFFICES OF KIRK M. HALLAM

By: /s/*Kirk M. Hallam*
Kirk M. Hallam
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury in this action.

DATED: December 2, 2016 LAW OFFICES OF KIRK M. HALLAM

By: /s/*Kirk M. Hallam*
Kirk M. Hallam
Attorney for Plaintiff