## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

Present: The Honorable     CHRISTINA A. SNYDER

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Kirk Hallam

Kevin Abbott

Erik Belt

**Proceedings:**     DEFENDANTS PCVUE, INC. AND EDWARD NUGENT'S MOTION TO DISMISS (Dkt. 46, filed March 10, 2017)

## I.     INTRODUCTION

On December 2, 2016, plaintiff Manufacturing Automation & Software Systems, Inc. ("plaintiff" or "MASS Group") filed this action against defendants Kristopher Hughes, James Huysentruyt, InformaTrac, Inc., PcVue, Inc., Edward Nugent, and Does 1–10, inclusive. Dkt. 1. Plaintiff filed a first amended complaint on January 31, 2017. Dkt. 27 ("FAC"). Plaintiff alleges the following claims: (1)–(8) copyright infringement of eight copyrighted works against all defendants; (9) violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq. against Hughes and Huysentruyt; (10) violation of California's Computer Data Access and Fraud Act, Cal. Penal Code § 502 against Hughes and Huysentruyt; (11) misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 et seq. against all defendants; (12) breach of contract against Hughes and Huysentruyt; (13) interference with prospective economic advantage against Hughes, Huysentruyt, and InformaTrac; (14) fraud and deceit against Hughes and Huysentruyt; (15) conversion against Hughes, Huysentruyt, and Does 1–10; (16) diversion of corporate opportunities against Hughes and Huysentruyt; and (17) accounting against all defendants. The gravamen of plaintiff's complaint is that defendants wrongfully copied plaintiff's software to produce, market, and sell a counterfeit version to plaintiff's customers or potential customers.

On March 28, 2017, PcVue and Nugent (the "moving defendants") filed the instant motion to dismiss plaintiff's complaint for lack of personal jurisdiction and for failure to

| | CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | | |

state a claim against them on which relief may be granted. Dkt. 50 ("MTD").[1]  Plaintiff filed its opposition on April 17, 2017, dkt. 51 ("Opp'n"), and the moving defendants filed their reply on April 24, 2017, dkt. 52 ("Reply").

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff alleges the following facts.

Plaintiff and its founder and CEO, Gamal Balady, have developed, produced, marketed, and licensed a series of internet-based software programs that allow customers to track or trace quantities and precise locations of inventories, equipment, materials, documents, or people. FAC ¶ 1.  These programs are protected by copyright. Id.  Eight of those copyrighted works, referred to as the "MASS Software," are at issue in this matter. Id.  Plaintiff is a California corporation with is principal place of business in California. Id. ¶ 20

Huysentruyt is a California resident. Id. ¶ 22.  Huysentruyt began working at MASS Group in 1998 and continued working there until his resignation on March 3, 2016. Id. ¶ 31.  At the time of his resignation, Huysentruyt was the vice president of sales. Id.  Among his responsibilities was the cultivation of partnerships and alliances. Id.

Hughes is a California resident. Id. ¶ 21.  Hughes was hired to work at MASS Group in 1999 and continued working there until his resignation on March 4, 2016. Id. ¶ 30.  Hughes served as a software developer and, more recently, as a senior manager. Id.  Among his responsibilities as senior manager was assuring compliance with state and federal laws and regulations. Id.

InformaTrac is a California corporation—controlled and owned by Hughes and Huysentruyt—with its principal place of business in California. Id. ¶ 23.

---

[1] The Court notes that the moving defendants do not address plaintiff's claim for accounting in their motion.  Accordingly, the moving defendants do not appear to seek a Rule 12(b)(6) dismissal of plaintiff's complaint in its entirety.

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

Nugent began working at MASS Group in 2004 and was terminated in 2007. Id. ¶¶ 25, 32. Nugent served as the sales lead for the western United States in marketing, promotion, and sales. Id. In 2005, Nugent signed a nondisclosure agreement with plaintiff, promising not to disclose or use any of plaintiff's confidential information, including the MASS Software or the source or object codes. Id. Nugent previously resided in California, and now resides and works in Massachusetts, where he is an officer and director of PcVue, a corporation headquartered in Massachusetts. Id. ¶ 25.

Up until 2015, Nugent maintained regular contact with Huysentruyt and Hughes in California to discuss various joint business opportunities for PcVue and MASS Group. Id. ¶ 32.

When Hughes and Huysentruyt were still officers of MASS Group, they agreed with Nugent and PcVue to jointly develop a software solution for the Miami Dade Airport—a PcVue customer. Id. ¶ 8. Under Nugent and PcVue's supervision and control, Hughes and Huysentruyt applied MASS Software, along with PcVue's integrated software, to provide the Miami Dade Airport with the ability to collect data and receive reports on the status and condition of the airport's new passenger trains. Id. ¶ 9. Such a project is within the core competency of MASS Group and the MASS Software is well suited to such a project. Id. In addition, before and after Hughes' and Huysentruyt's resignations from MASS Group, Nugent and PcVue brought to Hughes and Huysentruyt new orders for InformaTrac's software and services. Id. ¶ 10.

On February 18 and 22, 2016, Hughes and Huysentruyt respectively informed Balady that they were resigning as employees of MASS Group, effective March 3 and 4, 2016. Id. ¶ 34. Hughes and Huysentruyt stated that they were resigning for personal reasons, had not begun to look for work elsewhere, and did not know where they would work next. Id. However, plaintiff alleges that Hughes and Huysentruyt had already launched their plan to copy the MASS Software and sell it as their own through their new company, InformaTrac. Id. ¶ 35. Hughes and Huysentruyt registered the domain name for InformaTrac on February 12, 2016—before giving notice of their resignations. Id. They incorporated InformaTrac just a few weeks later. Id. As employees of MASS Group, Hughes and Huysentruyt were involved in the development of the MASS Software and had full access to that software and its underlying source and object codes. Id. ¶ 37. In the year prior to their resignations, Hughes and Huysentruyt were responsible for promoting, licensing, and servicing the MASS Software and, next to Balady, had the

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

most contact with plaintiff's current and potential customers.  Id. ¶ 41.  In the six months before their resignations, Hughes and Huysentruyt brought in virtually no new customers for plaintiff as part of defendants' plan to copy the MASS Software and eliminate plaintiff as an effective competitor to InformaTrac.  Id. ¶ 42.  Upon their resignation, Hughes and Huysentruyt were instructed to return all company phone records, proprietary or trade secret information, MASS Software, source and object codes, and any servers or storage disks containing such intellectual property.  Id. ¶ 48.  Hughes and Huysentruyt were also directed (and agreed) to delete all MASS Software source and object code information from any computers, servers, or disks in their possession.  Id.

In April 2016, Hughes, Huysentruyt, PcVue, and Nugent issued a joint press release through PcVue's public relations firm, announcing the formation of a "business partnership" between InformaTrac and PcVue.  Id. ¶ 11.  The press release provided:

> PcVue, Inc., a global HMI/SCADA software provider, is pleased to announce that it has partnered with InformaTrac, Inc., to offer enhanced traceability for asset management. . . .  InformaTrac Pro software combined with PcVue's Supervisory Control and Data Acquisition (SCADA) platform yields a flexible and powerful traceability solution… "Traceability, whether acquired from equipment or technologies such as RFID and barcodes, can be now delivered in real-time and via multi-media reports," according to PcVue's COO, Edward Nugent.  Kris Hughes, President of InformaTrac added, "The partnership bridges the gap between the Auto-ID and SCADA software strategies and enables complete traceability solutions.  By working together our companies have achieved a new level of asset monitoring and tracking software for informed decision making . . . ."  Jim Huysentruyt, VP of Business Development added, "Ed Nugent and I have been working together on these kinds of solutions since the early 90s."

Id.  Since March 2016, defendants have (a) prepared joint marketing materials; (b) jointly marketed products through PcVue's booths at multiple industry trade shows, including in San Diego California on January 31, 2017; and (c) advertised their business alliance and product offerings on their websites.  Id. ¶ 12.  PcVue finances InformaTrac's marketing efforts and serves as an "integral part of Defendants' joint effort to sell InformaTrac's infringing software along with PcVue's complementary software, in California and elsewhere."  Id. ¶ 13.

| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

On information and belief, plaintiff alleges that Hughes and Huysentruyt are selling counterfeit copies of the MASS Software to customers and potential customers of MASS Group under the new corporate identify InformaTrac. Id. ¶ 36. Hughes and Huysentruyt are jointly marketing, selling, and/or assisting in selling the counterfeit software with Nugent and PcVue. Id. ¶ 38. On information and belief, plaintiff alleges that defendants are selling the counterfeit software using false and misleading statements, including assertions that defendants acquired legal ownership of the MASS Software and all rights therein and are authorized to sell or license the MASS Software as their own. Id. ¶ 39. On information and belief, plaintiff alleges that some its actual or potential new customers were dissuaded from acquiring or renewing licenses for and discontinued their use of the MASS Software because of defendants' copyright infringement. Id. ¶¶ 43–44. On information and belief, Hughes and Huysentruyt contacted numerous current and prospective customers and offered to replace the MASS Software with the infringing InformaTrac Software. Id. ¶ 45. Defendants accessed and exploited—and, on information and belief, continue to access and exploit—plaintiff's confidential customer contact information. Id. ¶ 47.

Plaintiff alleges that defendants engaged in a conspiracy to: (a) misappropriate the source and object codes for the Mass Software, along with other proprietary items and related information; (b) copy and convert to themselves plaintiff's intellectual property, including plaintiff's business and marketing plans, marketing materials, trade secrets, customer contact information, financial information, and personnel documents ("MASS Assets"); (c) utilize the MASS Assets to launch and operate InformaTrac; (d) misrepresent and conceal material facts from plaintiff and Balady; (e) market InformaTrac Software in combination with PcVue's products; and (f) represent to potential InformaTrac Software licensees that defendants are the lawful owner of that software. Id. ¶ 49. Nugent and PcVue partially financed, supervised, and controlled this conspiracy by: (a) wrongfully allowing defendants to exploit the MASS Assets; (b) defrauding plaintiff; and (c) interfering with plaintiff's contractual and business relations. Id. ¶ 50.

Plaintiff asserts eight claims of copyright infringement against defendants, including PcVue and Nugent, for infringing on the following copyrighted works: U.S. Copyright No. TX 8-233-219 ("Work 1"); U.S. Copyright App. No. 1-4192462946 ("Work 2"); U.S. Copyright App. No. 1-4192462853 ("Work 3"); U.S. Copyright App. No. 1-4192462795 ("Work 4"); U.S. Copyright App. No. 1-4192462747 ("Work 5");

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| --- | --- | --- | --- |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

U.S. App. Copyright No. 1-4192462679 ("Work 6"); U.S. Copyright App. No. 1-4192462581 ("Work 7"); and U.S. Copyright App. No. 2-4189662157 ("Work 8") (collectively, "Works"). See generally FAC. With respect to each copyrighted work, plaintiff alleges:

> Defendants' infringing works "copy," i.e. are identical or virtually identical, and substantially similar to, the quantitatively and qualitatively distinct, important, and recognizable, nonfunctional and protectable portions of Plaintiff's Copyrighted Work[s 1–8], including the literal elements of Plaintiff's Work[s 1–8], i.e. the source and object codes, as well as the nonliteral and nonfunctional elements of Plaintiff's Work[s 1–8], including but not limited to the structure, sequence and organization, appearance of the user interface, screens, fields, arrangement and sequencing of fields.

Id. ¶¶ 54, 72, 90, 108, 126, 144, 162, 180. Plaintiff specifies that the "protectable elements" of its Works "do not include any procedures, processes, systems, or methods of operation for Plaintiff's software products, such matters only alleged as Plaintiff's Trade Secrets, defined and alleged hereinbelow." See, e.g., id. ¶ 55. Defendants did not seek or receive permission or consent to copy any portion of plaintiff's Works and copied them willfully and maliciously. See, e.g., id. ¶ 56. Plaintiff alleges that defendants acted jointly and that "each" defendant induced, caused, or materially contributed to the infringing conduct of one another such that they should be found contributorily liable for the acts of the others. See, e.g., id. ¶¶ 61–62. In addition, each defendant had the right and ability to control the other infringers and derived a direct benefit from that infringement such that each defendant should be found vicariously liable. See, e.g., id. ¶ 63.

Plaintiff asserts a claim of misappropriation of trade secrets as against PcVue and Nugent, along with the other defendants. Id. ¶¶ 212–37. Plaintiff defines "Trade Secrets" to mean "the procedures, processes, systems, methods of operation for Plaintiff's software products, customer identifications, private phone numbers and email addresses, individual customer product needs and specifications, market studies, special business practices and private bank account information." Id. ¶ 213. Plaintiff enjoys an advantage over its existing and potential competitors because of the Trade Secrets that it has acquired through years of research and investigation. Id. ¶ 214. Plaintiff has made and continues to make reasonable efforts to preserve the confidentiality of its Trade Secrets

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

and requires its employees—including Hughes, Huysentruyt, and Nugent—to sign nondisclosure agreements. Id. ¶ 216. Plaintiff alleges that, without its consent, defendants misappropriated plaintiff's Trade Secrets when Hughes and Huysentruyt downloaded and copied digital files containing Trade Secrets in the final months of their employment. Id. ¶¶ 219–20. On information and belief, plaintiff avers that Nugent and PcVue urged Hughes and Huysentruyt to share those files with Nugent and PcVue for defendants' mutual use. Id. ¶ 219. On information and belief, plaintiff alleges that Hughes and Huysentruyt disclosed the Trade Secrets to Nugent and PcVue, which then exploited those Trade Secrets in the process of selling PcVue's products and services along with the integrated products and services of InformaTrac. Id. ¶ 229. Defendants knew or had reason to know that the Trade Secrets they acquired constituted protectable trade secrets that had independent economic value, were not generally known to the public, and were the subject of plaintiff's reasonable efforts to ensure the secure the secrecy of such information. Id. ¶ 231.

Finally, plaintiff asserts a claim for accounting against PcVue and Nugent, along with the other defendants. Id. ¶¶ 300–303.

## III.   PERSONAL JURISDICTION

### A.   LEGAL STANDARD

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court may properly exercise personal jurisdiction over the defendant. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, a court decides such a motion without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995); Doe v. Unocal Corp., 27 F. Supp. 2d 1174, 1181 (C.D. Cal. 1998), aff'd, 248 F.3d 915 (9th Cir. 2001). The plaintiff's alleged version of the facts is taken as true for purposes of the motion if not directly controverted. AT & T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996); Unocal, 27 F. Supp. 2d at 1181. If the defendant adduces evidence controverting the allegations, however, the plaintiff may not rely on his pleadings, but must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986) (quoting Amba Mktg. Servs., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th

| | CIVIL MINUTES – GENERAL | | **'O'** | |
|---|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 | |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | | |

Cir. 1977)).  Any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."  AT & T, 94 F.3d at 588–89 (quotation marks omitted).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process."  Pebble Beach, 453 F.3d at 1154–55 (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996)).

California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state law and federal due process are the same.  Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991).  In order for a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

### 1. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  Whether a defendant's contacts are sufficiently substantial, continuous, and systematic for an exercise of general jurisdiction depends upon a defendant's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets."  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011) (quoting Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1172 (9th Cir. 2006)); see also Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) ("Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there.").  Occasional sales to residents of the forum state are insufficient to create general jurisdiction.  See Brand v. Menlove Dodge, 796 F.2d 1070, 1073 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

1986). This standard is exacting, "because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).

## 2.    Specific Jurisdiction

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

(1) The defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

(2) The claim must arise out of or result from the defendant's forum-related activities; and

(3) Exercise of jurisdiction must be reasonable.

Id.; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and if either is not satisfied, personal jurisdiction is not established. Schwarzenegger, 374 F.3d at 802.

In contracts cases, courts conduct a "purposeful availment" analysis to determine the first prong of the specific jurisdiction test. Id. Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether purposeful availment has occurred: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. Burger King, 471 U.S. at 478–79. A single contract for the sale of goods to a plaintiff in the forum state may be sufficient for specific jurisdiction over a defendant, but only where the contract creates a "substantial connection" with the forum state. Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008). "The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction," without more. Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990).

In tort cases, by contrast, courts conduct a "purposeful direction" analysis. Schwarzenegger, 374 F.3d at 802. Purposeful direction is analyzed under the "effects test." Calder v. Jones, 465 U.S. 783, 787–89, (1984); Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). Under the "effects" test, "the defendant must have allegedly: (1) committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting Schwarzenegger, 374 F.3d at 803). A foreign act with foreseeable effects in the forum state does not always gives rise to specific jurisdiction; there must be "something more." Bancroft & Masters, 223 F.3d at 1087. "'[S]omething more' is what the Supreme Court described as 'express aiming' at the forum state." Id. The "express aiming" requirement is satisfied "when defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Id.; see also Dole Food, 303 F.3d at 1111.

If the plaintiff establishes the first two prongs regarding purposeful availment/direction and causation, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth, 942 F.2d at 623.

## B.    DISCUSSION

Plaintiff does not contest that the Court lacks general personal jurisdiction over PcVue and Nugent. Accordingly, the Court considers only whether it may exercise specific personal jurisdiction over the moving defendants.

### 1.    Purposeful Direction

Plaintiff's copyright claims sound in tort. See Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668, 674 (9th Cir. 2012) ("We have characterized copyright infringement as a 'tort,' and suggested that willful infringement is an intentional tort.") (internal citations omitted); see Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd., 191

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

F. Supp. 3d 1007, 1014 (N.D. Cal. 2016) ("[F]or copyright infringement actions, the Ninth Circuit requires a showing of purposeful direction."); Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (applying purposeful direction analysis to copyright infringement action); Mavrix Photo, 647 F.3d at 1228 (same). A claim for accounting is "derivative; it must be based on other claims." Canales v. Fed. Home Loan Mortg. Corp., No. 11-cv-2819-PSG-VBK, 2011 WL 3320478, at *8 (C.D. Cal. Aug. 1, 2011). The Court therefore applies the purposeful direction analysis for all of plaintiff's claims against the moving defendants.

To satisfy the purposeful direction "effects" test, "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Yahoo!, 433 F.3d at 1206.

"An intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." Wash. Shoe, 704 F.3d at 674. Here, plaintiff alleges that the moving defendants committed intentional acts because, inter alia: (a) after his termination in 2007, Nugent maintained regular contact with plaintiff and its employees, including Hughes and Huysentruyt; (b) before joining PcVue, Nugent reached out to plaintiff in 2010 to express his interest in reselling plaintiff's copyrighted software; (c) in 2015, Nugent and PcVue discussed with plaintiff—through Hughes and Huysentruyt—a reseller agreement to sell plaintiff's copyrighted software; (d) beginning in the fall of 2015, Nugent and PcVue provided Hughes and Huysentruyt with opportunities to sell conflicting asset-tracking software while Hughes and Huysentruyt were still plaintiff's employees; (e) on April 12, 2016, Nugent and PcVue announced a partnership with InformaTrac; and (f) defendants have marketed each other's software products in California and to Californians since April 2016.[2] Opp'n at 5–6.

The parties dispute whether the partnership between PcVue and InformaTrac involves: (a) the joint marketing of InformaTrac and PcVue's software as an "integrated

---

[2] The Court does not consider InformaTrac and PcVue's joint appearance at a San Diego trade show in January and February 2017 because "[o]nly contacts occurring prior to the event causing the litigation may be considered." Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990).

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

software solution"—as plaintiff contends; or (b) InformaTrac's marketing of PcVue software only—as the moving defendants assert. Because the Court resolves factual conflicts in plaintiff's favor for the purposes of deciding whether a prima facie case of personal jurisdiction exists, AT & T, 94 F.3d at 588–89, the Court finds that plaintiff's allegation that the moving defendants marketed products that infringed on plaintiff's copyrights "is a sufficient allegation of an intentional act." Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015).

The Court next considers whether the acts of the moving defendants were expressly aimed at California. The Ninth Circuit has held that "[w]hen copyrights are held by corporations, the 'right to control the work' will typically be exercised where the corporation is located. The impact of an intentional violation of that right is necessarily directed at that location." Wash. Shoe., 704 F.3d at 678. The Ninth Circuit elaborated: "Because the harm caused by an infringement of the copyright laws must be felt at least at the place where the copyright is held, we think that the impact of a willful infringement is necessarily directed there as well." Id. Here, plaintiff is the copyright holder, is located in California, and alleges willful copyright infringement. See FAC ¶¶ 20, 56–57. Accordingly, the Court concludes that the moving defendants' intentional acts were expressly aimed at California.

The Court next considers whether the moving defendants' conduct caused foreseeable harm in California. "The economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable." Mavrix Photo, 647 F.3d at 1231. "It is foreseeable that the loss will be inflicted both in the forum where the infringement took place . . . and where the copyright holder has its principal place of business." Wash. Shoe., 704 F.3d at 679 (emphasis added). The moving defendants do not address this prong of the effects test. Therefore, the Court concludes that it was foreseeable that plaintiff's loss would be inflicted in California.

In sum, the Court concludes that plaintiff has presented a prima facie case of purposeful direction by the moving defendants sufficient to withstand a motion to dismiss for lack of personal jurisdiction.

## 2.    "But for" Causation

The Court next considers whether plaintiff's claims arise out of or result from the moving defendants' forum-related activities. Plaintiff alleges that their claims arise out

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

of the moving defendants' efforts to sell InformaTrac's infringing software to PCVue's new and existing customers in California and elsewhere. Opp'n at 9; FAC ¶¶ 12, 13. In addition, plaintiff contends that the moving defendants are financially supporting the marketing efforts of InformaTrac, enabling them to sell InformaTrac's counterfeit products. Id. at 10; FAC ¶¶ 13, 50. The moving defendants' evidence rebutting plaintiff's allegations consists of Nugent's and Hughes' affidavit statements making contrary assertions. The Court thus resolves this factual dispute in favor of plaintiff. Accordingly, the Court concludes that plaintiff has presented a prima facie case that its claims arise out of the moving defendants' forum-related activities.

### 3.    Reasonableness

The final requirement for specific jurisdiction is reasonableness. Because plaintiff has satisfied the first two prongs of the specific jurisdiction test, the moving defendants bear the burden of "present[ing] a compelling case" that the exercise of jurisdiction is not reasonable. Schwarzenegger, 374 F.3d at 802. The reasonableness determination requires the consideration of seven factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth, 942 F.2d at 623; Bancroft, 223 F.3d at 1088 (citing Burger King, 471 U.S. at 476).

The moving defendants argue that jurisdiction would be unreasonable because Nugent is PcVue's only full-time employee and if Nugent had to defend this action in California, PcVue's ability to conduct its business would be "severely impacted." MTD at 17–18. The moving defendants thus focus only on the second factor – the burden on defendants in defending in this district. "This is inadequate to discharge Burger King's requirement that the defendant demonstrate a 'compelling case,' focused on the seven specific factors listed above, in order to establish unreasonableness." Bancroft, 223 F.3d at 1089. Nugent's inconvenience is not "so great as to constitute a deprivation of due process," therefore the burden on Nugent "will not overcome clear justifications for the exercise of jurisdiction." See Roth, 942 F.2d at 623 (quotation marks omitted)). The Court therefore concludes that the reasonableness requirement is met.

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

Because the three-part test for specific personal jurisdiction has been satisfied, the Court concludes that it may exercise jurisdiction over the moving defendants. The Court therefore **DENIES** the moving defendants' motion to dismiss for lack of personal jurisdiction.

## IV.  MOTION TO DISMISS

### A.  LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

Federal Rule of Civil Procedure 8(a) provides that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to meet this standard, a claim for relief must be stated with "brevity, conciseness, and clarity." See Charles A. Wright & Arthur R. Miller, 5 Federal Practice and Procedure § 1215 (3d ed.). "The Plaintiff must allege with at least some degree of particularity overt acts which Defendants engaged in that support the Plaintiff's claim." Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

As a general rule, leave to amend a complaint that has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## B.    DISCUSSION

### 1.    Nugent's Individual Liability

The moving defendants argue that Nugent cannot be held personally liable for PcVue's alleged copyright infringement because plaintiff fails to allege that PcVue is Nugent's alter ego. MTD at 24–25.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

The alter ego doctrine is a "sparingly used" exception to the general principal that "a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." Sonora Diamond Corp. v. Superior Court, 83 Cal. App. 4th 523, 538, 539 (2000).[3] Under California's alter ego doctrine, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the [owner] of a corporation liable for the acts of the corporation." Id. at 538.

To state a claim for alter ego liability, a plaintiff must adequately allege that: "(1) there is such unity of interest that the separate personalities [of the entity and the shareholder] no longer exist and (2) that failure to disregard [their separate entities] would result in fraud or injustice." Doe v. Unocal Corp., 248 F.3d 915, 926 (9th Cir. 2001). "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003).

Plaintiff does not allege that PcVue is Nugent's alter ego and fails to allege any facts supporting a finding of alter ego liability. Furthermore, in its opposition, plaintiff fails to respond to the moving defendants' argument that Nugent may not be held personally liable because plaintiff does not aver facts that would justify piercing the corporate veil.

However, at oral argument, counsel for plaintiff asserted that Nugent is liable *not* on the basis of an alter ego theory, but because Nugent authorized, directed, and participated in the infringing conduct. Plaintiff relies on Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001 (9th Cir. 1985), in which the Ninth Circuit affirmed that "[a] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." Id. at 1021 (quotation marks omitted). "This is true in trademark infringement and unfair trade practices cases." Binder v. Disability Grp., Inc., 772 F. Supp. 1172, 1182 (C.D. Cal. 2011) (quotation

---

[3] "We apply the law of the forum state in determining whether a corporation is an alter ego of the" individual. Towe Antique Ford Found. v. IRS, 999 F.2d 1387, 1391 (9th Cir. 1993).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

marks omitted). In addition, "[t]his principle applies regardless of the piercing of the corporate veil." Chase Inv. Servs. Corp. v. Law Offices of Jon Divens & Assocs., LLC, 748 F. Supp. 2d 1145, 1182 (C.D. Cal. 2010). The Ninth Circuit has also noted that "[c]ases which have found personal liability on the part of corporate officers have typically involved instances where the defendant was the 'guiding spirit' behind the wrongful conduct, . . . or the 'central figure' in the challenged corporate activity." Davis v. Metro Prods., Inc., 885 F.2d 515, 524 n.10 (9th Cir. 1989); see also Deckers Outdoor Corp. v. Fortune Dynamic, Inc., No. 15-cv-769-PSG-SS, 2015 WL 12731929, at *8 (C.D. Cal. May 8, 2015) (collecting cases). Thus, the central determination is whether Nugent is a primary participant or "guiding spirit" in the alleged wrongdoing. Plaintiff alleges, inter alia, that:

> "Under the supervision and control of Ed Nugent and PcVue," Hughes and Huysentruyt applied MASS Group Software and PcVue's integrated software to the Miami Dade Airport project. FAC ¶ 9.

> "Nugent and PcVue brought to InformaTrac, Hughes and Huysentruyt, and supervised their fulfillment of, several other new orders for InformaTrac's software and services to customers of PcVue." Id. ¶ 10.

> "[I]n late 2015, Defendants PcVue and Nugent solicited Defendants Hughes and Huysentruyt in California to provide software products and services to the customers of PcVue, the same type of business relationship PcVue previously agreed to with Plaintiff." Id. ¶ 18h.

> "PcVue by and through its Chief Operating Officer, Ed Nugent have solicited, encouraged, supervised, controlled and partially or wholly financed the production, marketing and sales of InformaTrac's infringing software products." Id. ¶¶ 63, 81, 99, 117, 135, 153, 171, 189.

> On information and belief, "at the urging of Defendants Nugent and PcVue," Hughes and Huysentruyt shared with Nugent and PcVue the digital files containing plaintiff's trade secrets. Id. ¶ 219.

Reading these allegations in the light most favorable to plaintiff, the Court finds that plaintiff adequately alleges that Nugent was the guiding spirit behind the alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

misconduct and therefore may be held personally liable. The Court therefore **DENIES** the moving defendants' motion as to Nugent.

### 2.     Copyright Claims

"Copyright is a federal law protection provided to the authors of 'original works of authorship,' including software programs." Vernor v. Autodesk, Inc., 621 F.3d 1102, 1106 (9th Cir. 2010) (citing 17 U.S.C. §§ 101–03)

To state a claim for copyright infringement, a plaintiff must allege: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Funky Films, Inc. v. Time Warner Entm't Co., L.P., 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting Feist Pubs., Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). To show copying, a plaintiff must show that the defendant copied protected elements of plaintiff's copyrighted works either through evidence of direct copying or through a showing that defendant had "access" to plaintiff's copyrighted material and that the two works at issue are "substantially similar." Funky Films, 462 F.3d at 1076; see Malibu Textiles, Inc. v. Label Lane Int'l, Inc., 668 F. App'x 803 (9th Cir. 2016) (same).

The moving defendants do not dispute that plaintiff owns valid copyrights. However, the moving defendants argue that plaintiff has failed to allege any copyright claim because plaintiff does not specify what was copyrighted and what was copied. MTD at 19. In support of that argument, the moving defendants assert that plaintiff does not provide a side-by-side comparison between the copyrighted work and the alleged copy, as is typical. Id. at 19–20.

Plaintiff alleges that defendants had access to and copied the MASS Software to produce and market counterfeit InformaTrac Software that is virtually identical and substantially similar to the protectable, nonfunctional elements of the MASS Software. See FAC ¶¶ 5, 21, 22, 32, 37. More specifically, plaintiff avers that the InformaTrac Software is virtually identical or substantially similar to eight, identified copyrighted works, including the literal elements of the Works—i.e., the source and object codes— and the nonliteral nonfunctional elements—i.e., the structure, sequence, organization, appearance of the user interface, screens, fields, arrangement, and sequencing of fields. Id. ¶¶ 54, 72, 90, 108, 126, 144, 162, 180.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

Contrary to the moving defendants' suggestion, "[c]opyright claims need not be pled with particularity, and complaints that allege present copyright ownership by the plaintiff, proper registration, and infringement by defendant have been held sufficient." Clinton v. Boladian, No. 11-cv-10062-R, 2013 WL 12126107, at *2 (C.D. Cal. May 2, 2013); see also Hale v. Atl. Recording Corp., No. 13-cv-3500-PSG-RZ, 2013 WL 12138708, at *3 (C.D. Cal. Sept. 3, 2013) ("[A]llegations of copyright infringement need only satisfy the minimal notice-pleading requirements of Federal Rule of Civil Procedure 8."). A claim for copyright infringement is adequate in circumstances like these, where a plaintiff: (a) "has identified several works by name that Defendant has allegedly infringed[,]" (b) "alleges that it owns the copyrights for these works[,]" and (c) "specifies that Defendants infringed upon Plaintiff's copyrights for certain 'original designs, figures, and diagrams' that were in these works." See Leadership Studies, Inc. v. Blanchard Training & Dev., Inc., No. 15-cv-1831-WQH-KSC, 2016 WL 4595950, at *6 (S.D. Cal. Mar. 4, 2016). "Plaintiff need not identify with specificity every 'design, figure, and diagram' at issue." Id.; cf. Voss v. Knotts, No. 11-cv-0842-H-WMC, 2011 WL 13101269, at *3 (S.D. Cal. Oct. 19, 2011) ("In regards to whether the copyrighted work and the works at issue are substantially similar in the protected elements, Defendants raise an issue of fact which is premature. Plaintiff's FAC pleads factual allegations that are enough to raise a right to relief above the speculative level." (citing Twombly, 550 U.S. at 555)). Accordingly, "the Court finds Plaintiff's allegations provide fair notice to Defendant[s] of the claims against [them]." Autodesk, 191 F. Supp. 3d at 1022.[4]

---

[4] At oral argument, the moving defendants' counsel for directed the Court's attention to Richtek Tech. Corp. v. UPI Semiconductor Corp., No. 09-cv-05659-WHA, 2011 WL 166198 (N.D. Cal. Jan. 18, 2011), as an example of a court requiring more than a generic description of copyright infringement. The Richtek court found the plaintiff's copyright claim "laughable" because "the only portion of the complaint" identifying acts and works infringing on plaintiff's copyrights were the following allegations:

77. Upon information and belief, [defendants] have had access to Richtek's Copyright Works.
78. Upon information and belief, [defendants] have made unauthorized copies, prepared derivative works and distributed copies of Richtek's copyright works ('the Accused Works') all without Richtek's permission.

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

The moving defendants also argue that plaintiff fails to allege contributory infringement or vicarious liability. MTD at 21–22. A party may be vicariously or contributorily liable for the direct copyright infringement of a third party. Vicarious liability requires that the party: "(1) has the right and ability to control [the principal's] putatively infringing activity and (2) derives a direct financial benefit from [its] activity." MDY Indus., LLC v. Blizzard Entm't. Inc., 629 F.3d 928, 938 (9th Cir. 2010). A party may be contributorily liable for another party's alleged copyright infringement for intentionally inducing or encouraging the direct infringement. Id. at 937–38. "[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing misconduct of another, may be held liable as a 'contributory' infringer[.]" Perfect 10, Inc. v. Amazon.com. Inc., 508 F.3d 1146, 1171 (9th Cir. 2007).

Reading the complaint in a light most favorable to plaintiff, the Court finds that plaintiff has adequately alleged facts in support of its claims for vicarious liability and contributory infringement. For example, plaintiff alleges, inter alia:

- Under Nugent and PcVue's supervision and control, Hughes and Huysentruyt applied MASS Software to provide Miami Dade Airport with the ability to collect data and receive reports on the status and condition of the airport's new trains. FAC ¶ 9.
- The moving defendants supervised Hughes and Huysentruyt's fulfillment of orders for InformaTrac's software. Id. ¶ 10.
- Defendants jointly market and sell InformaTrac's allegedly counterfeit software *with* PcVue's complimentary software and jointly market these products. Id. ¶¶ 12, 38.
- PcVue finances InformaTrac, Hughes, and Huysentruyt. Id. ¶ 13.
- Defendants knowingly and intentionally conspired to misappropriate the source and object codes of the MASS Software. Id. ¶ 49.
- Defendants each derived a direct financial benefit from the alleged infringement. Id. ¶ 63.

---

Id. at *3 (quoting the plaintiff's complaint). Here, by contrast, plaintiff offers more than "[b]ald recitations of legal conclusion like those contained in these paragraphs[.]" Id. Accordingly, the analysis in Richtek does not counsel dismissal on the facts of this case.

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | May 8, 2017 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | |

The Court finds that such allegations are not mere recitations of the law, but are sufficiently specific to satisfy Rule 8's pleading standard.

Accordingly, the Court **DENIES** the moving defendants' motion to dismiss plaintiff's copyright claims.

### 3.    Trade Secrets Claim

To state a claim for misappropriation of trade secrets under California's Uniform Trade Secrets Act ("UTSA"), a "plaintiff must plead two primary elements: (1) the existence of a trade secret, and (2) misappropriation of the trade secret." AccuImage Diagnostics Corp v. Terarecon, Inc., 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (footnote omitted) (citing Cal. Civ. Code § 3426.1(b)); see also Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1665 (2003) ("Under the UTSA, a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff.").

California's UTSA defines the term "trade secret" as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).  "Thus, the definition consists of three elements: (a) information (b) which is valuable because unknown to others and (c) which the owner has attempted to keep secret." Abba Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 18 (1991).  In order to adequately allege the existence of a trade secret, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." Pellerin v. Honeywell Int'l, Inc., 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012).

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | | Date | May 8, 2017 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. v. KRISTOPHER HUGHES ET AL. | | | |

The moving defendants argue that plaintiff's trade secrets claim fails for two reasons: (1) plaintiff fails to describe the subject matter of its trade secrets with sufficient particularity to give the moving defendants reasonable notice of the issues; and (2) plaintiff's trade secret claim contradicts its copyright claims. MTD at 22–24.

Plaintiff alleges that its trade secrets are comprised of "the procedures, processes, systems, methods of operation for Plaintiff's software products, customer identifications, private phone numbers and email addresses, individual customer product needs and specifications, market studies, special business practices and private bank account information." FAC ¶ 213. "The complaint *need not spell out* the details of the trade secret but must identify the trade secret with sufficient particularity to give defendants reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." MedioStream, Inc. v. Microsoft Corp., 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012) (emphasis added). The Court finds that, "[a]lthough Plaintiff's description does not provide inordinate detail about the secrets Plaintiff claims it seeks to protect, it provides more than bare legal conclusions and is sufficient to afford Moving Defendants reasonable notice of the scope of discovery." Telemasters, Inc. v. Vintage Club Master Ass'n, No. 2:05-cv-05139-FMC, 2006 WL 4599670, at *5 (C.D. Cal. Jan. 9, 2006). Finally, the Court finds that plaintiff's trade secret claim does not contradict its copyright claims because plaintiff *omits* from its definition of "Trade Secret" the copyrighted software codes (which are available for public inspection and, therefore, not secret). See FAC ¶¶ 55, 213. Accordingly, the Court **DENIES** the moving defendants' motion to dismiss plaintiff's claim for misappropriation of trade secrets.

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** the moving defendants' motion to dismiss.

IT IS SO ORDERED.

|   | 00 | : | 27 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |