UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MANUFACTURING AUTOMATION | ) | CASE NO: 2:16-CV-08962-CAS-KS |
| AND SOFTWARE SYSTEMS, INC, | ) | |
| | ) | CIVIL |
| Plaintiff, | ) | |
| | ) | Los Angeles, California |
| vs. | ) | |
| | ) | Tuesday, April 10, 2018 |
| KRISTOPHER HUGHES, ET AL, | ) | |
| | ) | |
| Defendants. | ) | |

TELEPHONIC CONFERENCE RE: DISCOVERY DISPUTE

BEFORE THE HONORABLE KAREN L. STEVENSON,
UNITED STATES MAGISTRATE JUDGE

<u>APPEARANCES:</u>          SEE PAGE 2


Court Reporter:          Recorded; XTR

Courtroom Deputy:        Roxanne Horan Walker

Law Clerks:              Emily Barbour / William Terrell

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 18668
                         Corpus Christi, TX 78480-8668
                         361 949-2988




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

<u>**APPEARANCES FOR:**</u>

Plaintiff:                          KIRK M. HALLAM, ESQ.
                                    Hallam & Hoffman
                                    201 Santa Monica Blvd., Suite 300
                                    Santa Monica, CA 90401

Defendants:                         ERIK P. BELT, ESQ.
                                    WYLEY S. PROCTOR, ESQ.
                                    THOMAS F. FOLEY, ESQ.
                                    McCarter & English
                                    265 Franklin St.
                                    Boston, MA 02110

                                    KEVIN J. ABBOTT, ESQ.
                                    Lobb & Plewe
                                    4160 Temescal Canyon Rd., Suite 202
                                    Corona, CA 92883

1          **Los Angeles, California; Tuesday, April 10, 2018**

2                      **(Telephonic Hearing)**

3                       **(Call to Order)**

4          **THE CLERK:**  Calling Case Number CV-16-8962-CAS(KSx),

5  *MASS versus Kristopher Hughes, et al.*

6          Counsel, please make your telephonic appearances, for

7  the record.

8          **MR. BELT:**  Thank you.  Good afternoon, your Honor.

9  This is Eric Belt of McCarter and English in Boston.  I

10  represent PcVue and Ed Nugent.  With me today are Wyley Proctor

11  and Tom Foley.

12          **THE COURT:**  Good afternoon, Mr. Belt, Ms. Proctor,

13  and Mr. Foley.

14          **MR. BELT:**  Thank you.

15          **MR. ABBOTT:**  Good afternoon, your Honor.  This is

16  Kevin Abbott for the InformaTrac defendants, Hughes,

17  Huysentruyt, and InformaTrac.

18          **THE COURT:**  Good afternoon to you, Mr. Abbott.

19          Now for the plaintiff?

20          **MR. HALLAM:**  Kirk Hallam and Jun Kwon, your Honor.

21          **THE COURT:**  Good afternoon, Mr. Hallam.  How do you

22  spell Mr. Kwon's last -- first and last name?

23          **MR. HALLAM:**  First name is J-U-N; last name K-W-O-N.

24          **THE COURT:**  Great.  Thank you very much.

25          All right.  This telephonic conference is convened in

4

1   response to the flurry of emails, voicemails, requests to be

2   called back that my courtroom deputy received yesterday,

3   particularly from the defendants, and in light of the fact that

4   they seemed to have been unable to raise Mr. Hallam yesterday

5   until late in the afternoon, at which point he informed the

6   Court that he was quite busy opposing the motion to dismiss and

7   just didn't have time to meet and confer.  So, here we are.

8   And, as far as I understand it, Judge Snyder's order that

9   discovery concludes effective Thursday, April the 12th, remains

10  in place.

11          Is that correct, Mr. Belt?

12          **MR. BELT:**  That is correct, your Honor, and that's

13  part of the reason for the fire drill, which I apologize for,

14  and I will take the blame for that.

15          **THE COURT:**  That's -- it is what it is; the time that

16  we have, we're all here now.  Here's where we stand.  The Court

17  understands that in light -- following on from Mr. Laykin's

18  deposition, which had been previously set for Thursday, the

19  5th, and the Court ordered that it go ahead as scheduled,

20  subject to my ruling on the motion to compel, it could be,

21  which everyone should have received by now.

22          Do you have that, Mr. Belt and team?

23          **MR. BELT:**  Yeah, we received it on -- on, I believe

24  it was --

25          **MS. SPEAKER:**  (indiscernible)

1          **MR. BELT:**  -- April 4th.

2          **THE COURT:**  Yes.  Yes.  The day before.  And, then,

3    on -- Mr. Hallam and Mr. Kwon, you also received the Court's

4    order on the motion to compel?

5          **MR. HALLAM:**  Yes, we did, your Honor.

6          **THE COURT:**  Okay.  Great.

7          Well, following on from that deposition, the

8    defendants have a number of concerns regarding Mr. Laykin's

9    qualifications to even review the source code that was made

10   available to him.  They have expressed concerns regarding

11   whether or not Mr. Laykin has violated the protective order by

12   showing defendants' confidential -- highly confidential source

13   code to members of his team, as it were, and then they -- in

14   light of his -- Mr. Laykin's self-professed lack of ability --

15   statement that he's not a programmer and that he is -- seems --

16   seems, from the portions of this testimony, the limited

17   portions of testimony that the Court has been provided with,

18   that he is -- may not be familiar with some of the programming

19   languages that are necessary to review that.  The defendants

20   also have raised an issue of whether or not -- seek sanctions

21   against plaintiffs, who are having forced everyone to engage in

22   multiple rounds of what defendants contend are frivolous motion

23   practice in light of Mr. Laykin's apparent lack of

24   qualifications to do what he has purportedly been hired to do.

25          That is a very high-level generalization of the

6

1    disputes that have been presented to the Court at this point.

2    Let me go through a few things here as a overview, and then I

3    will, of course, as I always am inclined to do, hear from all

4    of the parties.

5            First of all, to the extent -- let me start at the

6    most basic issue.  To the extent that the defendants' argument

7    is that Mr. Laykin is not qualified to do what he was hired to

8    do, then the remedy for that would be to move to strike him as

9    an expert, but that would need to be done before Judge Snyder.

10   That is not -- that is not, per se, a discovery issue.  If

11   he's -- I mean, the defendants are -- the plaintiffs are

12   entitled to identify whomever they like as their expert, and

13   apparently we had this conversation before, that Mr. Laykin had

14   gone through the necessary procedures and had been vetted under

15   the procedures of the protective order to qualify.  If he, in

16   fact, lacks the substantive qualifications, then, too bad, so

17   sad for plaintiffs.  That's not necessarily a discovery issue.

18   That is a substantive merits issue that would be the subject of

19   a -- a motion to strike him as an expert before Judge Snyder or

20   more close to trial clearly would be motion in limine if he,

21   you know, has no -- has no ability under Rule 702 to bring --

22   he has no specialized skill or expertise that would be

23   assistive of the jury with respect to source code because, by

24   his own admission, he's not a programmer, couldn't identify the

25   languages, et cetera, et cetera.  I'm sure the defense team

7

1    is -- is highly capable of bringing a much more articulate and

2    pointed challenge to his qualifications than the Court can on

3    this call.  So, that's the first issue.

4         Secondly -- so, there is no issue regarding his

5    qualifications to be brought before this Court even if there

6    were time.  Violations of the protective order, it's not

7    clear -- the fact that Mr. Laykin has said that members of his

8    team reviewed Dr. Plock's reports, the Court can't tell from

9    that statement that it is suggested that there may, indeed, be

10   a violation of the protective order based on that conduct,

11   and -- but without more, the Court certainly couldn't make a

12   decision about that, and that simply is not an emergency of a

13   nature that the Court can even -- can order briefing on between

14   now and the 12th of April, when Judge Snyder has said all --

15   all discovery, including expert discovery, will close, and that

16   she's not inclined to give any further discussions -- any

17   further extensions of the scheduling order in this case.

18        Further, and I'm sure much to everybody's chagrin on

19   the phone here, this Court is dark from tomorrow until the 13th

20   of April.  I know you find it hard to believe that anything

21   else could be going on besides this litigation, but that, in

22   fact, is the case.  So, there is no capacity for this Court to

23   adjudicate this, get any of these issues, which the Court is

24   not -- I'm not dismissing the issues; but I'm simply saying

25   there is no ability or capacity to address these issues in any

8

1    kind of fulsome briefing which would be required on an

2    emergency basis here on the 10th of April when discovery closes

3    on the 12th and I will be on a plane in about three hours.

4            So, that's -- that's -- that's where we stand.  If

5    someone needs to bring an ex parte motion one way or the other,

6    I think all of that would have to be done before Judge Snyder

7    at this point, because there is simply no time or capacity for

8    this Court to address all of the issues that are being raised

9    by the defendants here following Mr. Laykin's deposition on the

10   5th, and I acknowledge that you folks reached out to the Court

11   promptly following -- at the -- following -- immediately

12   following the conclusion of that deposition to raise these

13   issues, but we still find ourselves where we are in terms of --

14   of time.

15           Mr. Belt, you seem to be leading the charge for the

16   defendants.  Would you like to be heard?

17           **MR. BELT:**  Thank you, your Honor.

18           So, just -- there are a few nuances here, and I just

19   want to make a -- make sure to make a record of it.  I

20   understand where you're headed with all this.  It's really not

21   so much a motion to exclude.  In fact, we will move to exclude

22   in front of Judge Snyder.  The issue is as follows.  It's

23   really violations of the protective order.  And --

24           **THE COURT:**  Understood.

25           **MR. BELT:**  -- and it goes like this.  And as you've

1   acknowledged, the first violation is Mr. Laykin in his

2   deposition admitted that members of his team had received the

3   expert reports of Dr. Cory Plock, who is the defendant's

4   expert.  Those expert reports were marked highly confidential

5   source code, because, as you would expect, they contain

6   detailed descriptions of the InformaTrac source code, and, in

7   fact, not just descriptions of the code, but portions of the

8   code are pasted into those reports, and under the protective

9   order, the only people who may see those reports are, of

10  course, the outside counsel of record, the Court, of course,

11  and the experts who are designated --

12          **THE COURT:**  Right.

13          **MR. BELT:**  -- and --

14          **THE COURT:**  And that is (indiscernible)

15          **MR. BELT:**  -- properly vetted.

16          **THE COURT:**  And properly vetted under the procedures

17  of the protective order.  Correct.

18          **MR. BELT:**  Exactly right.  And it doesn't extend to

19  members of the team or employees of the expert.  Each

20  individual who's going to review the highly confidential

21  information needs to go through the procedures, and that hasn't

22  happened, so -- so, that -- that was our -- our first concern

23  and -- and that we wanted to bring to the Court's attention,

24  and it's troubling to defendants, of course, that -- that their

25  highly confidential information may have been compromised in

1  that way.

2      But it also points to a second issue, which is that,

3  you know, as you know, for the last 10 weeks or so, dating back

4  to early February, we've been in front of this Court virtually

5  every week or every other week with these motions.

6      **THE COURT:**  Yep, you're my frequent (indiscernible)

7  litigants.

8      **MR. BELT:**  And -- that is -- that is true.  And, you

9  know, we -- you know, it's not our aim, obviously, to, you

10  know, bother the Court for so much -- and take up so much of

11  your time, but, you know, the issue here is that it's not --

12  it's partly related to the fact that Mr. Laykin admits that he

13  cannot interpret the source code without the help of people

14  under his employ, his team members.  He admitted that in -- in

15  his deposition.

16      **THE COURT:**  Right.

17      **MR. BELT:**  Why that's important, your Honor, is

18  because you ordered that Mr. Laykin, and only Mr. Laykin, could

19  review the code.  You first said that he could come by close of

20  business on Friday, March 9th.  And instead, as you know,

21  Mr. Laykin didn't show up, and we got the bait and switch where

22  Mr. Kwon tried to come in and inspect the code instead.

23      **THE COURT:**  Right; and I said he couldn't do that

24  because he was not one of the people who had been properly

25  vetted as an expert under the protective order.

1      **MR. BELT:**  Exactly right.  And then -- but in order

2   to even get to that point, we went through, of course, a lot of

3   time and expense that cost my -- my clients a lot of money and

4   so forth, and this Court a lot of time in getting to that

5   point.  And then you said, well, he gets another chance,

6   Mr. Laykin, and can come on Thursday, the 29th, and Friday, the

7   30th, of March.  And, as you know from the briefing last

8   week --

9            **THE COURT:**  Right.

10           **MR. BELT:**  -- he didn't show up until 5:00 o'clock on

11  that Thursday and stayed only until 3:00 o'clock on that

12  Friday, using only eight hours of the 21 or so allotted hours.

13  And why that's important, your Honor, is because he admitted in

14  his deposition that he wasn't absolutely reviewing the code,

15  which is important for a reason I'll get to in a second, but

16  was really just searching for a list of files and keywords so

17  that he could request the printouts for a later inspection of

18  the code by his team.  And why that's important, your Honor, is

19  because the protective order specifically provides --

20           **THE COURT:**  Understood.  But you can't remove --

21           **MR. BELT:**  -- that the inspection of the code --

22           **THE COURT:**  -- you can't remove the code; you have to

23  identify the code there, just as your expert did, identify --

24  review the code in person, on line, real time, and merely

25  identify those portions of the code by -- as your expert did --

1  that may need to be copied as, you know, representative

2  samplings.  That's very --

3        **MR. BELT:**  Right.

4        **THE COURT:**  -- clear in the protective order, and

5  that was part of my order.

6        There is another issue implicated here, Mr. Belt, and

7  that is that -- related to the sequencing.  And the other

8  reason why, not just because of time, this may be an issue for

9  Judge Snyder to review in a fulsome manner, is because there

10  was an ex parte application before Judge Snyder to extend the

11  discovery cutoff for the sole purpose of giving plaintiffs

12  access to conduct that second-chance inspection because it

13  hadn't happened the first time.

14        **MR. BELT:**  Yes.  And that's - that's -- that's --

15  that's actually a really, really good point, your Honor, is

16  that the -- the inspection of the code may be violating not

17  just your orders in the protective order, but Judge Snyder's

18  order, as well.  So --

19        Well, those are -- those are our concerns.

20        **THE COURT:**  Understood.

21        **MR. BELT:**  And we feel that this whole process has

22  really been a wild goose chase, and -- and -- and that really

23  is -- is a concern. So, I mean, what we were going to ask you

24  for is, given all of this, we would -- we would ask for an

25  order, in addition to  not only attorneys' fees, but we would

1  ask for an order that Mr. Laykin is not allowed to issue any

2  further reports.  He's already issued four reports in this

3  case, and because any further reports would necessarily -- that

4  concerns the source code would necessarily violate the

5  protective order because he's admitted that he can't review the

6  code, and -- and to do so he would have to violate the

7  protective order by showing it to other people.  So, that's --

8  that's really the -- the issue here.

9          **THE COURT:**  All right.  Thank you, Mr. Belt.

10          Anything else from anyone on the defense team before

11  I turn to Mr. Hallam and Mr. Kwon?

12          **MR. ABBOTT:**  This is Kevin Abbott, your Honor.  I --

13  I think Mr. Belt summed it up pretty well.  I don't really have

14  anything further to add.

15          **THE COURT:**  All right.  Thank you.

16          Ms. Proctor?

17          **MS. PROCTOR:**  Nothing, your Honor.

18          **THE COURT:**  All right.

19          Mr. Foley?

20          **MR. FOLEY:**  Nothing, your Honor.  Thank you.

21          **THE COURT:**  All right.  Thank you.

22          Mr. Hallam, would you like to address the Court?  It

23  seems that--

24          **MR. HALLAM:**  Yes, your Honor.

25          **THE COURT:**  -- the relief that's being requested now,

14

1    in light of the shortness of time that's -- that's available,

2    the defendants are asking the Court for an order prohibiting

3    Mr. Laykin from providing any further expert report in these

4    closing hours of expert discovery because of his admitted lack

5    of ability to do the analysis himself and that, to the extent

6    he gives it to anybody on his team, who has not been vetted

7    under the procedures of the protective order, that would be a

8    clear violation of the parties' stipulated protective order.

9           Go ahead, sir.

10          **MR. HALLAM:**  Yes, your Honor.  There are several

11   parts to that, obviously.  Let me just start by making the

12   observation that I am the only one on the telephone who was in

13   Mr. Laykin's deposition last Thursday as the Court ordered.

14   Mr. Belt was not there, Ms. Proctor was not there, Mr. Abbott

15   was not there, and Mr. Foley was not there.  And I have a

16   different memory of what Mr. Laykin said in his deposition, and

17   I want to make it abundantly clear that Mr. Laykin did not say

18   that he -- he gave or exposed the source code to anyone else in

19   his office or otherwise.  And what Mr. Laykin said, to my

20   memory, was that he had conversations with people in his -- in

21   his firm, which is Duff and Phelps, regarding Mr. Plock's

22   reports.  And that is the basis, it seems to me the sole basis,

23   for their request that the Court order that Mr. Laykin not be

24   allowed to submit any supplemental reports.  Well, that order

25   would be in direct conflict with FRCP 26, and I don't remember

1    the subpart, that it specifically says that experts not only

2    may supplement their reports all the way up to the time of the

3    pretrial conference, but they're obligated to, your Honor.  So,

4    it would put -- it would put -- that order would put the expert

5    and the Court's order in direct conflict with that provision of

6    the Federal Rules of Civil Procedure.  Nor do I think that it

7    is warranted in this case by -- by any stretch.  But, frankly,

8    I think it would hurt -- it would hurt defendants and their

9    counsel more than it would hurt the plaintiff because we're --

10   the expert is not limited at the time of trial to what -- what

11   is in a report, that reports are not admissible evidence, it's

12   the expert's testimony.  So,

13        **THE COURT:**  Well, hold on, Mr. Hallam.  Hold on.

14   You're going a little fast here; because while the expert

15   report may not be the delimiter for purposes of trial, the

16   expert can't come up with new opinions at trial.  The expert is

17   going to be held to those opinions to which -- that have been

18   disclosed to the other side.  He's not going to come up with

19   brand new opinions.  That's not how this works.

20        **MR. HALLAM:**  No, your Honor.  I understand that.  But

21   the reason why the Federal Rules of Civil Procedure 26 requires

22   that the expert supplement their reports up until the time of

23   the pretrial conference, in the event that they come into

24   possession of information they did not have at the time of

25   their prior report, is for the obvious reasons that it is -- it

1    is in the interests, not only of opposing counsel and opposing

2    party, but the Court, that -- that that expert supplement his

3    or her report and that all of the information that the expert

4    has had and the opinions they derive from that up to the time

5    of the pretrial conference is contained in or analyzed in their

6    report.

7              And Mr. -- Mr. Laykin was given 1,000 pages late

8    Friday afternoon, and Mr. Laykin is reviewing that, those 1,000

9    pages, as we speak, and I fully expect that Mr. Laykin will

10   have -- not necessarily different opinions, but more refined

11   opinions.  I think that's the whole point of the requirement

12   that the source code be provided for inspection and the point

13   of having the printed copies made available to the expert so

14   that they can further analyze the source code.  Otherwise, I

15   don't know what the purpose of the printed copies in the

16   possession of the expert is.  And the --

17             **THE COURT:**  Well, hold on.

18             **MR. HALLAM:**  (indiscernible)

19             **THE COURT:**  Hold on, Mr. Hallam.  Hold on,

20   Mr. Hallam.  I appreciate your argument regarding the tension

21   between Rule 26's obligations for further -- that permit

22   further discovery up to the -- of expert opinions up to the

23   time of the pretrial conference and the request here for an

24   order prohibiting Mr. Laykin from providing any further -- any

25   further supplemental report in light of the testimony he's

1  given previously and in light of his representations that he

2  would need to have members of his team conduct some of that

3  review.  However, I believe defendants' request is in the

4  fashion of a request for sanctions.  And the Court certainly

5  has the ability to fashion sanctions and remedial measures,

6  notwithstanding such -- the broad opportunities to provide

7  opinions under Rule 26.  Rule 26(b) allows for broad discovery;

8  any claims, you know, relevant to the claims and defenses in

9  the action are proportional to the -- to the needs of a case.

10 That doesn't mean a court can't issue sanctions.  That doesn't

11 mean a court can't -- which has broad authority over

12 discovery -- can't fashion discovery in a -- in a manner in

13 which to meet the needs of the case and to fulfill its

14 obligations under Rule 1, which is to construe the rule, and

15 that is an obligation of the parties and the Court to

16 administer the just (indiscernible) and cost-effective

17 resolution of all cases.  So, while I hear the argument that

18 you're making, I think there is plenty of authority, precedent,

19 and -- and -- and the rules themselves certainly do not

20 contemplate no capacity for the Court to fashion a remedy, a

21 discovery remedy, even in the form of a sanction or -- or -- or

22 otherwise, that addresses abusive discovery behavior.

23         **MR. HALLAM:**  I certainly don't want to suggest, your

24 Honor, that you do not have the power to -- to issue sanctions

25 and to tailor those sanctions to any violation of the

1    protective order that you may find has occurred.  Obviously, we

2    would -- we would urge that the Court cannot do that, or should

3    not do that, at the very least, without a full record, and --

4    and we don't even have the deposition transcript to know what

5    it is that Mr. Laykin said.  But I -- I do believe, your Honor,

6    though, that -- that were the Court to order that Mr. Laykin

7    cannot, as the Federal Rules of Civil Procedure require him to,

8    supplement his report up to the time of the pretrial

9    conference, I think it would have the effect of granting the

10   defendant's *Daubert* motion, which is the motion that they're

11   suggesting that they are going to be filing with Judge Snyder,

12   and I -- I would just comment that we had a -- we had a

13   telephone conference with Judge Snyder a few weeks back, and it

14   related to our settlement -- status of our settlement

15   discussions.  And various things were brought up by both sides

16   in that telephone conference, and -- and one of the things that

17   I brought up on behalf of plaintiff was that we intended to

18   bring a *Daubert* motion to exclude the testimony of Dr. Plock,

19   defendant's expert, on various grounds that include his failure

20   to review six of the seven versions of the source code that are

21   the subject of our lawsuit and our claimed infringements, and

22   Judge Snyder commented quite candidly that we certainly should

23   bring those motions if we think they're appropriate, but she is

24   very reluctant to grant *Daubert* motions because they have the

25   effect of, in most cases, she felt, of taking away from the

1  jury its right to make factual determinations on issues of

2  similarity for which they need the expert testimony.  So, I

3  would just simply say that, while I do not doubt or question

4  for a second the authority that your Honor has to issue

5  sanctions, I don't think this is an appropriate sanction, the

6  one that defendants have asked for in the context of expert

7  reports and in the context of this case.

8         I would like to briefly address the issue of whether

9  there was a violation of the protective order at all.

10         **THE COURT:**  Okay. Mr. Hallam, hold on just a second.

11  I appreciate that.  Thank you for the -- the first part of your

12  argument.  Before you move on to the second issue, you don't

13  have the transcript; I don't have the transcript of his

14  deposition; all I have is a snippet that appears to be a quote,

15  because I want you to have the advantage of seeing what I have

16  in front of me, which I believe you were copied on these emails

17  yesterday.  There is a quote.  Quote:  "There are members of my

18  team who reviewed Dr. Plock's report."  And this apparently

19  from the transcript at page 88, line 25 through 89-5, and there

20  is apparently quoted a portion cited here at page 90, line 20,

21  through 91, line nine, where, I guess, the gist of the

22  testimony is that a member of Dr. Plock's team read both

23  opening and rebuttal reports.  That may be an error; that may

24  be -- I'm not sure.  That's what's -- that's what's printed on

25  the email that I received, so at least someone believes there

1    was testimony to that effect at the Laykin deposition on the

2    5th.  And I share that with you not because that's a

3    dispositive rule, but to let you know that I am looking at

4    quotes -- at purported quotes from the trial transcript -- from

5    the depo transcript.

6              Go ahead.

7              **MR. HALLAM:**  Yes, your Honor.  And I do -- I do

8    remember that testimony, and I also remember -- although I am

9    getting old enough that I can honestly and candidly admit I

10   don't remember everything that was said in his deposition --

11   but I -- I --

12             **THE COURT:**  That's why we have transcripts.

13             **MR. HALLAM:**  Yes, that's why we have transcripts.

14   I -- my memory is that Mr. Laykin subsequently explained or

15   amplified upon that testimony and said he wasn't sure if

16   anybody actually read the reports; he knows that he had some

17   conversations with them about the reports.  But those reports,

18   he also commented -- testified, they're -- there were four

19   reports, and only one of those reports contains any source code

20   whatsoever.  The other three do not, according to Mr. Laykin,

21   and I haven't studied them myself, and I'm not sure I'd really

22   be able to know what's source code and what's not, but the only

23   one that had any source code on it whatsoever was the first

24   report, and it has a grand total of four lines of code out of

25   over a million lines of code, according to the defendants,

1    that -- that both Dr. Plock and Mr. Laykin were provided with.

2    So, if -- if ever there was what is commonly referred to as a

3    de minimis potential violation of the protective order -- and I

4    say potential because there is a reading of the protective

5    order that -- that seems to contemplate someone other than a

6    designated expert having some limited degree of contact with

7    the -- the highly confidential matters, and in this case we're

8    really talking about reports, not source code -- but if ever

9    there was a de minimis situation, this seems to me to be it.  I

10   mean, we really have to be somewhat realistic and pragmatic in

11   the context of applying a protective order to a very complex

12   situation involving millions of lines of source code and --

13             **THE COURT:**  Mr. --

14             **MR. HALLAM:**  -- and --

15             **THE COURT:**  Mr. -- I've got -- that is a -- an

16   eloquent and, you know, interesting argument that you're

17   making, but you signed on to the protective order.  All the

18   parties -- this is the parties' stipulated protective order.

19   It covers all highly confidential information.  If you wanted

20   to have a more nuanced analysis or provision for de minimis

21   exceptions to that highly confidential designation, we're way

22   past that now.  That should have been part of the negotiation

23   when the protective order was entered.  The protective order is

24   a binding document on all the parties, and it is -- it's not --

25   it's not analyzed in this kind of subjective manner.  It is

1    analyzed based on the four corners of a document expressing the

2    intent of the parties.  So, you know, whether it's two lines of

3    source code or 20,000 lines of source code, any portion of

4    highly confidential information has to be handled pursuant to

5    the way the protective order has spelled it out.  And, you

6    know, after the fact, you know -- you know, now that, you know,

7    the barn door is open, and arguing, well, actually, we have a

8    more subtle analysis here because this is a highly complex

9    case, that -- the Court is not finding that argument

10   persuasive.  I hear you making it, and I know why you're making

11   it, but -- but I am not finding it very persuasive in light of

12   the months and months and months of work that's been undertaken

13   by all sides in this case to get to this point and get this

14   case ready for trial.  And, honestly, Mr. Hallam, you know, if

15   my memory is any better than yours -- and that may not be the

16   case; I swear to you -- I recall you raising the source code

17   issue at the very first time I met you folks, shortly after the

18   complaint in this case was filed.  So, the handling of source

19   code, access to source code, analysis of source code has been

20   at the heart of this case from the very inception.  That's no

21   secret.

22          **MR. HALLAM:**  Your Honor, I would agree.  And -- and

23   for both sides, the expert reports were apparently not

24   considered to be or, to the extent anyone really thought about

25   it, were -- were not treated in the same way as source code.

1   Again, I would emphasize; this is not source code we're talking

2   about.  This is Dr. Plock's report.  And -- and I would make my

3   point by -- by making the following observation:  That when

4   defendants designated Dr. Plock on November 17th of 2017,

5   they -- as the protective order requires, paragraph 7.4 --

6   disclosed his identity and provided his C.V. and also, as the

7   protective order requires, identified the categories of highly

8   confidential information to which Dr. Plock was -- was

9   anticipated to have access.  And there is a list of things:

10  installation notes, spreadsheets, report (indiscernible) --

11          **THE COURT:**  Understood.  What is the point here of

12  this argument?  Where are you going with this?

13          **MR. HALLAM:**  I'm coming to -- I'm coming to it, your

14  Honor, and I apologize --

15          **THE COURT:**  Get to it.  Get to it.

16          **MR. HALLAM:**  Nowhere --

17          **THE COURT:**  I don't need that list.

18          **MR. HALLAM:**  Nowhere --

19          **THE COURT:**  Go ahead.  Get to the issue.

20          **MR. HALLAM:**  No -- nowhere on Dr. Plock's designation

21  authored by defense counsel is there a identification of

22  Mr. Laykin, or our expert's reports, which are marked highly

23  confidential.  And, so, if -- if -- if one is to be hyper

24  technical about the interpretation of the protective order, as

25  I understand defendants are seeking to be, well, they're in

24

```
1  violation; Dr. Plock is in clear violation of the terms of the
2  protective order, and (indiscernible) --
3          THE COURT:  Well, yes, but you know what?  You know
4  what, Mr. Hallam?  Even if you're right, because you didn't
5  participate in the meet-and-confer leading up to this call, you
6  didn't have any input into getting ready for this call, that
7  issue, even if you're right, is not on the table today.  I'm
8  not going to deal with a whole new issue of you telling -- you
9  saying that they've now violated the protective order.  You
10 didn't raise it.  It's not before me.  Nobody raised that
11 issue, and I -- that's why I asked for a joint submission prior
12 to these telephonic conferences.  You had nothing to say
13 yesterday.  You cannot raise this brand new issue this
14 afternoon on this call now asserting that they violated the
15 protective order.  Should have chipped that in --
16         MR. HALLAM:  Well --
17         THE COURT:  -- when we were getting ready for this
18 call.
19         MR. HALLAM:  Your Honor --
20         MR. SPEAKER:  Your Honor --
21         MR. HALLAM:  I --
22         THE COURT:  Hold on.
23         MR. HALLAM:  Please.  Please.  I really need to
24 respond to that, your Honor.
25         First of all -- and it may not matter to -- in the --
```

1    in the global sense or to the judicial system, but I worked

2    till midnight on Friday on a federal court case.  I worked all

3    weekend long, and I worked till midnight last night, and we got

4    our opposition to the defendant's motion to dismiss filed at

5    exactly midnight.  So, I'm probably going to be criticized

6    because I'm a second late.  But I can't work any harder, your

7    Honor, and I was not avoiding them in any way, shape, or form.

8    They have eight lawyers now on this case, and I received from

9    three different lawyers requests to meet and confer yesterday

10   on a variety of things, and this is only one of them.  If I had

11   taken the time to meet and confer with them on each and every

12   one of them, I would have been so far late on my opposition to

13   the motion to dismiss, and I -- I just don't know what else to

14   say about that.

15          But my -- my point in bringing up the defendants'

16   apparent interpretation of the protective order to enable them

17   to show expert reports to Dr. Plock, even though that was not

18   identified in his designation, is that they -- they -- they

19   don't interpret the agreement any differently than we do, and

20   there is language in paragraph 7.3(d) of the protective order

21   that enables Mr. Laykin or anyone else who is in receipt of --

22   of highly confidential documents -- and, again, it's not source

23   code we're talking about; it's Dr. Plock's report -- to -- to

24   show them to professional jury and trial consultants and

25   professional vendors doing disclosure is reasonably necessary

1  for this litigation.  And, you know, do I think that's what

2  Mr. Laykin was doing?  No, I -- I doubt it.  I don't think he

3  read this thing that carefully to -- to make that observation.

4  But I make the observation because this document has to be read

5  in a way that -- that is consistent with the vagaries of --

6  of -- of life and human behavior.  And there is definitely

7  language which one can rely on to say that Mr. Laykin, whether

8  he showed them the report or he discussed the report with them,

9  which is what I remember him clarifying, was not in violation

10  of the protective order then, so, there are no sanctions that

11  would be warranted, much less the draconian sanctions that the

12  defendants have suggested, which I think run counter to -- to

13  Judge Snyder's sentiment about *Daubert* motions and to the

14  interest of the judicial system in general.

15          **THE COURT:**  All right.  Thank you, Mr. -- Mr. Hallam.

16          Mr. Belt, briefly, please; do not repeat any

17  arguments.  Do you want to respond?  And then the Court will

18  offer its comments at this point.  Very briefly.

19          **MR. BELT:**  Thank you, your Honor.

20          I have the transcript right in front of me, so we

21  don't have to rely on memory.  Page 90, lines 24 to 25.  The

22  witness, quote:  "Members of my team read Dr. Plock's report,"

23  unquote.  There you have it, your Honor.  I can send that to

24  you within 10 minutes after we get off this call.

25          **MR. HALLAM:**  (indiscernible)

1          **MR. BELT:**  And one --

2          **THE COURT:**  Hold on.  It sounds like Mr. Hallam needs

3   the transcript.  I have that quote in the email that I was

4   provided yesterday.  So, I -- I don't need the transcript of

5   the deposition.

6          Go ahead, Mr. Belt.

7          **MR. BELT:**  Thank you, your Honor.

8          The -- the issue with respect to the alleged

9   violation of protective order by our expert, we've had a meet-

10  and-confer with Mr. Hallam about that way back in February, and

11  we've stipulated that that -- that objection was made.  So, I'm

12  surprised that Mr. Hallam is raising that now, because we have

13  a signed stipulation.  And, in fact, I said to Mr. Hallam, nah,

14  we don't really need a signed stipulation on that, and he

15  insisted.  So, he -- he wrote one up, he signed it, I signed

16  it; that issue is a dead issue.  And that's all I have to say,

17  your Honor.

18          **THE COURT:**  All right.  Thank you.

19          **MR. SPEAKER:**  Your Honor --

20          **MR. SPEAKER:**  (indiscernible)

21          **THE COURT:**  Hold -- hold -- hold on.  Is there is

22  someone else from the defense who wishes to be heard?

23          **MR. ABBOTT:**  Yes.  This is Kevin Abbott for the

24  InformaTrac defendants.  I have some brief comments to make.

25          **THE COURT:**  Go ahead, Mr. Abbott.

28

1          **MR. ABBOTT:**  So, with respect to the question of the

2    expert reports, I wanted to add something, which is that under

3    Rule 37 they can only add to their report if there is

4    substantial justification for doing so.  What I'm hearing from

5    Mr. Hallam confirms what we've already known, which is that the

6    inspection that happened last week and the documents that we

7    printed out at his request were not for the purposes of making

8    exhibits but, rather, were for the purpose of conducting the

9    review of the source code in the first instance.  So, I think

10   between what Rule 37 proffers in terms of there needs to be

11   substantial justification for a late disclosure, combined with

12   what we're all hearing today, which is Mr. Laykin is -- and,

13   you know, hopefully not his team -- but hopefully just

14   Mr. Laykin is hard at work finding out his opinions based on

15   the printouts that we've presented, I think it's entirely

16   appropriate to prevent any further report from Mr. Laykin with

17   respect to the source code.  And in that context, the report

18   date, his final report date, which this Court ordered, was

19   after his in-person inspection.  So, he had the opportunity to

20   conduct that inspection, come up with any conclusions that he

21   needed to make.  If he's now trying to create them by looking

22   at the source code, which is not meant to be for -- the

23   printouts, for that purpose, under the protective order, I

24   think that's wholly inappropriate, and it would be appropriate

25   to sanction with respect to the providing of further reports.

1          The only other thing I would add is that Mr. Hallam

2    has associated in a completely separate law firm, including

3    Mr. Kwon.  So, I just don't find it very convincing that -- the

4    time issues that he brought up.  But those are all the comments

5    I want to make, your Honor.

6          **THE COURT:**  All right.  Thank you.

7          Thank you, all parties.  As usual, there -- there are

8    fulsome and important issues being raised by all parties.

9    Here's where the Court stands on this issue.

10          First of all, the Court is not inclined to enter any

11    sanctions, particularly that are -- have any kind of

12    potentially dispositive effect with respect to evidence to be

13    presented at trial, without full briefing for which, even if it

14    is discovery related, meaning related to the stipulated

15    protective order, in light of the very short time in which is

16    available left in the discovery period.  To the extent the

17    parties have objections regarding the propriety of any reports

18    presented by either expert, that should rightly be raised

19    before Judge Snyder, and the Court is not in a position now to

20    make any further discovery-related rulings in this matter.

21          I fully understand the frustration of the defendants

22    with regard to, you know, whether Mr. Hallam -- Mr. Laykin has

23    properly used or misused materials related to the Plock report,

24    but Mr. Hallam makes an argument that somehow that's permitted

25    under various portions of the protective order or is somehow

1   contemplated under the protective order.  That is not a

2   determination that the Court can make here, and the Court is

3   not inclined, as I have indicated, to enter any kind of

4   sanctions, monetary, substantive, discovery-related, or

5   otherwise, without the opportunity for all parties to have a

6   full briefing.  While I've appreciated the conversation we've

7   had and -- and the various factual elements that the parties

8   have presented to the Court, the Court is simply not going to

9   make a determination about an issue of this significance based

10  on an informal phone call, and we are out of time to conduct

11  any kind of proper briefing under Judge Snyder's current

12  scheduling order.  If at some later date Judge Snyder reopens

13  the discovery in any way or grants any party any kind of

14  ex parte relief with respect to any of these issues and refers

15  those matters back to me, I would, of course, stand ready,

16  willing, and able to assist any and all of the parties moving

17  forward per her direction.  But that is simply not -- relief

18  that is not relative -- readily available here at this point in

19  time.

20        Anything further, Mr. Hallam?

21        **MR. HALLAM:**  Oh, yes, your Honor.  And I apologize,

22  but there are a couple of points that I needed to make

23  (indiscernible) --

24        **THE COURT:**  Mr. Hallam, did you hear me?  I'm not

25  going to make any substantive rulings today on -- in your

1    discovery against them, for them, with them, around them, or

2    about them.  Bring it to Judge Snyder.

3            **MR. HALLAM:**  I understand, your Honor.  I -- the

4    reason that I was going to, and I will not make the comments,

5    is because defendant's --

6            **THE COURT:**  Then --

7            **MR. HALLAM:**  -- counsel has -- has previously used

8    transcripts of your mediation in motions filed before Judge

9    Snyder.  So, to the extent that they (indiscernible) --

10           **THE COURT:**  You can, too.

11           **MR. HALLAM:**  -- and I haven't rebutted them --

12           **THE COURT:**  You can, too.

13           **MR. HALLAM:**  Yes; but I haven't had a chance to rebut

14   them.  But that's -- that's fine, your Honor.  I -- I -- I

15   think I've stated it now for the -- for the transcript, that I

16   didn't have an opportunity or I don't need to take that

17   opportunity now and take everyone's time, and I apologize.

18           **THE COURT:**  Mr. Belt or Mr. Abbott?

19           **MR. BELT:**  Yes, this is Mr. Belt, your Honor.  Your

20   last order specified that with respect to the printouts, if

21   Mr. Laykin were going to issue another report, we would get the

22   chance to reopen the deposition that we conducted last Thursday

23   to drill him further or to question him about any supplemental

24   report he had.  Now, my concern is --

25           **THE COURT:**  But it has -- but my --

1          **MR. BELT:** -- as you can imagine --

2          **THE COURT:** But my order also says it had to get done

3     by the 12th.

4          **MR. BELT:** Right; and that's my -- that's -- that's

5     my concern is -- is that Dr. Plock's deposition is going to be

6     on the 12th.  Today is the 10th.  We haven't seen any further

7     report yet based on the printout, so I -- I don't know when we

8     would get the chance to depose Mr. Laykin even if he did give

9     another expert supplemental report.

10         **THE COURT:** I understand your concern, and I have no

11    jurisdiction to authorize you to take that deposition after the

12    12th.

13         **MR. BELT:** Well, your Honor, the -- the -- and I

14    understand that.  That's why I'm asking, if there is going to

15    be an expert report, we need to know now so that we can plan

16    for that.  In other words, set a time limit on it, or whatever,

17    have it by the end of the day today, so that we can depose him,

18    even if by phone, tomorrow on it.

19         **MR. HALLAM:** But -- but --

20         **THE COURT:** Hold on.

21         **MR. HALLAM:** There is no obligation --

22         **THE COURT:** Hold on.  Hold on.  I think this is a

23    discussion you need to have with Mr. Hallam.  I can't -- I

24    don't know what their intentions are.  I think you folks --

25         Mr. Hallam, your motion to dismiss is now done.

33

1   We've had this call.  I suggest you folks get on a call or get

2   on a video conference immediately after this and work this out.

3   But no deposition of anybody can be taken after the 12th under

4   Judge Snyder's scheduling order.

5          **MR. HALLAM:**  Yes, your Honor.  And I would just make

6   the observation that your April 4th letter -- excuse me --

7   order does not require that plaintiff's expert submit a

8   supplemental report by any date or that -- that they submit a

9   report at all.  And what Mr. --

10         **THE COURT:**  You can take --

11         **MR. HALLAM:**  -- Belt is saying --

12         **THE COURT:**  Mr. -- Mr. Belt, you can take his

13  deposition if he -- if he's got new opinions, my order said, to

14  the extent that the additional thousand pages, or no more than

15  a thousand pages of source code, that he formulates any

16  opinions or analysis based on those and the defendants have not

17  had an opportunity to question him about those new opinions,

18  that that deposition can be reopened or continued so that

19  defendants have an opportunity to probe about those.

20         Mr. Hallam, I would be very cautious -- very

21  cautious, sir -- that -- you know, you can say, no, he doesn't

22  have any report, so they don't need a deposition of him

23  further, but you try bringing that to Judge Snyder, and

24  suddenly he's come up with all of these new opinions based on

25  the thousand pages, and I -- I rue the day for you, sir.

1      **MR. HALLAM:**  No, your Honor.  I --

2      **THE COURT:**  Call them up --

3      **MR. HALLAM:**  (indiscernible)

4      **THE COURT:**  Call them up and work this out.

5      **MR. HALLAM:**  I wasn't suggesting -- I was merely

6  pointing out that there is not a time obligation for a report

7  to be submitted tomorrow, today, before the 12th, and -- and

8  that's all I was pointing out.  Not -- not that, you know,

9  we're going to object to his deposition being taken down the

10  road if he does submit a supplemental report.  But -- but,

11  clearly, the Federal Rules of Civil Procedure contemplate that

12  experts not only can, but should submit supplemental reports

13  all the way up to the time of the pretrial conference, which,

14  obviously, is well after the close of expert discovery.  So,

15  I'm not sure that that's, you know, contemplated in the Federal

16  Rules of Civil Procedure, but we would certainly not object at

17  a subsequent date.

18      **THE COURT:**  Object -- not object to what?

19      **MR. HALLAM:**  To -- if Mr. Laykin does a supplemental

20  report after the 12th, to making him available for his

21  deposition, even though it's -- would not be required per the

22  Court's scheduling order.

23      **THE COURT:**  Well, you can take that up with Judge

24  Snyder.

25      Mr. Belt?  Mr. -- Mr. Abbott?

1          **MR. ABBOTT:**  I have nothing further, your Honor.

2    This is Mr. Abbott.

3          **THE COURT:**  All right.

4          All right.  Well, I think that concludes this call.

5    Again, unfortunately, we are out of time in which to address

6    the substantive issues, some of which I do believe are more

7    appropriately brought before Judge Snyder, regarding the

8    admissibility or the propriety of opinions and management of

9    some of the expert analysis here and whether it will be

10   admissible at trial or not or whether it should be stricken.

11   That is for another day.

12          Thank you all.

13          **ALL:**  Thank you, your Honor.

14          **THE CLERK:**  Court is adjourned.

15      **(Proceeding was adjourned)**

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **April 12, 2018**

         **Signed**                                              **Dated**


*TONI HUDSON, TRANSCRIBER*