## CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Not Present         Not Present

**Proceedings:**     **(IN CHAMBERS) - [REDACTED]** DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 178, filed April 13, 2018)

DEFENDANTS' MOTION TO EXCLUDE PLAINTIFF'S EXPERT (Dkt. 181, filed April 13, 2018)

DEFENDANTS' EX PARTE APPLICATIONS (Dkts. 217, 218, filed May 16, 2018)

## I. INTRODUCTION

On December 2, 2016, plaintiff Manufacturing Automation & Software Systems, Inc. ("MASS Group") filed a complaint against defendants Kristopher Hughes, James Huysentruyt, Informatrac, Inc., PcVue, Inc., Edward Nugent, and Does 1–10 (collectively, "defendants"). Dkt. 1. On January 31, 2017, plaintiff filed the operative first amended complaint. Dkt. 27 ("FAC"). Plaintiff asserts the following claims: (1)–(8) copyright infringement of eight copyrighted works against all defendants; (9) violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq., against Hughes and Huysentruyt; (10) violations of California's Computer Data Access and Fraud Act, Cal. Penal Code § 502, against Hughes and Huysentruyt; (11) misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 et seq., against all defendants; (12) breach of contract against Hughes and Huysentruyt; (13) interference with prospective economic advantage against Hughes, Huysentruyt, and InformaTrac; (14) fraud and deceit against Hughes and Huysentruyt; (15) conversion against Hughes, Huysentruyt, and Does 1–10; (16) diversion of corporate

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

opportunities against Hughes and Huysentruyt; and (17) accounting against all defendants. Id. Plaintiff alleges that defendants copied plaintiff's software to produce, market, and sell a counterfeit version to plaintiff's current or potential customers.

On March 28, 2017, PcVue and Nugent filed a motion to dismiss plaintiff's complaint for lack of personal jurisdiction and for failure to state a claim. Dkt. 50. On May 8, 2017, the Court denied the motion to dismiss. Dkt. 53.

On March 30, 2018, defendants filed a motion for terminating sanctions. Dkt. 154 ("Mot."). The Court denied defendants' motion on April 30, 2018. Dkt. 194.

On April 13, 2018, defendants filed a motion for partial summary judgment, dkt. 178 ("MSJ"), and submitted a statement of uncontroverted facts and conclusions of law in support thereof, dkt. 179-28 ("DSUF"). Plaintiff filed an opposition on May 15, 2018, dkt. 202 ("MSJ Opp'n"), and submitted a statement of genuine disputes of material facts in support thereof, dkt. 207 ("PSF"). On June 4, 2018, defendants filed a reply. Dkt. 231 ("MSJ Reply").

On April 13, 2018, defendants also filed a motion to exclude plaintiff's expert, Erik Laykin. Dkt. 181 ("Motion to Exclude"). Plaintiff filed an opposition on May 15, 2018. Dkt. 198 ("Exclude Opp'n"). On May 25, 2018, defendants filed a reply. Dkt. 228 ("Exclude Reply").

Defendants filed four ex parte applications on May 16, 2018, in which they requested the Court (1) to strike plaintiff's untimely opposition to defendants' motion for partial summary judgment; (2) to strike plaintiff's opposition to defendants' motion to exclude; and (3) to strike the Declarations of Brian Turner and (4) Erik Laykin filed in support of plaintiff's opposition to defendants' motion for partial summary judgment and motion to exclude. Dkts. 213, 216, 217 ("Ex Parte 3"), 218 ("Ex Parte 4"). The Court denied defendant's first and second ex parte applications, and took the third and fourth ex parte applications under submission. Dkt. 219. With leave of Court, plaintiff filed two responses to defendants' third and fourth ex parte applications on June 4, 2018. Dkts. 234 ("Response 3"), 235 ("Response 4").

On June 18, 2018, the Court held oral argument. Having carefully considered the parties' arguments and supporting declarations, the Court finds and concludes as follows.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

## II.    BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background.  Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.[1]

### A.    The Copyright Claims

Plaintiff developed and sells a software product that may be used for tracking and tracing inventory and other assets of a business or other entity.  DSUF no. 1; FAC ¶¶ 1–2.  This software program is known as "Traceability Made Easy," or "TME."  DSUF no. 1 & Ex. 1, Deposition of Shaunna Balady at 85:18–86:2.

Plaintiff asserts eight counts of copyright infringement against each defendant, alleging that each defendant copied the TME software in the creation of defendants' software, InformaTrac Pro ("InformaTrac").  DSUF no. 2; FAC ¶¶ 51–194.  Plaintiff became aware of this alleged infringement on March 10, 2016.  DSUF no. 2 & Ex. 2 at no. 7.  Plaintiff's eight claims are based on seven copyright registrations and one allegedly pending application for registration; each registration is for a computer program that comprises part of the TME software.  DSUF no. 4 & Ex. 3, Deposition of Gamal Balady ("Balady Depo.") at 49:19–50:13.  The copyright registrations are as follows:

1. Registration No. TX 8-233-219 entitled "TME 5.9.25," effective registration date of August 25, 2016, first publication date of February 25, 2016, claiming "computer program."  DSUF no. 5(a) & Ex. 4 at ECF 2.
2. Registration No. TX 8-278-518 entitled "TME.Toolkit 5.9.28.7," effective registration date of November 22, 2016, first publication date of November 15, 2016, claiming a "new and revised computer program."  DSUF at no. 5(b) & Ex. 5 at ECF 2.
3. Registration No. TX 8-278-513 entitled "TME.Runtime Engine 5.9.28.7," effective registration date of November 22, 2016, first publication date of November 15,

---

[1]    In their statement of uncontroverted facts, defendants assert facts that allegedly demonstrate that defendants PcVue and Nugent are not liable for the alleged copyright infringement.  Given that defendants do not address this issue in their memorandum in support of their motion for summary judgment, these facts are immaterial to the Court's discussion *infra* and are not included for purposes of background.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

2016, claiming a "new and revised computer program." DSUF at no. 5(c) & Ex. 6 at ECF 2.

4. Registration No. TX 8-278-520 entitled "TME.License 5.9.28.7," effective registration date of November 22, 2016, first publication date of November 15, 2016, claiming a "computer program." DSUF at no. 5(d) & Ex. 7 at ECF 2.

5. Registration No. TX 8-278-516 entitled "TME.Library 3.11.28.7," effective registration date of November 22, 2016, first publication date of November 15, 2016, claiming "new and revised computer program." DSUF at no. 5(e) & Ex. 8 at ECF 2.

6. Registration No. TX 8-278-579 entitled "TME.Installer 5.9.28.7," effective registration date of November 22, 2016, first publication date of November 15, 2016, claiming "computer program." DSUF at no. 5(f) & Ex. 9 and ECF 2.

7. Registration No. TX 8-278-519 entitled "TME.Framework 2.11.28.7," effective registration date of November 22, 2016, first publication date of November 15, 2016, claiming "new and revised computer program." DSUF at no. 5(g) & Ex. 10 at ECF 3.

Although defendants contend in their statement of uncontroverted facts that the work entitled "TME.Web 5.9.28.7"—the work at issue in plaintiff's seventh claim for relief—has not been registered with the Copyright Office, it appears that defendants' cited exhibit does not support their asserted fact that the TME.Web project's certificate is merely pending. See DSUF no. 6 (citing Exhibit 10, which includes the copyright application for TME.Framework). In the tentative order given to the parties, the Court requested oral argument on this matter, but neither party chose to address it. As such, there has been no showing by defendants that there is no possibility that a copyright will be issued. Therefore, the Court considers plaintiff's seventh claim for copyright infringement in its analysis *infra*. See 4 Nimmer on Copyright § 7.16[B][3][b] (noting that a "welter of litigation has arisen" concerning whether a suit that is filed while a copyright application is pending may proceed before registration of that copyright is issued); Capitol Audio Access, Inc. v. Umemoto, 980 F. Supp. 2d 1154, 1157 (E.D. Cal. 2013) (concluding that because defendant did not demonstrate that no portion of plaintiff's copyright application could ultimately be accepted, plaintiff could proceed with its copyright claim regarding a pending application for copyright).

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

### B.     Defendants' Conduct Concerning Plaintiff's Copyrights

Defendant Hughes previously worked for plaintiff and was lead programmer for plaintiff's TME software. DSUF no. 15 & Declaration of Kristopher Hughes ("Hughes Decl.") ¶ 7. Hughes resigned from his employment during February 2016, and left his employment with plaintiff on or about March 3 or 4, 2016. DSUF no. 16; Hughes Decl. ¶ 2. The parties dispute whether Hughes and defendant Huysentruyt started their new company, InformaTrac, before they left plaintiff's employment or soon after their resignation. Though the parties dispute whether Hughes copied TME's source code in the creation of InformaTrac, Hughes claims to be the primary programmer of InformaTrac and asserts that he began writing the source code for InformaTrac in mid-March 2016. DSUF nos. 18–19; Hughes Decl. ¶¶ 4–5. The parties also dispute whether Hughes is still developing InformaTrac.

Hughes contends that he has been writing InformaTrac in a computer programming language [REDACTED]. Hughes asserts that he has also used preexisting "open source" libraries in developing InformaTrac, such as JQuery and Bootstrap libraries. DSUF no. 24; Hughes Decl. ¶ 13. In contrast, the code for plaintiff's TME software was written in [REDACTED]. The parties dispute the extent to which there are differences between InformaTrac and TME, and defendants contend that Hughes and Huysentruyt decided that InformaTrac would "differ from TME in architecture and structure" with "many different capabilities." DSUF nos. 28–29; Hughes Decl. ¶¶ 15–16.

### C.     Expert Comparison of the TME and InformaTrac Source Codes

Plaintiff's expert, Erik Laykin, is alleged to be a recognized expert in the "reactive investigation and analysis" of trade secret theft and intellectual property disputes. Exclude Opp'n at 2; Laykin Exclude Decl. ¶¶ 2–3. It is undisputed that Laykin is not a computer scientist or programmer, though he contends that he has the extensive training in software required to analyze and interpret various programming languages. DSUF no. 113; Laykin Depo. at 28:4–8; 29:2–8. Laykin was permitted to review printouts of a limited segment of the InformaTrac code base, and he opines on this review in his declaration submitted in support of plaintiff's opposition to the instant motion. PSF no. 63. Plaintiff contends that Laykin reviewed TME and InformaTrac side-by-side and observed sequences of lines of source code in the InformaTrac files that were virtually identical to the counterparts in TME. PSF; Laykin Decl. ¶¶ 4, 14–18.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

[REDACTED].

### 1.    The Programs' Project Organization and Structure

[REDACTED].  Whether the programs use different libraries, such as particular jQuery versions, is disputed; however, it is undisputed that TME and InformaTrac use different user interface libraries.  DSUF nos. 32, 43; Plock Report ¶ 34.

TME and InformaTrac contain "projects" that share names and some that do not; "projects" refer to the way in which source code is generally organized.  DSUF no. 45; Plock Report ¶¶ 21.b, 35–36.  [REDACTED].

### 2.    The Programs' Length and InformaTrac's Development

[REDACTED].

### 3.    Size of the Programs and Evidence of Code Conversion

[REDACTED].

### 4.    Side-by-Side Comparison of the Programs

[REDACTED].

Regarding the "nonliteral" features of the TME and InformaTrac—the "output" of the software as it appears to the end user—the parties dispute whether screenshots of reports and other user interfaces are configurable by users or are generated directly by the source code, and whether the screenshots of the reports and user interfaces are substantially similar.

### D.    Plaintiff's Trade Secrets Claim

The parties dispute the nature of plaintiff's trade secrets allegations.  Plaintiff contends that it provided its trade secret designation in its supplemental response to interrogatory no. 11 propounded by PcVue and Nugent, while defendants contend that plaintiff's definition of alleged trade secrets is a "generic[] list of broad[] categories of information."  See DSUF no. 126.

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

As an initial matter, defendants move to exclude plaintiff's expert, Erik Laykin, and request that the Court strike Laykin's declarations submitted in support of plaintiff's oppositions to defendants' motion to exclude and motion for summary judgment.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

Additionally, defendants request that the Court strike the Declaration of Brian Turner, who is an employee of MASS Group.

## A. Admissibility of Erik Laykin's Expert Testimony

Defendants request the Court to exclude Laykin as an expert witness on the grounds that Laykin is not qualified under Federal Rule of Evidence 702 because he cannot read source code, is not a programmer, and lacks the requisite qualifications to assist the trier of fact in this case. See Motion to Exclude. Additionally, defendants request the Court to exclude Laykin's opinions as a sanction for his alleged violations of the Protective Order when he permitted his team to review InformaTrac source code designated as "Highly Confidential-Source Code" and when Laykin reviewed defendants' production of the source code on paper, despite the Protective Order's requirement that the code must be reviewed on a secure computer. See Exclude Reply. Defendants further request the Court to strike Laykin's May 15 and 16, 2018 declarations submitted in support of plaintiff's oppositions to defendants' motion for summary judgment and motion to exclude, on the grounds that Laykin's new expert opinions constitute impermissible supplementation, are untimely, and are opinions regarding InformaTrac's source code that were not disclosed in plaintiff's opening expert report. See Ex Parte 4.

As an initial matter, and with respect to defendants' motion to exclude Laykin as an expert witness, Federal Rule of Evidence 702 provides that

[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. Under Rule 702, a trial judge acts as a "gatekeeper" to insure that expert testimony "is not only relevant, but reliable." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). A trial judge executes this "gatekeeper" role regardless of whether expert testimony is scientific or non-scientific, with the purpose of ensuring that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., v. Carmichael, 526 U.S. 137, 152 (1999). The district court must "ensure that the proposed

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

expert testimony is relevant and will serve to aid the trier of fact . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert, 509 U.S. at 591–93).

As noted, defendants contend that Laykin is not qualified to serve as an expert witness insofar as he cannot read the two programming languages at issue in this case. With respect to the Court's determination as to Laykin's reliability as an expert witness, "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141–42 (1999). Having reviewed Laykin's qualifications and experience set forth in his curriculum vitae and as attested to in his declaration, the Court observes that Laykin and his team have allegedly examined "thousands of pages of database and programming code" to resolve an intellectual property dispute, and that Laykin has been retained as an expert in numerous cases involving trade secret theft and intellectual property infringement. Opp'n & Ex. 1. Moreover, Laykin asserts that his experience as an expert witness and investigator has required him to compare and opine on software products—including source code—of competitive firms, and his curriculum vitae demonstrates that he is an "accredited specialist in…analysis of domestic and international digital theft" and "information technology disputes." In addition, Laykin appears to have skill and experience in the area of "computer forensics," although the precise meaning of this area of expertise is unclear.

In consideration of Laykin's experience and qualifications, as demonstrated by his curriculum vitae, the Court determines that Laykin may offer opinions concerning defendants' alleged copying of the MASS software, a central and therefore relevant issue in this case, which will involve a comparison of both literal and nonliteral expressions of TME and InformaTrac. A wholesale exclusion of Laykin's expert testimony—as defendants request—appears unwarranted on this record. Instead, Laykin's opinions concerning the alleged copyright infringement will be subject to attack by "cross-examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010).

Furthermore, defendants request the Court to exclude Laykin's opinions and to strike his declarations because Laykin violated the Protective Order, see Exclude Reply at

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

9, yet there has been no finding by Magistrate Judge Stevenson with respect to this issue.[2] In light of the foregoing, the Court finds no basis on this record to justify striking Laykin's expert reports or May 15 and 16, 2018 declarations.[3]

---

[2]     During a telephonic hearing conducted April 10, 2018, in response to defendants' concerns that Laykin's source code review violated the Protective Order, Magistrate Judge Stevenson stated that "there is simply no time or capacity…to address all of the issues that are being raised by the defendants here following Mr. Laykin's deposition on [April] 5," see dkt. 175 at 7:18–8:14. Given the impending discovery deadline on April 12, 2018, Judge Stevenson noted that the parties were "out of time to conduct any kind of proper briefing under Judge Snyder's current scheduling order," and observed that in the event that this Court granted the necessary ex parte relief to enable Judge Stevenson to address their disputes, Judge Stevenson would be ready to assist the parties. See dkt. 175 at 30:7–19. Subsequent to the April 10, 2018 hearing, defendants did not seek to extend the discovery cutoff before this Court, so that they could fully brief the issue concerning Laykin's alleged violation of the Protective Order before Judge Stevenson. As a consequence, there has been no adjudication of a violation of the Protective Order, and it is inappropriate to ask this Court to adjudicate that issue.

[3]     The Court observes that the parties also dispute whether Laykin's declarations impermissibly offer new expert opinion. On this point, plaintiff asserts that Laykin's opinions are consistent with his prior expert reports, and that his supplementation is timely and proper insofar as Laykin received 1,000 pages of source code only six days before the expert discovery cut-off. Federal Rule of Civil Procedure 26(e) requires that a party supplement its Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete. . . . Any additions or changes to [an expert report] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Here, Laykin's supplemental opinions concerning the source code could not have been disclosed prior to April 6, 2018, given that the source code printout that was the subject of a discovery dispute was produced to plaintiff on April 6. Moreover, the record demonstrates that Magistrate Judge Stevenson expressly declined to enter sanctions that would prevent Laykin from supplementing his expert report after the April 12, 2018 expert discovery cut-off. Dkt. 175 at 29:6–30:10. In any event, if defendants wish to explore Laykin's supplemental opinions concerning the source code

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

Accordingly, the Court **DENIES** defendants' motion to exclude Laykin as an expert witness and **DENIES** defendants' ex parte application to strike Laykin's May 15 and 16, 2018 declarations.

### B.     Defendants' Request to Strike the Declaration of Brian Turner

Next, defendants argue that the Court should strike the Declaration of Brian Turner that was filed in opposition to defendant's motion for partial summary judgment. Ex Parte 3 at 3. Defendants assert that Turner—a long-time programmer and employee of plaintiff—offers his opinions about theoretical uses of third-party software, various scenarios of how he suspects InformaTrac may have developed its source code, and his opinions about the skills of program developers generally. Id. at 4. Defendants argue that that (1) plaintiff never disclosed Turner as a potential witness in its initial disclosures; (2) plaintiff never designated Turner as an expert; and (3) Turner relies on and attaches to his declaration documents not produced in discovery. Id. at 4–5.

In response to defendants' assertion that Turner was not disclosed for purposes of Rule 26(a), plaintiff argues that the non-disclosure was inadvertent, that Turner was, in any event, identified in an interrogatory response, and that defendants were "well aware" of Turner and his knowledge pertinent to this case. See Response 3.

At oral argument, counsel for defendants asserted that the Ninth Circuit recently addressed in Benjamin v. B & H Educ., Inc., 877 F.3d 1139, 1150–51 (9th Cir. 2017) whether a district court's refusal to consider declarations offered in support of a motion for summary judgment was an abuse of discretion, when the witnesses who provided the declarations were not listed as witnesses pursuant to Rule 26, and instead were disclosed in an interrogatory response. The Ninth Circuit determined that the district court did not err, and it observed that merely mentioning witness names in an interrogatory response was insufficient for purposes of identifying witnesses pursuant to Rule 26. Id. at 1150. Similarly here, it appears that plaintiff failed to disclose Turner in its Rule 26(a) disclosures and merely listed Turner's name in its interrogatory responses. Consistent

---

produced on April 6, 2018, the Court hereby authorizes a deposition of Laykin not to exceed four (4) hours, to be noticed and completed no later than July 16, 2018.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

with the Ninth Circuit's observations in <u>Benjamin</u>, it appears that plaintiff has failed to identify Turner for purposes of Rule 26(a). It further appears that plaintiffs did not disclose in discovery the Turner Declaration Exhibits A through D.

In light of plaintiff's non-disclosure, Federal Rule of Civil Procedure 37(c)(1) provides district courts the authority to sanction a party for failing to disclose or supplement in accordance with Rule 26(a) or (e). The Ninth Circuit gives "wide latitude" to a district court's discretion to issue Rule 37 sanctions. <u>See Yeti by Molly Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2011). Under Rule 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." <u>Lanard Toys Ltd. v. Novelty, Inc.</u>, 375 Fed. App'x. 705, 713 (9th Cir. 2010) (citing <u>David v. Caterpillar, Inc.</u>, 324 F.3d 851, 857 (7th Cir. 2003)).

The Court observes that nothing in the record demonstrates that plaintiff engaged in bad faith in its apparent failure to disclose Turner as a witness under Rule 26. Moreover, it appears that defendants were aware that Turner was an employee of plaintiff, and insofar as Exhibits A through D reflect Hughes's conduct in developing the InformaTrac software before leaving plaintiff's employment, the documents do not appear prejudicial as they simply reflect Hughes's own conduct to which he would have been aware. Nonetheless, because the Court does not rely on Turner's declaration for purposes of concluding *infra* that summary judgment should not be granted, the Court declines to decide the consequences of late disclosure at this juncture.[4]

---

[4]     With respect to defendants' assertion that Turner impermissibly offers expert testimony, having reviewed Turner's declaration, it appears that his statements concerning plaintiff's software and third-party software programs are premised on his personal knowledge as a MASS Group employee responsible for supervising software development and programming activities. Under Federal Rule of Evidence 701, a lay witness' testimony is limited to opinions or inferences which are "(a) rationally based on

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

Accordingly, the Court **DENIES without prejudice** defendants' ex parte application to strike the Turner Declaration.

## C.    Motion for Summary Judgment

Defendants request that the Court enter summary judgment for all defendants with respect to plaintiff's first through eighth claims for copyright infringement, eleventh claim for trade secrets misappropriation, and seventeenth claim for accounting. See MSJ.

## 1.    Plaintiff's Copyright Infringement Claims

Defendants first argue that plaintiff fails to demonstrate triable issues of material fact with respect to its claims for copyright infringement. MSJ at 12.

To establish copyright infringement, a plaintiff must show (1) ownership of a valid copyright, and (2) copying of constituent elements of a work that are original. See Rice v. Fox Broadcasting Co., 330 F.3d 1170, 1174 (9th Cir. 2003) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "Registration is prima facie evidence of the validity of a copyright." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 488–89 (9th Cir. 2000). Aside from the copyright registration for the TME.Web project—with respect to which the Court requested oral argument, but received none—it is undisputed that plaintiff owns valid copyrights for the remaining seven TME works.

Once plaintiff has established ownership of a valid copyright, copying may be established by a showing that the works are substantially similar in their protected

---

the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." The majority of Turner's statements appear to stem from his personal knowledge as plaintiff's supervisor of software development, and his ensuing responsibility over the TME program and Telerik packages. Insofar as Turner's expertise as a programmer may form the basis for his opinions in paragraphs 23 and 24 concerning the efficiency and robustness of [REDACTED] as a programming language, the Court—as noted—does not consider Turner's declaration in reaching its conclusions below and declines to strike Turner's entire declaration on this sole basis.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

elements and that the infringing party had access to the copyrighted work. See Rice, 330 F.3d at 1174 (quoting Metcalf v. Bochco, 294 F.3d 1069, 1072 (9th Cir. 2002)). Alternatively, copying may also be established without a showing of access by demonstrating that the works are "strikingly similar." See Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980, 985 (9th Cir. 2017).

In determining whether two works are "substantially similar" for the purposes of copyright infringement, the Ninth Circuit "employ[s] a two-part analysis: an objective extrinsic test and a subjective intrinsic test." Swirsky v. Carey, 376 F.3d 841, 845 (9th Cir. 2004). "The extrinsic test considers whether two works share a similarity of ideas and expression as measured by external, objective criteria [and] . . . requires analytical dissection of a work and expert testimony." Id. (internal quotations omitted). With respect to computer software, the extrinsic test involves identifying sources of similarity, distinguishing ideas from expression, applying relevant limiting doctrines, and deciding the scope of the copyright by dissecting the unauthorized expression and filtering out unprotectable elements. See Merch. Transaction Sys., Inc. v. Nelcela, Inc., No. 02-cv-1954-PHX-MHM, 2009 WL 723001, at *6 (D. Ariz. Mar. 18, 2009) (citing Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1443 (9th Cir. 1994)). "[T]he subjective question whether works are intrinsically similar"—i.e., the subjective intrinsic test—"must be left to the jury." Swirsky, 376 F.3d 841 at 845.

The Ninth Circuit has demonstrated "a certain disfavor for summary judgment on questions of substantial similarity," unless no reasonable jury could find that the works at issue are substantially similar in idea and expression. Pasillas v. McDonald's Corp., 927 F.2d 440, 442 (9th Cir. 1991). "Where reasonable minds could differ on the issue of substantial similarity, however, summary judgment is improper." Shaw v. Lindheim, 919 F.2d 1353, 1355 (9th Cir. 1990).

### a.      De Minimis Copying and *Scenes a Faire*

Defendants argue that insofar as they are alleged to have copied the TME source code, any alleged copying is de minimis and is therefore not actionable. Reply at 8–9.

In the copyright infringement context, copying "is considered de minimis only if it is so meager and fragmentary that the average audience would not recognize the appropriation." Oracle Am., Inc. v. Google Inc., 810 F. Supp. 2d 1002, 1008 (N.D. Cal.

CIVIL MINUTES – GENERAL     'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

2011) (quoting <u>Fisher v. Dees</u>, 794 F.2d 432, 434 n.2 (9th Cir.1986)).  The extent of the copying "is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole." <u>Newton v. Diamond</u>, 388 F.3d 1189, 1195 (9th Cir. 2004).  Relatedly, with respect to the qualitative significance of copied code, "[u]nder the *scenes a faire* doctrine, when certain commonplace expressions are indispensable and naturally associated with the treatment of a given idea, those expressions are treated like ideas and therefore not protected by copyright." <u>Swirsky</u>, 376 F.3d at 850.  "Under the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea." <u>Satava v. Lowry</u>, 323 F.3d 805, 812 n.5 (9th Cir. 2003).

Defendants contend that Laykin merely argues that 24 lines of the TME code were copied—which represents less than 1/100th of one percent of the overall TME codebase—and they argue that this amount of alleged copying represents a de minimis portion of code from an objective standpoint.  Reply at 4, 8.  Defendants also argue that, qualitatively, this de minimis code relates to "basic database operations" that is expressed in a standard way and is not protectable under the *scenes a faire* doctrine.  Reply at 8–10.

The Court observes, however, that insofar as Laykin claims to have "identified a portion of source code within those [REDACTED] files which is *non-open* source and written specifically by and for" the parties, which was "not only identical but [] in the exact same order," <u>see</u> PSF (emphasis added), plaintiff has demonstrated a triable issue of material fact as to whether defendants impermissibly copied non-standard, *protectable* TME source code.[5]  Moreover, plaintiff demonstrates that in addition to a comparison of

---

[5]    Defendants further argue that in Laykin's analysis, he improperly considers formatting such as "naming conventions" and the "logical order" of elements within the source code that are not subject to copyright protection.  Reply at 11.  The Court agrees that names, titles, and systems are generally not subject to copyright protection.  <u>See</u> <u>Oracle.</u>, 810 F. Supp. 2d 1002 at 1009.  However, these categories are only unprotectable as stand-alone elements that are "distinguished from the particular manner in which they are expressed or described in writing."  37 C.F.R. § 202.1; <u>see</u> <u>Lamps Plus, Inc. v. Seattle Lighting Fixture Co.</u>, 345 F.3d 1140, 1147 (9th Cir. 2003) ("[A] combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

TME's and InformaTrac's user interfaces, Laykin compared TME and InformaTrac screens with competing products and concluded that "no competitor's product shows [the] extent of similarity" that he contends exists between TME and InformaTrac. As such, there is a dispute of material fact as to whether the nonliteral attributes of TME reflect choices by TME's programmers constituting protectable expression. Because the qualitative significance of the allegedly identical source code within the [REDACTED] files remains undetermined, the Court concludes that a triable issue of material fact exists as to whether defendants have engaged in de minimis copying.

###### b.      Access and Degree of Similarity

The copying element of copyright infringement can generally be proven by showing that the alleged infringer had access to the copyrighted work and that the protected portions of the works are substantially similar. Jada Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 636–37 (9th Cir. 2008). "When the range of protectable and unauthorized expression is narrow," however, "the appropriate standard for illicit copying is virtual identity" rather than substantial similarity. Apple, 35 F.3d 1435 at 1439.

As an initial matter, it appears that upon Hughes's departure from plaintiff's employment, he failed to return the hard drives containing plaintiff's intellectual property—including its software and source code—and that he did not sign plaintiff's "Exit Agreement" stating that he had returned or deleted all of plaintiff's property in his possession. See Hallam Decl. ¶¶ 8–10; Balady Decl. ¶ 21 & Ex. 4, Hughes Depo. at 127:4–129:23. In turn, defendants do not appear to contest the issue of access. Accordingly, given plaintiff's showing of access, the Court may apply a lower standard of proof regarding substantial similarity. Swirsky, 376 F.3d 841 at 844 ("Where a high degree of access is shown, we require a lower standard of proof of substantial similarity") (citing Three Boys Music Corp. v. Bolton, 212 F.3d 477, 485 (9th Cir. 2000); Smith, 84 F.3d at 1218).

With respect to the issue of similarity between the software programs at issue, the Court observes that a computer program is made up of several different components, including the source and object code, the structure, sequence and/or organization of the

_____

combination constitutes an original work of authorship.") Whether names and their particular order in the software's source code files at issue here evidence copying is a matter better determined by a jury.

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

program, the user interface,[6] and the function, or purpose, of the program. Whether a particular component of a program is protected by a copyright depends on whether it qualifies as an "expression" of an idea, rather than the idea itself. See Johnson Controls, 886 F.2d 1173 at 1175.

Defendants argue that source code is reviewed for "both literal and nonliteral copying," and that "literal" refers to the expression of the source code, while "nonliteral" involves "the structure, sequence and organization and user interface." MSJ at 16 (citing Johnson Controls, 886 F.2d 1173 at 1175.) As to the literal aspects of the source code, defendants point out [REDACTED]. Id. They argue that, on that basis alone, the InformaTrac code cannot be a literal copy. Id. [REDACTED]. Defendants urge the Court to analyze the alleged similarities between the programs' user interfaces for virtual identity. Id. at 19–20.

Insofar as defendants fail to demonstrate that "a *substantial portion* of the [software] at issue is unprotected, [defendants'] justification for applying the virtual identity standard fails." Oracle, 810 F. Supp. 2d at 1012 (emphasis added).

With respect to the substantial similarity standard and application of the extrinsic test, defendants argue that Laykin fails to identify the *source* of copying, as required by the Ninth Circuit in Apple. Reply at 11–12 (citing Apple, 35 F.3d at 1443). Defendants contend that even assuming the allegedly copied lines of code came from one of the seven registered copyrights, plaintiff's six other registrations remain.[7] Id. Viewing the record in the light most favorable to plaintiff—as the Court is required to do at this

---

[6]     The user interface, "also called the 'look and feel' of the program, is generally the design of the video screen and the manner in which information is presented to the user." Johnson Controls, Inc. v. Phoenix Control Sys., Inc., 886 F.2d 1173, 1176 (9th Cir. 1989), implied overruling on other grounds recognized by Perfect 10, Inc. v. Google, Inc., 653 F.3d 976 (9th Cir. 2011).

[7]     It appears that neither party addresses plaintiff's eight copyright infringement claims on a claim-by-claim basis. However, it is *defendants'* burden at this stage to explain the absence of facts necessary for essential elements of *each* of plaintiff's eight copyright claims for which defendants seek summary judgment. Given that the scope of each copyright appears ascertainable insofar as the copyrighted works are discreet, labeled "projects" within the TME source code, defendants have not carried their burden with respect to each copyrighted project at issue.

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

juncture—the Court concludes that plaintiff has identified several sources of alleged similarity. For example, Laykin opines that the "[REDACTED]" files of both programs contain identical, non-open source written specifically for use by defendants and plaintiff. See Laykin Decl. ¶ 18. In addition, Laykin opines that the software's user interfaces, demonstrated by screenshots, share identical labeling, ordering, and sequencing.[8] Id. ¶ 24–40.

---

[8] As noted *supra* in Section II, a dispute exists as to whether TME's particular user interfaces are generated primarily by code, or instead, by the end user. Insofar as defendants contend that it is an "open question" in the Ninth Circuit as to whether user interfaces are entitled to copyright protection, the Court notes that the Ninth Circuit recently declined to decide this issue in Design Data Corp. v. Unigate Enter., Inc., 847 F.3d 1169, 1173 (9th Cir. 2017). Nevertheless, the Ninth Circuit in that case noted that "authorities…suggest that the copyright protection afforded a computer program may extend to the program's output if the program 'does the lion's share of the work' in creating the output and the user's role is so 'marginal' that the output reflects the program's contents." Id. (citing 4 Nimmer on Copyright § 13.03[F] (quoting Torah Soft Ltd. v. Drosnin, 136 F. Supp. 2d 276, 283 (S.D.N.Y. 2001)). In addition, the Compendium of U.S. Copyright Office Practices provides that where an "applicant states 'computer program' in the Author Created/New Material Included fields or in spaces 2 and 6(b), *the registration will cover the copyrightable expression in the program code and any copyrightable screen displays that may be generated by that code*, even if the applicant did not mention the screen displays and even if the deposit copy(ies) do not contain any screen displays." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 721.10(A) (3d ed.) (emphasis added). Here, plaintiff's seven registered copyrights state "computer program" or "new and revised computer program" in the Author Created field. See Section II.

As to whether the programs' output is not protectable insofar as the screen displays reflect "blank forms," the Court notes that while, as a general rule, blank forms that do not convey information are not protectable, blank forms that convey information *are* subject to copyright protection. See Edwin K. Williams & Co. v. Edwin K. Williams & Co.-East, 542 F.2d 1053, 1061 (9th Cir. 1976) (combination of instruction book and blank forms constituting an integrated work held to be copyrightable), cert. denied, 433 U.S. 908 (1977); Reynolds & Reynolds Co. v. Alternative Source Inc, No. 12-cv-10717-GAF-SHX, 2014 WL 12558119, at *6 (C.D. Cal. Apr. 16, 2014) (noting that a well-

CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

Further, plaintiff raised at oral argument the issue of "intermediate copying"—whether substantial similarities exist between TME and any of the first six versions of InformaTrac—and asserted that Plock failed to review the first six versions of the InformaTrac code for similarities with TME's code.[9]  With respect to this issue, intermediate copying is a theory of copyright infringement most commonly used to describe copying of works in the context of reverse engineering.  For example, *Nimmer on Copyright* observes that

> Commercially developed software products are typically published in the form of object code that is intelligibly only to a computer.  The source code…is meanwhile locked away in the copyright proprietor's vault, far removed from rivals' scrutiny.  Because normal use of the product, in its object code configuration, will reveal almost nothing…[t]he skilled programmer may take the object code in her possession and, working backwards, reverse engineer the program by using the techniques of "decompilation" and "disassembly."…The copy generated is merely preliminary to further uses, but intermediate copying is no less an infringement of the copyright owner's exclusive reproduction right than is "final" copying.

See 4 Nimmer on Copyright § 13.03[D][4].  The treatise observes that fair use may be a defense to this type of intermediate copying, as the Ninth Circuit concluded in Sega Enterprises Ltd. v. Accolade, Inc., 977 F. 2d 1510, 1519 (9th Cir. 1992) (holding that "intermediate copying of computer object code may infringe the exclusive rights granted to the copyright owner…regardless of whether the end product of the coping also infringes those rights," but concluding that the defendant was not liable for copyright infringement pursuant to the defense of fair use).  Central to the Ninth Circuit's conclusion in Accolade was that defendant "had a legitimate reason for engaging in its

established exception to the blank forms rule is where "text is integrated with blank forms") (citation omitted).  In light of the above, the Court observes that insofar as there is a triable issue of material fact as to whether the source code or user input does the "lion's share" of the work in generating the output, because the output does not unequivocally appear to consist merely of "blank forms," and because Laykin allegedly identifies major differences in "comparable screens" of competitors' similar software, the Court concludes that a genuine dispute of material fact exists as to whether any portions of TME's user interface are entitled to copyright protection.

[9]    [REDACTED].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

course of conduct…and no means of access was available for defendant to examine the unprotected elements of plaintiff's copyrighted computer program." 4 Nimmer on Copyright § 13.03[D][4]. As observed in *Nimmer*, the defendant in Accolade had "never possessed [plaintiff's] source code nor otherwise engaged in wrongful conduct, and it succeeded in deciphering the object code through its own devices." Id.

Likewise, other courts have concluded that fair use is not an available defense to intermediate copying when a defendant is in unauthorized possession of a plaintiff's source code. See Atari Games Corp. v. Nintendo of Am. Inc., 975 F.2d 832, 843 (Fed. Cir. 1992) (applying Ninth Circuit law and observing that defendant could not invoke fair use as a defense insofar as it was in wrongful possession of plaintiff's source code); Adobe Sys. Inc. v. S. Software Inc., No. 95-cv-20710-RMW-(PVT), 1998 WL 104303, at *6 (N.D. Cal. Feb. 2, 1998) (concluding that a defendant's fair use defense failed because its intermediate copying utilized unauthorized copies of plaintiff's computer program); Carson v. Verismart Software, No. 11-cv-03766 LB, 2012 WL 1038713, at *4 (N.D. Cal. Mar. 27, 2012) (noting that a defendant cannot invoke a fair use defense if it illegally obtained a copy of plaintiff's software). For purposes of summary judgment in this case, neither party has squarely addressed the issue of intermediate copying. Nonetheless, in light of plaintiff's counsel's extensive argument on intermediate copying at the June 18 hearing, the Court simply notes that the viability of plaintiff's intermediate copying theory remains undetermined.

In consideration of the foregoing, and in light of the fact that there are competing expert reports that disagree as to whether copying has occurred, the Court concludes that summary judgment is inappropriate. Therefore, the Court **DENIES** defendants' motion for summary judgment as to plaintiff's eight claims for copyright infringement.

### c.     Statutory Damages and Attorneys' Fees

Defendants next argue that plaintiff is not entitled to statutory damages and attorneys' fees for its copyright claims. Pursuant to 17 U.S.C. § 412, a plaintiff's entitlement to statutory damages is limited. That section provides, in relevant part:

In any action under this title ... no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL 'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

Plaintiff concedes that it first became aware of the alleged infringement on March 10, 2016. DSUF no. 2 & Ex. 2. Thus, the alleged infringement began approximately eight months *before* the six copyright registrations' effective dates of November 22, 2016, and *before* their November 15, 2016 dates of first publication identified on the certificates of registration. See Section II. With respect to the copyright registration with a first publication date of February 25, 2016, although the alleged infringement occurred after first publication, the work's effective date of registration occurred on August 25, 2016—more than three months after first publication. See id. Accordingly, the Court concludes that plaintiff may not recover statutory damages or attorneys' fees with respect to its copyright claims. See 17 U.S.C. § 412(1); accord Martin v. Walt Disney Internet Grp., 2010 WL 2634695, at *4 (S.D. Cal. June 30, 2010) ("Section 412 bars recovery of attorney's fees and [statutory] damages ... because the photograph was unpublished and unregistered ... when Defendants infringed on her copyright."); Zito v. Steeplechase Films, Inc., 267 F. Supp. 2d 1022, 1026 (N.D. Cal. 2003) ("if a work is unpublished and unregistered at the time of infringement, no statutory damages or attorney's fees are available despite the fact that the infringement itself may involve the unauthorized distribution of a copyrighted work").

## 2. Plaintiff's Uniform Trade Secrets Act Claim

Defendants contend that plaintiff has not identified a single trade secret stolen by any defendant, and therefore, this failure to properly specify its asserted trade secrets renders summary judgment appropriate. MSJ at 22–23 (citing Princess Cruises, Inc. v. Amrigon Enterprises, Inc., 51 F. App'x 626, 628 (9th Cir. 2002); DSUF nos. 125–130); Imax Corp. v. Cinema Techs., Inc., 152 F.3d 1161, 1168 (9th Cir. 1998)). Defendants argue that whatever plaintiff may believe its trade secrets are, those secrets cannot, as a matter of law, be contained in plaintiff's copyrighted source code, since under CUTSA, a

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

trade secrete must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Id. at 23 (citing Cal. Civ. Code § 3426.1).

In opposition, plaintiff argues that defendants fail to provide the Court with plaintiff's trade secrets designation or explain how that designation falls short of applicable legal standards. MSJ Opp'n at 23. Plaintiff asserts that its designation is set forth in plaintiff's interrogatory answers as follows:

Plaintiff's confidential and proprietary information, including, without limitation, customer identifications, private phone numbers and email addresses, individual customer product needs and specifications, proprietary market studies, and private bank account information, all the documented tasks, workflows, and notes associated with developing each iteration (aka short timeboxes) of the software which results in releases of mini-increments of new functionality, all documentation related to planning, determining requirements, conducting analyses, designing, details of any bugs, fixes, and patches, all Scrum documentation related to project managing the software development process which includes a living backlog of prioritized work to be done, details related to progress made, description of upcoming work, and identification of any obstacles raised, Data import template, Data import tool (used to load the client's information into TME), release notes provided with each software upgrade, implementation process and methodology, training manual, job aids (reference guide for users, catalog of 150+ master reports that are included with TME, Administrative and User Training agendas (and for purposes of clarity, only such information which is not subject to protection under the Copyright Act, 17 U.S.C. §102(b), and thus not included within Plaintiff's Copyright Claims and Copyrighted Works 1-8, as alleged hereinabove) (collectively the 'Trade Secrets').

Id. at 23, n.6. Insofar as defendants fail to identify *which* of plaintiff's trade secrets is not sufficiently defined, and fail to explain *why* a particular portion of plaintiff's trade secrets designation is purportedly inadequate, plaintiff argues that defendants fail to meet their burden under Rule 56. Id. at 24–25. Plaintiff further argues that its trade secrets designation is "highly specific, clear and more than adequate to satisfy California law." Id. at 25. Plaintiff contends that because defendants fail to explain how or why this designation is inadequate, plaintiff is not required to respond, and the Court should not try to fashion an argument for them. Id.

## CIVIL MINUTES – GENERAL      'O'

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|---|---|---|---|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

In reply, defendants argue that it is *plaintiff's* burden to identify the trade secrets and carry the burden of showing that they exist. MSJ Reply at 14 (citing MAI Sys. Corp. v. Peak Comp., Inc., 991 F.2d 511, 522 (9th Cir. 1993)). Defendants contend that plaintiff fails to identify its trade secrets, and "now tries to shift that burden to defendants," despite the fact that plaintiff must show "more than the mere existence of a scintilla of evidence." Id. (citing In re Oracle Corp. Sec Litig., 627 F.3d 376, 387 (9th Cir. 2010)).

To prevail on a claim for trade secret misappropriation under CUTSA, plaintiff must establish that "(1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1665 (Cal. Ct. App. 2003).

Under CUTSA, a trade secret is defined as:

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). Thus, the definition of trade secrets consists of three elements: "(a) information (b) which is valuable because unknown to others and (c) which the owner has attempted to keep secret." Abba Rubber Co. v. Seaquist, 235 Cal. App. 3d 1, 18 (Cal. Ct. App. 1991) (citation omitted); see Advanced Modular Sputtering, Inc. v. Superior Court, 132 Cal. App. 4th 826, 833 (2005). A plaintiff seeking relief for misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist." MAI Sys. Corp. v. Peak Comput., Inc., 991 F.2d 511, 522 (9th Cir. 1993). A plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." Imax, 152 F.3d 1161 at 1164–65 (citation omitted).

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

In Imax, the plaintiff-appellant sought protection of its trade secret identified as the "design of the cam unit, including every dimension and tolerance that defines or reflects that design." Id. at 1166. The Ninth Circuit observed in that case that Imax failed to carry its burden "of identifying for the court exactly what dimensions and tolerance it claimed as trade secrets." Id. In affirming the district court's ruling, the court reasoned that unlike the Ninth Circuit's decision in Forro Precision, Inc. v. Intern Business Machines, 673 F.2d 1045, 1057 (9th Cir. 1982)—which held that a plaintiff's reference to "dimensions and tolerances" was sufficient to claim trade secrets in engineer drawings and blueprints—Imax's catchall phrase did not "*clearly refer* to tangible trade secret material," and instead referred to a patented projector system which "*potentially* qualifies for trade secret protection." Imax, 152 F.3d 1161 at 1167 (citations omitted) (emphasis added).

Unlike in Imax, this case does not concern alleged trade secrets regarding the vague dimensions or tolerances of intellectual property. To the contrary, plaintiff specifically disclaimed in its answer to interrogatories that any trade secret material is protected under the Copyright Act. Plaintiff instead identifies "confidential and proprietary information, including…customer identifications, private phone numbers and email addresses, individual customer product needs and specifications, proprietary market studies, and private bank account information" as the part of the grounds for its trade secrets claim. As one district court in this Circuit has noted, the California Supreme Court has found that "the nature and character of [] customer information, i.e., billing rates, key contacts, specialized requirements and markup rates, is sophisticated information and irrefutably of commercial value and not readily ascertainable to other competitors." Language Line Servs., Inc. v. Language Servs. Assocs., Inc., 944 F. Supp. 2d 775, 785 (N.D. Cal. 2013) (citing ReadyLink Healthcare v. Cotton, 126 Cal. App. 4th 1006, 1020 (2005)); see Brocade Comm. Sys. Inc. v. A10 Networks, Inc., 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012) (finding "customer-related information including customer lists and contact information, pricing guidelines, historical purchasing information, and customers' business needs/preferences ... is routinely given trade secret protection."). Misappropriation of trade secrets can occur when an individual misuses a former employer's protected secret client list, for example, "by using the list to solicit clients or to otherwise attain an unfair competitive advantage." Welenco, Inc. v. Corbell, 126 F. Supp. 3d 1154, 1173–74 (E.D. Cal. 2015) (quoting Reeves v. Hanlon, 33 Cal.4th 1140, 1155 (2004)). Here, plaintiff's alleged trade secrets do not appear to implicate any copyrighted portions of TME, and instead unequivocally refer to tangible trade secret

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

material insofar as they concern customer-related information, private bank and billing information, and proprietary market studies.

More fundamentally, the Court observes that defendants do not address plaintiff's interrogatory answer in their reply, and that they fail to provide the Court with undisputed facts demonstrating that plaintiff has failed to identify the material it designates as trade secrets such that defendants cannot mount a proper defense. Instead, defendants merely argue that plaintiff "failed to identify its trade secrets." MSJ Reply at 14. But the record does not demonstrate that plaintiff has failed to do so. As such, the Court concludes that defendants fail to carry their burden to demonstrate that there is no triable issue of material fact regarding plaintiff's trade secrets claim.

Accordingly, the Court **DENIES** defendants' motion with respect to plaintiff's trade secrets claim.

### 3. Plaintiff's Accounting Claim

Last, defendants argue that insofar as plaintiff's accounting claim is based on the revenue that defendants received from copying plaintiff's source code, this claim rises or falls with the copyright and trade secrets claims, and thus the accounting claim fails. MSJ at 24 (citing Thorpe v. Dennis Dillon RV, LLC, No. 16-00793, 2017 WL 1807597, at *12 (C.D. Cal. Mar. 15, 2017).

Because the Court denies summary judgment with respect to plaintiff's copyright infringement claims, and denies summary judgment with respect to plaintiff's trade secrets misappropriation claim, the Court **DENIES** summary judgment with respect to plaintiff's accounting claim.

## V.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motion to exclude plaintiff's expert witness, and **DENIES** plaintiff's ex parte applications to strike the Turner and Laykin Declarations.

The Court **DENIES** defendants' motion for summary judgment as to plaintiff's first, second, third, fourth, fifth, sixth, seventh, and eighth copyright infringement claims.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:16-cv-08962-CAS(KSx) | Date | June 25, 2018 |
|----------|------------------------|------|---------------|
| Title | MANUFACTURING AUTOMATION AND SOFTWARE SYSTEMS, INC. V. KRISTOPHER HUGHES, ET AL. | | |

The Court **DENIES** defendants' motion for summary judgment as to plaintiff's trade secrets misappropriation claim, and **DENIES** defendants' motion for summary judgment as to plaintiff's accounting claim.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |